IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUN 1 4 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| ESSEX INSURANCE COMPANY, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-04-079 |
| | § | |
| AMBERJACK'S BAR & GRILL, INC. | § | |
| and DANNY GHILAIN TRUST, | § | |
| | § | |
| *Defendants.* | § | |

## FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff, Essex Insurance Company, and files its First Amended Complaint for Declaratory Relief seeking construction of a certain insurance policy issued to Amberjack's Bar & Grill, Inc. and Danny Ghilan[sic] Trust, Defendants, and seeking declaration that Essex has no coverage for and no duty to defend Daniel B. Ghilain and Leeanne Ghilain in a lawsuit styled *Judy Lemmons v. Daniel B. Ghilain and Leeanne Ghilain,* currently pending in the 357th Judicial District Court of Cameron County, Texas, Cause Number 2004-01-536-E. A true and correct copy of Plaintiff's First Amended Petition from the underlying lawsuit is attached hereto as Exhibit "A."

### PARTIES

1.      Essex Insurance Company is a foreign insurance corporation who issued and delivered a commercial liability policy of insurance in the State of Texas and in this district pursuant to the Texas Insurance Code.

2.    Amberjack's Bar & Grill, Inc. is a corporation conducting business in the State of Texas and in this district and may be served with process through its attorney of record, Jeffrey D. Roerig, Roerig, Oliveira & Fisher, LLP, 855 W. Price Road, Suite 9, Brownsville, Texas 78520.

3.    The Danny Ghilan Trust may also be served with process through its attorney of record, Jeffrey D. Roerig, Roerig, Oliveira & Fisher, LLP, 855 W. Price Road, Suite 9, Brownsville, Texas 78520.

## VENUE

4.    Venue is proper in this Honorable Court pursuant to 28 U.S.C. § 1391 because Defendant resides in this Judicial District and because a substantial part of the events or omissions giving rise to this suit occurred in this Judicial District.

## JURISDICTION

5.    This Court has jurisdiction pursuant to 28 U.S.C. § 2201, more particularly known as the Declaratory Judgments Act. The matter in controversy exceeds $75,000.00, exclusive of interest and costs.

## FACTS

6.    Essex would show that on or about March 4, 2002, a policy of insurance written by Essex became effective wherein Amberjack's Bar & Grill, Inc. and Danny Ghilan[sic] Trust were the named insureds under Commercial General Liability Policy No. 3CD8594. A true and correct copy of the policy is attached hereto as Exhibit "B" and incorporated herein for all purposes.

7.    Essex would show that, on or about January 30, 2004, Judy Lemmons filed Plaintiff's Original Petition in the underlying lawsuit bringing claims of slander per se against Daniel B. Ghilain and Leeanne Ghilain. *See* Exhibit "C." Thereafter, Lemmons filed Plaintiff's First Amended Petition on May 12, 2004. See Exhibit "A." Lemmons alleges that Daniel Ghilain and

Leeanne Ghilain published defamatory statements about her to third parties.    Specifically, Lemmons, the in-house bookkeeper for Amberjack's Bar & Grill, Inc., pleads that the Ghilains stated, "[Lemmons has] embezzled quite a lot of money to the tune of $200,000.00 from Amberjack's."

8.    A real controversy has arisen and now exists between Essex and the Ghilains.    The Ghilains have requested that Essex defend and indemnify them in the underlying lawsuit pursuant to the terms of the policy written by Essex.    Essex desires that this Court declare the rights and duties of the parties under this policy.

9.    Essex would show the Court that the referenced insurance policy excludes coverage for the claims asserted in the underlying lawsuit.    Specifically, the relevant portions of the policy are:

COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

**1.    Insuring Agreement**

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.    We will have the right and duty to defend the insured against any "suit" seeking those damages.    However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

* * *

    b.    This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2.    Exclusions**

This insurance does not apply to:

    a.    "Personal and advertising injury":

        (1)    Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

(2)     Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(3)     Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

\* \* \*

## SECTION V – DEFINITIONS

14.     "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

d.     Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services:

\* \* \*

### COMBINATION GENERAL ENDORSEMENT

3.     Employment-Related Practices Exclusion is added to Coverages A and B, Section 1, Commercial General Liability Coverage Form and to any other coverage under this policy as follows:  Employment-Related Practices regardless of allegations are not covered under this policy nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same, including but not limited to:

\* \* \*

(B)     Discrimination, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment in any form, humiliation or other employment-related practices, policies, acts or omissions; or

10.     Based on the foregoing sections of the insurance policy and the allegations contained in the pleadings of the underlying lawsuit, Essex asserts that is has no duty to defend or indemnify Daniel B. Ghilain and Leeanne Ghilain in the underlying suit.  The clear and unambiguous terms, conditions and exclusions of the subject policy make clear that the policy does not apply.  *See* Exhibit "B."

4

## PRAYER

Essex prays that Amberjack's Bar & Grill, Inc. and Danny Ghilain Trust be cited to appear and answer and, upon final trial, that Essex have judgment as follows:

    a.      Declaration that the policy of insurance attached as Exhibit "B" provides no coverage for and no duty on behalf of Essex to defend Daniel B. Ghilain or Leeanne Ghilain in the underlying lawsuit styled *Judy Lemmons v. Daniel B. Ghilain and Leeanne Ghilain*, pending in the 357th Judicial District Court of Cameron County, Texas, Cause Number 2004-01-536-E;

    b.      Awarding Essex its reasonable and necessary attorneys' fees and costs of court incurred in this cause; and

    c.      Such other and further relief, both special and general, at law and in equity, to which it may show itself justly entitled.

                    Respectfully submitted,

                    James M. Tompkins (Attorney-in-Charge)
                      Federal I.D. No. 15800
                      State Bar No. 00785534
                    Mary Lou Mauro
                      Federal ID No. 29682
                      State Bar No. 13238520

OF COUNSEL:

GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
3555 Timmons Lane, Suite 1225
Houston, Texas 77027
(713) 599-0700
(713) 599-0777 – facsimile

ATTORNEYS FOR PLAINTIFF
ESSEX INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been forwarded to the following known counsel of record via certified mail, return receipt requested on this **10th day of June, 2004.**

Mary Lou Mauro

Mr. Jeffrey D. Roerig
ROERIG, OLIVEIRA & FISHER, LLP
855 W. Price Road, Suite 9
Brownsville, TX 78520
*Via CM/RRR #7003 2260 0003 0881 6464*

CAUSE NO. 2004-01-00536-E

FILED 9-30 O'CLOCK A M
AURORA DE LA GARZA DIST. CLERK

MAY 12 2004

DISTRICT COURT OF CAMERON COUNTY, TEXAS
DEPUTY

| | | |
|---|---|---|
| JUDY LEMMONS | § | IN THE DISTRICT COURT |
| PLAINTIFF | § | |
| | § | |
| VS | § | |
| | § | 357TH JUDICIAL DISTRICT |
| | § | |
| DANIEL B. GHILAIN | § | |
| LEEANNE GHILAIN | § | |
| DEFENDANTS | § | CAMERON COUNTY, TEXAS |

## PLAINTIFF'S FIRST AMENDED PETITION

TO THE JUDGE OF SAID HONORABLE COURT

NOW COMES Plaintiff **JUDY LEMMONS** and files this her **PLAINTIFF'S FIRST AMENDED PETITION** complaining of **DANIEL B. GHILAIN AND LEEANNE GHILAIN,** Defendants, and for cause Plaintiff would show:

1.    Plaintiff Judy Lemmons is a resident of Cameron County, Texas; Defendants Ghilain are residents of Cameron County, Texas residing on South Padre Island and may be reached for service at 209 West Amberjack, South Padre Island, Cameron County, Texas. Plaintiff alleges discovery shall be conducted under Level 3, Rule 190.4, Texas Rules of Civil Procedure. Defendants have answered and no service is necessary at this time.

2.    Plaintiff alleges that Defendants Ghilain have stated to third parties that Plaintiff "embezzled quite a lot of money to the tune of $200,000.00 from Amberjacks". These statements (in various forms) were made to numerous individuals, the sum total of which Plaintiff is unaware. Plaintiff would allege that slanderous statements known by Plaintiff and made by the Defendants as follows:

    a.    Defendant Daniel B. Ghilain published a statement "that criminal charges were going to be filed against Judy Lemmons because of her embezzlement from Amberjacks". This statement was

04-754 Judy Lemmons First Amended Petition 05/05/04rwa

**EXHIBIT**

**A**

made on or about January 29th 2003.

b.   Defendant LeeAnne Ghilain published a statement to a third person "that the rumor was true that Judy Lemmons had taken $200,000.00 dollars". This statement was published on or about the first day of March 2003, in Cameron County Texas.

c.   Defendant LeeAnne Ghilain published a statement to a third person "that the rumor was true and she was shocked at how much Judy stole". This statement was published on or about April 10th 2004, in Cameron County, Texas.

3.   The statements by themselves constitute **slander per se** as they directly or by innuendo accuse the Plaintiff of criminal acts. The statement made by Defendants are statutory slander because they tend to injure Plaintiffs reputation and expose Plaintiff to public hatred, contempt, ridicule, and financial injury and impeach the honesty and integrity of the Plaintiff.

4.   Defendants Ghilain and each of them published the defamatory statements set out above to third parties within the community of South Padre Island, Cameron County, Texas and to others unknown to Plaintiff. The persons who overheard the statements understood the statement to be defamatory in the manner described above. Furthermore the persons who heard the statements understood that they referred directly to the Plaintiff, and the statements were repeated by others as gossip and thought to be true by those who overheard the rumors. Plaintiff's damages include mental anguish, pain and suffering, medical expenses incurred in the past and reasonably anticipated in the future, loss of consortium, loss of reputation, humiliation, and expenses reasonable and necessary to relocate from South Padre Island, Texas. Plaintiff seeks damages in the amount of Two Million Dollars ($2,000,000.00).

5.   The defamatory statements set forth above are false. The truth is that Defendants purchased Plaintiffs interest in a corporation which owned a restaurant known as "Amberjacks". Plaintiff was the in-house bookkeeper and maintained the accounts payables, accounts receivable, marketing, payroll and group sales for the partnership, Amberjacks Bar and Grill, Inc. Defendant LeeAnne Ghilain disliked Plaintiff personally and refused to speak to Plaintiff and wished to discredit Plaintiff. Plaintiff believes

that Defendants harbored ill feelings, for Plaintiff for several years before Plaintiff's interest was purchased.

6.    The Defendants publication of the defamatory statements are not privileged; Defendants and each of them have published the defamatory statements with malice and have or should have had substantial grounds for knowing that they are false and published the statements with reckless disregard to the truth of such statements. Plaintiff requests punitive damages in an amount in excess of the jurisdictional limits of the court. Plaintiff further requests the issuance of a permanent injunction enjoining the Defendants and each of them from publishing unprivileged slanderous or otherwise defamatory statements concerning the Plaintiff in the future.

    **WHEREFORE PREMISES** considered, Plaintiff requests that Defendants be cited to appear and that upon hearing hereof that Plaintiff have judgment against the Defendants jointly and severally, for damages in the amount of Two Million ($2,000.000.00), punitive damages, the issuance of a permanent injunction, prejudgment interest, post judgment interest, costs of court and general relief.

                      RESPECTFULLY SUBMITTED,

                      R.W. ARMSTRONG
                      Attorney At Law
                      2600 Old Alice Road Ste A
                      Brownsville Texas 78521
                      Tel:    (956) 546 5556
                      Fax:    (956) 546 0470


                      _____
                      R. W. ARMSTRONG

04-754 Judy Lemmons First Amended Petition 05/05/04rwa



ESSEX
INSURANCE
COMPANY

# INSURANCE POLICY

EXHIBIT

tabbies

B

**MARKEL**

# ESSEX INSURANCE COMPANY

## COMMERCIAL LIABILITY DECLARATIONS

NEW
Renewal of Number

**Policy Number**
3CD8594

Item 1. Named Insured and Mailing Address:
AMBERJACKS BAR & GRILL, INC &
DANNY GHILAN TRUST 1993
209 W. AMBERJACK
SOUTH PADRE ISLAND, TX 78597

Item 2.  Policy Period    From: 03/04/2002         To: 03/04/2003        Term: 12 MONTHS
             12:01 A.M. Standard Time at the address of the Named Insured as stated herein.

Item 3.   Retroactive Date: _____

Item 4.   Business Description: RESTAURANT & BAR _____

Item 5.   In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide
             the insurance as stated in this policy.

This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is
no coverage. This premium may be subject to adjustment.

| Coverage Part(s) | Form No. and Edition Date | Premium |
|---|---|---|
| Commercial General Liability Coverage Part | | $ 16,500.00 |
| Professional Liability Coverage Part | | $ |
| POLICY FEE | | $ 250.00 |
| STATE TAX | | $ 812.38 |
| STAMPING FEE | | $ 41.88 |
| | | $ |
| | | $ |
| | | $ |

Audit Period Annual unless otherwise stated: _____    **Total**  $ 17,604.26

Item 6.   Forms and endorsements applicable to all Coverage Parts: 011-1054(4-00), 011-1061(8-94)
                                                                                          SHOW NUMBERS
_____
_____
_____
_____

Agent Name and Address: U.S. RISK UNDERWRITERS, INC.  11200 RICHMOND AVE., #600 HOUSTON, TX 77082
Agent Number:  174550

Countersigned ___05/13/2002   TT___    By _____
                                DATE                                      AUTHORIZED REPRESENTATIVE

THIS COMMERCIAL LIABILITY DECLARATIONS AND THE SUPPLEMENTAL DECLARATIONS,TOGETHER WITH THE COMMON POLICY CONDITIONS,
COVERAGE FORM(S) AND ENDORSEMENTS COMPLETE THE ABOVE NUMBERED POLICY
COMPANY

011-1056 (9-93)

In consideration of the payment of the Premium, in reliance upon the statements made to the Company by application and subject to the terms set forth herein, the Company designated on the Declarations page (A Capital Stock Company), herein called the Company, AGREES with the Insured:

## COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. CANCELLATION**
1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed proof of mailing will be sufficient proof of notice.

**B. CHANGES**
This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. EXAMINATION OF YOUR BOOKS AND RECORDS**
We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. INSPECTIONS AND SURVEYS**
We have the right but are not obligated to:
1. Make inspections and surveys at any time;
2. Give you reports on the conditions we find; and
3. Recommend changes.
Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public.

And we do not warrant that conditions:

1. Are safe or healthful; or
2. Comply with laws, regulations, codes or standards.
This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**E. PREMIUMS**
The first Named Insured shown in the Declarations:
1. Is responsible for the payment of all premiums; and
2. Will be the payee for any return premiums we pay.
3. Premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

**F. PREMIUMS, MINIMUM DEPOSIT AND AUDIT**
All references in this policy to minimum and/or deposit premiums and premium audits is replaced by the following, as respects casualty:

Premium shown as advanced premium is both a deposit premium and a minimum premium for the policy term. At the close of each audit period we will compute earned premium for that period. If earned is more than advance premium then the amount by which it exceeds advance premium is due and payable on notice to you. If earned is less, advance premium applies as the minimum premium with no return payable to you.

If this policy is cancelled the pro rata or short rate of the minimum and deposit premium will apply for the policy term, subject to an absolute minimum earned premium of 25% of the total advance premium, unless final audit develops greater than said 25%. If your business is a seasonable business, however, the minimum premium then becomes fully earned at the end of your season.

**G. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

011-1054 (Rev.4-00) continued…
This Policy is not valid unless a Declarations Page and Coverage Form is attached.

## NUCLEAR ENERGY LIABILITY EXCLUSION

1. **The insurance does not apply:**

A. Under any Liability Coverage, to "bodily injury" or "property damage:"

(1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. Under any Medical Payments coverage, to expenses Incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material," if

(1) The "nuclear material" (a) is at any "nuclear facility" owned by or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

(2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured;" or

(3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement

011-1054 (Rev.4-00)

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material," "special nuclear material" or "by-product material."

"Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:
(a) Any "nuclear reactor;"
(b) Any building, premises or property owned, leased, loaned or used by or on behalf of the insured where "hazardous properties", "nuclear material" or "radioactive material" is used, processed or stored or has been discharged or dispersed therefrom;
(c) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste;"
(d) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "Insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;
(e) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;" and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

continued…

## SERVICE OF SUIT

It is agreed that in the event of the failure of this Company herein to pay any amount claimed to be due hereunder, this Company hereon, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon the Company's President, or his nominee, at 4521 Highwoods Parkway, Glen Allen, VA 23060-6148 and that in any suit instituted against any one of them upon this Policy, this Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named is authorized and direct  to accept service of process on behalf of this  .npany in any such suit and/or upon the request of the Insured to give a written undertaking to the Insured that it or they will enter a general appearance upon this Company's behalf in the event such a suit shall be instituted.

Further, pursuant to any state, territory or district of the United States of America, which makes provision therefor, this Company hereon hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as their true and lawful attorney, upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance and hereby designate the above-named as  the person to whom the said officer is authorized to mail such process or a true copy thereof.

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

*Secretary*                                                                                                          *President*

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright. Insurance Services Office, Inc 1982, 1983

011-1054 (Rev.4-00)                                    3  of 3

# ESSEX INSURANCE COMPANY

4551 Cox Road, Glen Allen, Virginia  23060-3382

# IMPORTANT NOTICE

To obtain information or make a complaint:

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

## 1-800-252-3439

You may write the Texas Department of Insurance:

## P.O. Box 149104
## Austin, TX  78714-9104
## FAX # 512-475-1771

# PREMIUM OR CLAIM DISPUTES:

Should you have a dispute concerning your premium or about a claim, you should contact the agent first.  If the dispute is not resolved, you may contact the Texas Department of Insurance.

## ATTACH THIS NOTICE TO YOUR POLICY:

This notice is for information only and does not become a part or condition of the attached document.

SPO10-IL (07/92)

<u>TEXAS REQUIRED NOTICE</u>

"THIS INSURANCE CONTRACT IS WITH AN INSURER NOT LICENSED TO TRANSACT INSURANCE IN THIS STATE AND IS ISSUED AND DELIVERED AS A SURPLUS LINES COVERAGE PURSUANT TO THE TEXAS INSURANCE STATUTES. THE STATE BOARD OF INSURANCE DOES NOT AUDIT THE FINANCES OR REVIEW THE SOLVENCY OF THE SURPLUS LINES INSURER PROVIDING THIS COVERAGE, AND THIS INSURER IS NOT A MEMBER OF THE PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION CREATED UNDER ARTICLE 21.28-C, INSURANCE CODE.ARTICLE 1.14-2, INSURANCE CODE REQUIRES PAYMENT OF 4.85% TAX ON GROSS PREMIUM."

**ESSEX INSURANCE COMPANY**

**MARKEL**

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

These Supplemental Declarations form a part of policy number  3CD8594

### LIMITS OF INSURANCE

| | |
|---|---|
| General Aggregate Limit (other than Products/Completed Operations) | $  2,000,000 |
| Products/Completed Operations Aggregate Limit | $  1,000,000 |
| Personal and Advertising Injury Limit | $  1,000,000 |
| Each Occurrence Limit | $  1,000,000 |
| Fire Damage Limit | $  50,000  any one fire |
| Medical Expense Limit | $  EXCLUDED  any one person |

### BUSINESS DESCRIPTION AND LOCATION OF PREMISES

Form of business:

☐ Individual    ☐ Joint Venture    ☐ Partnership    ☒ Organization (other than Partnership or Joint Venture)

Location of all premises you own, rent or occupy:

209 W. AMBERJACK,    SOUTH PADRE ISLAND, TX 78597

### PREMIUM

| Classification | Code No. | *Premium Basis | PR/Co | Rate All Other | Advance Premium Pr/Co | All Other |
|---|---|---|---|---|---|---|
| RESTAURANT-WITH SALES OF ALCOHOLIC BEVERAGES THAT ARE LESS THAN 75% OF THE TOTAL ANNUAL RECEIPTS OF THE RESTAURANTS-WITH NO DANCE FLOOR | 16816 | S)1763000 | INCL. | 9.359 | $ INCL. | $ 16,500.00 |

*(a) Area, (c) Total Cost, (m) Admission, (p) Payroll, (s) Gross Sales. (u) Units, (o) Other

TOTAL ADVANCE PREMIUM $  16,500.00

### FORMS AND ENDORSEMENTS (other than applicable forms and endorsements shown elsewhere in the policy)

Forms and endorsements applying to this Coverage Part and made part of this policy at time of issue:

011-1054(4-00), 011-1095(07-01), ME-001(4-00), ME-001A(07-01), ME-001B(07-01), ME-024(9-00), ME-030(4-99), ME-039(4-99), ME-048(4-99), ME-064(4-99), ME-067(4-99), ME-126(4-99), ME-129(4-99), ME-143(4-99), ME-155(4-99), ME-221(4-99), CG 00 01 (07-98), CG 21 35 (10-93), CG 24 07 (01-96)

THIS SUPPLEMENTAL DECLARATIONS AND THE COMMERCIAL LIABILITY DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS COMPLETE THE ABOVE NUMBERED POLICY.

011-1061 (8-94)

COMPANY

**ESSEX INSURANCE COMPANY**

MARKEL

* Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CD8594 | 03/04/2002 | AMBERJACKS BAR & GRILL, INC & DANNY GHILAN TRUST 1993 |

## ESSEX PRIVACY NOTICE

We collect nonpublic personal information about you from the following sources:

- Information we receive from you on applications or other forms; and/or

- Information about your transactions with us, our affiliates, or others; and/or

- Information we receive from a consumer reporting agency; and/or

- Information we receive from Inspection reports.

We do not disclose any nonpublic personal information about our customers or former customers to anyone, except as permitted by law.

We may disclose nonpublic personal information about you to the following types of third parties:

- Financial service providers, such as insurance agents and/or brokers.

We may also disclose nonpublic personal information about you to non-affiliated third parties as permitted by law.

We restrict access to nonpublic personal information about you to those employees who need to know that information to provide products or services to you. We maintain physical, electronic, and procedural safeguards that comply with federal standards to guard your nonpublic personal information.

_____/
AUTHORIZED REPRESENTATIVE        DATE

011-1095 (7/01)

EL   INSURANCE COMPANY

**MARKEL**

# COMBINATION GENERAL ENDORSEMENT

*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy*

| *Attached to and Forming Part of Policy No. | *Effective Date of Endorsement | *Issued to |
|---|---|---|
| 3CD8594 | 03/04/2002 | AMBERJACKS BAR & GRILL, INC & DANNY GHILAN TRUST 1993 |

THIS ENDORSEMENT CHANGES THE POLICY.

1.  Employer's Liability under 2. E. Exclusions, Commercial General Liability Coverage Form, Section I. - Coverage, is replaced by the following and applies throughout this policy:
    This insurance does not apply to any claim, suit, cost or expense arising out of "bodily injury" to
    (1) any employee of a Named Insured arising out of and in the course of employment or while performing duties related to the conduct of the insured's business; or
    (2) the spouse, child, parent, brother, sister or relative of that employee as a consequence of (1).
    This exclusion applies whether an Insured may be liable as an employer or in any other capacity, and/or to any obligation to share damages with or repay someone else who must pay damages because of the injury, as well as liability assumed under any "Insured Contract."
    Whenever the word "employee" appears above, it shall also mean any member, associate, leased worker, temporary worker or any person or persons loaned to or volunteering services to you.

    With respect to any "auto", under 2. Exclusions, g. Aircraft, Auto or Watercraft, Commercial General Liability Coverage Form, Section I. Coverages, the first paragraph is replaced by the following and applies throughout this policy:
    This insurance does not apply to "bodily injury" or "property damage" arising out of, caused by or contributed to by the ownership, non-ownership, maintenance, use or entrustment to others of any "auto." Use includes operation and "loading and unloading."

3.  Employment-Related Practices Exclusion is added to Coverages A and B, Section I, Commercial General Liability Coverage Form and to any other coverage under this policy as follows:
    Employment-Related Practices regardless of allegations are not covered under this policy nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same, including but not limited to:
    (A) Refusal to employ or Termination of Employment; or
    (B) Discrimination, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment in any form, humiliation or other employment-related practices, policies, acts or omissions; or
    (C) Consequential "Bodily Injury" or "Personal Injury" as a result or (A) and (B).

4.  Under 2. Exclusions, f. Pollution, Commercial General Liability Coverage Form, Section I. - Coverages, Pollution/environmental impairment/contamination is not covered under this policy, nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same in conjunction with occurrences arising or alleged to have arisen out of same. All liability and expense arising out of or related to any form of pollution, whether intentional or otherwise and whether or not any resulting injury, damage, devaluation, cost or expense is expected by any Insured or any other person or entity is excluded throughout this policy. All wording is replaced by the following:
    (A) "Bodily injury," "Personal Injury," "Property Damage," or Damages for the devaluation of property, or for taking, use or acquisition or interference with the rights of others in or on property or air space, or any other type injury or expense; or
    (B) Any loss, cost, expense, fines and/or penalties arising out of any (1) request, demand, order, governmental authority or directive or that of any private party or citizen action that any Insured, or others, test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess same the effects of pollutants, environmental impairments, contaminants or (2) any litigation or administrative procedure in which any Insured or others may be involved as a party as a result of actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or placement of pollutants, environmental impairments, contaminants into or upon land, premises, buildings, the atmosphere, any water course, body of water, aquifer or ground water, whether sudden, accidental or gradual in nature or not, and regardless of when.

Pollutants mean any solid, liquid, gaseous, fuel, lubricant, thermal, acoustic, electrical, or magnetic irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, fibers, radiation, acid, alkalis, petroleums, chemicals or waste. Waste includes medical waste and all other materials to be disposed of, recycled, stored, reconditioned or reclaimed.

5.   Asbestos, Lead or Silica Dust is not covered under this policy, nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same in conjunction with occurrences arising or alleged to have arisen out of:

    (A)   "Bodily Injury," "Personal Injury," "Property Damage" or Damages of any type, arising out of the inhalation, ingestion, physical exposure to, absorption of, or toxic substances from asbestos, lead or silica dust in any form, or from any goods, products or structures containing same, or "Property Damage" or devaluation of property arising from any form of same; or

    (B)   Existence of asbestos, silica dust or lead, in any form, in occupancy or construction, or the manufacture, sale, transportation, handling, storage, disposal, or removal of same, or goods or products containing same; or

    (C)   Any supervision, instructions, recommendations, requests, warnings or advice given or which should have been given, as well as any costs, including but not limited to abatement, mitigation, removal, contain, treat, detoxify, neutralize, or disposal of same or in any way respond to or assess the effects of same.

6.   Punitive or Exemplary Damages is not covered under this policy nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same.  (Exception: This does not apply to Punitive Damages from Wrongful Death brought under Alabama's Wrongful Death Statute.)

7.   Discrimination charges, of any kind, actual and alleged, are not covered under this policy, nor any expenses or obligation to share damages with or repay another whom must pay from same.

8.   If you are a contractor, builder or developer, there is no coverage under this policy for:

    (1)   "Bodily injury," "personal injury" or "property damage" caused by acts of independent Contractors/ subcontractors contracted by you or on your behalf unless you obtain Certificates of Insurance from them providing evidence of at least like coverage and limits of liability as provided by this policy and naming you as an additional insured.

    (2)   "Bodily injury," "personal injury" or "property damage" sustained by any independent contractor/ subcontractor, or any employee, leased worker, temporary or volunteer help of same, unless a Named Insured or employee of a Named Insured is on site, at the time of the injury or damage, and the Named Insured's actions or inactions are the direct cause of the injury or damage, or the injury or damage is directly caused by an employee of the Named Insured.

9.   Professional Liability, Malpractice, Errors, Omission, Acts of any type including rendering or failure to render any type professional service is not covered under this policy nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same, unless such coverage is specifically endorsed onto this policy.

10.   Duty to Defend:  Where there is no coverage under this policy, there is no duty to defend.

**ESSEX INSURANCE COMPANY**

# ENDORSEMENT

* Entry optional if shown in the Common Policy Declarations.  If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy

| *ATTACHED TO AND FORMING PART OF POLICY NO | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CD8594 | 03/04/2002 | AMBERJACKS BAR & GRILL, INC & DANNY GHILAN TRUST 1993 |

**THIS ENDORSEMENT CHANGES THE POLICY.**

## Amendment to M/E-001

It is hereby understood and agreed that Item 5 of either M/E-001(4/00) or M/E-001(4/99) is amended to read as follows:

5. Asbestos, Lead, Silica Dust, Mold, Bio-organic Growth or Mildew are not covered under this policy, nor are any expenses nor are any obligation to share damages with or repay anyone else who must pay damages from same in conjunction with occurrences arising or alleged to have arisen out of:

   (a) "Bodily Injury," "Personal Injury," "Property Damage" or Damages of any type, arising out of the inhalation, ingestion, physical exposure to, absorption of, or toxic substances from asbestos, lead, silica dust, mold, bio-organic growth or mildew in any form, or from any goods, products or structures containing same; or

   (b) Existence of asbestos, lead, silica dust, mold, bio-organic growth or mildew, in any form, in occupancy or construction, or the manufacture, sale, transportation, handling, storage, disposal, or removal of same, or goods or products containing same; or

   (c) Any supervision, instructions, recommendations, requests, or warnings or advice given or which should have been given, as well as any costs, including but not limited to abatement, mitigation, removal, containment, treatment, detoxification, neutralization, or disposal of same or in any way respond to assess the effects of same.

AUTHORIZED REPRESENTATIVE          DATE

M/E-001A (7/01)



# ESSEX INSURANCE COMPANY

# ENDORSEMENT

*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CD8534 | 03/04/2002 | AMBERJACKS BAR & GRILL, INC & DANNY GHILAN TRUST 1993 |

**THIS ENDORSEMENT CHANGES THE POLICY.**

## Amendment to M/E-001

It is hereby understood and agreed that SECTION 5. EXCLUSIONS; ITEM B. of M/E-001(Rev. 4/98) is amended to read as follows:

B.    ASBESTOS, LEAD, SILICA DUST, MOLD, BIO-ORGANIC GROWTH OR MILDEW:

(1)    Inhalation, ingestion, physical exposure to, absorption or actual or alleged presence of asbestos, silica dust, lead, mold, bio-organic growth or mildew, in any form, or toxic substances from same, and including but not limited to goods, products or structures containing same, and/or

(2)    the existence of asbestos, silica dust, lead, mold, bio-organic growth or mildew in any form, in occupancy or construction, or the manufacture, sale, transportation, handling, storage, disposal, or removal of same, or goods or products containing same, and/or

(3)    any supervision, instructions, recommendations, requests, warnings or advice given or which should have been given in regard to asbestos, silica dust, lead, mold, bio-organic growth or mildew and/or

(4)    any costs, including but not limited to, abatement, mitigation, removal or disposal of asbestos, silica dust, lead, mold, bio-organic growth or mildew, paint containing lead, plumbing solder, pipes and fixtures, soil or anything containing asbestos, silica dust, lead, mold, bio-organic growth or mildew in any form, and/or

(5)    any obligation to share damages with or repay anyone else who must pay damages in connection with the above.

_____/
AUTHORIZED REPRESENTATIVE          DATE

M/E-001B (07/01)

# ESSEX INSURANCE COMPANY

**MARKEL**

## ASSAULT AND/OR BATTERY EXCLUSION

\* Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CD8594 | 03/04/2002 | AMBERJACKS BAR & GRILL, INC & DANNY GHILAN TRUST 1993 |

**THIS ENDORSEMENT CHANGES THE POLICY.**

The coverage under this policy does not apply to any claim, suit, cost or expense arising out of assault and/or battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any Insured, Insured's employees, patrons or any other person. Nor does this insurance apply with respect to any charges or allegations of negligent hiring, training, placement or supervision. Furthermore, assault and/or battery includes "bodily injury" resulting from the use of reasonable force to protect persons or property. The sentence "This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property" is deleted from the Commercial General Liability Coverage Form, Section I, Item 2., Exclusions, a.

_____ / _____

AUTHORIZED REPRESENTATIVE    DATE

M/E-024 (9/00)

COMPANY

**ESSEX INSURANCE COMPANY**

**MARKEL**

## CLASSIFICATION LIMITATION ENDORSEMENT

\* Entry optional if shown in the Common Policy Declarations  If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CD8594 | 03/04/2002 | AMBERJACKS BAR & GRILL, INC & DANNY GHILAN TRUST 1993 |

THIS ENDORSEMENT CHANGES THE POLICY.

The coverage provided by this policy applies only to those operations specified in the application for insurance on file with the company and described under the "description" or "classification" on the declarations of the policy.

_____  /  _____

AUTHORIZED REPRESENTATIVE        DATE

M/E-030 (4/99)                      COMPANY

Page 1 of 1

**ESSEX INSURANCE COMPANY**

MARKEL

# CONTRACTUAL LIABILITY LIMITATION ENDORSEMENT

*Entry optional if shown in the Common Policy Declarations.  If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CD8594 | 03/04/2002 | AMBERJACKS BAR & GRILL, INC & DANNY GHILAN TRUST 1993 |

THIS ENDORSEMENT CHANGES THE POLICY.

Definition of "insured contract" under this policy is replaced by the following:

"Insured Contract" means any written:

1.    Lease of premises; or
2.    Easement agreement except in connection with construction or demolition operations on or adjacent to a railroad; or
3.    Indemnification of a municipality as required by ordinance, except in connection with work for the municipality; or
4.    Sidetrack agreement or any easement or license agreement in connection with vehicle or pedestrian private railroad crossings at grade; or
5.    Elevator maintenance agreement.

An "Insured Contract" does not include that part of any contract or agreement that indemnifies any person or organization for damage by fire to premises rented or loaned to you.

_____/_____

AUTHORIZED REPRESENTATIVE          DATE

M/E-039 (4/99)                              COMPANY

## ESSEX INSURANCE COMPANY

**MARKEL**

## DEDUCTIBLE ENDORSEMENT

\* Entry optional if shown in the Common Policy Declarations   if no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

| *ATTACHED TO AND FORMING PART OF POLICY NO | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CD8594 | 03/04/2002 | AMBERJACKS BAR & GRILL, INC & DANNY GHILAN TRUST 1993 |

**THIS ENDORSEMENT CHANGES THE POLICY.**

## SCHEDULE

**Coverage**                                    **Amount and Basis of Deductible**

If provided by this policy:
  Bodily Injury, Property Damage,
  Professional or Personal and
  Advertising Injury Liability                $ 1,000            Per Claim

Exception:

_____           $                   Per Claim

☐ If this box is so marked, the basis of deductible is amended to apply 'on a per item per claim' property damage deductible basis.

1.  Our obligation under Bodily Injury Liability, Property Damage Liability, Professional Liability, Personal and/or Advertising Injury Liability, or any other coverage under this policy, to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above. The deductible amount stated above shall be applicable to each claim and will include loss payments, adjustment, investigative and legal fees and costs, whether or not loss payment is involved.

2.  The deductible amount stated above applies under the coverages respectively to all damages sustained by one person, or organization, as the result of any one occurrence.

3.  The terms of this insurance, including those with respect to:
    (a)  Our right and duty to defend any "suits" seeking those damages; and
    (b)  Your duties in the event of an "occurrence," claim, or suit apply irrespective of the application of the deductible amount.

4.  We may pay any part or all of the deductible amount to effect settlement of any claim or suit and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

_____   /_____
AUTHORIZED REPRESENTATIVE        DATE

M/E-048 (4/99)                COMPANY                    N/A

**MARKEL**

## ESSEX INSURANCE COMPANY

## DATE RELATED/DATE SENSITIVE/YEAR 2000 COMPUTER RELATED FAILURES AND OTHER ELECTRONIC PROBLEMS EXCLUSION

*\* Entry optional if shown in the Common Policy Declarations  If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy*

| \*ATTACHED TO AND FORMING PART OF POLICY NO | \*EFFECTIVE DATE OF ENDORSEMENT | \*ISSUED TO |
|---|---|---|
| 3CD8594 | 03/04/2002 | AMBERJACKS BAR & GRILL, INC & DANNY GHILAN TRUST 1993 |

**THIS ENDORSEMENT CHANGES YOUR POLICY AND APPLIES TO ALL COVERAGES UNDER THIS POLICY.**

Year 2000 Computer-Related, and/or all date related failure(s) or date sensitive calculations which result in failure(s) and Other Electronic Problems are not covered under this policy, nor any consequential damages resulting therefrom, nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same, as a result of

(A)  any actual or alleged failure, malfunction or inadequacy of, whether belonging to an Insured or to others, computer hardware, including microprocessors (computer chips) whether a part of any computer system or not, computer application software, computer operating systems and related software, computer networks, any other computerized or electronic equipment or components, or any other products, and any services, data or functions that directly or indirectly use or rely upon in any form or manner any of the foregoing items, due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond dates, and/or all date related failure(s) or date sensitive calculations which result in failure(s) and

(B)  this applies as well to any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you, or by an independent or sub-contractor, to determine, rectify or test for any potential or actual problems in regard to the foregoing.

This exclusion does not apply to "bodily injury" occurring on the premises insured hereunder owned by or rented to you.

_____ / _____

AUTHORIZED REPRESENTATIVE        DATE

M/E-064 (4/99)

COMPANY

**MARKEL**

ESSEX INSURANCE COM...

## EMPLOYEES, LEASED WORKERS OR VOLUNTEERS ENDORSEMENT

*\* Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of this endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CD8594 | 03/04/2002 | AMBERJACKS BAR & GRILL, INC & DANNY GHILAN TRUST 1993 |

**THIS ENDORSEMENT CHANGES THE POLICY.**

The coverage under this policy does not apply to "bodily injury", "property damage", "personal injury", "advertising injury", or any injury, loss or damge to an employee, leased worker, casual labor or volunteer of any insured arising out of:

1. And in the course of employment for which any insured may be held liable as an employer or in any other capacity;

2. Any obligation of any insured to indemnify or contribute with another because of injury, loss or damage;

3. Injury, loss or damage sustained by the spouse, parent, brother, sister, other relative, companion or offspring of an employee, leased worker, casual labor, or volunteer of any insured as a consequence of his employment or activity.

This exclusion applies to all causes of action including care and loss of services.

_____

AUTHORIZED REPRESENTATIVE          DATE

M/E-067(4/99)                    COMPANY

**MARKEL**

## ESSEX INSURANCE COMPANY

## LIQUOR LIABILITY EXCLUSION AMENDED

*Entry optional if shown in the Common Policy Declarations  If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CD8594 | 03/04/2002 | AMBERJACKS BAR & GRILL, INC & DANNY GHILAN TRUST 1993 |

THIS ENDORSEMENT MODIFIES THE POLICY.

Liquor Liability 2.c. Exclusions, Commercial General Liability Coverage Form, Section I - Coverage, is replaced by the following and applies throughout this policy:

The coverage under this policy does not apply to "bodily injury", "property damage", "personal injury", "advertising injury", or any injury, loss or damage arising out of:

1.) Causing or contributing to the intoxication of any person; and/or

2.) Furnishing alcoholic beverages to anyone under legal drinking age or under the influence of alcohol; and/or

3.) Any statute, ordinance or regulation relating to sales, gift, distribution or use of alcoholic beverages; and/or

4.) Any act or omission by any insured, any employee of any insured, patrons, members, associates, volunteers or any other persons respects providing or failing to provide transportation, detaining or failing to detain any person, or any act of assuming or not assuming responsibility for the well being, supervision or care of any person allegedly under or suspected to be under the influence of alcohol.

This exclusion applies to the entire policy.

_____ / _____

AUTHORIZED REPRESENTATIVE          DATE

M/E-126 (4/99)

COMPANY

**ESS_X INSURANCE COMPANY**

**MARKEL**

# MALPRACTICE & TRANSPORTATION EXCLUSION

*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CD8594 | 03/04/2002 | AMBERJACKS BAR & GRILL, INC & DANNY GHILAN TRUST 1993 |

**THIS ENDORSEMENT CHANGES THE POLICY.**

The coverage under this policy does not apply to "bodily injury", "property damage", "personal injury", "advertising injury", or any injury, loss or damage arising out of:

1.  The rendering of or failure to render any professional service; or

2.  The transportation of clients, students, employees or any other persons.

_____ / _____

AUTHORIZED REPRESENTATIVE       DATE

## ESSEX INSURANCE COMPANY

**MARKEL**

## MINIMUM EARNED PREMIUM ENDORSEMENT

* Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CD8594 | 03/04/2002 | AMBERJACKS BAR & GRILL, INC & DANNY GHILAN TRUST 1993 |

**THIS ENDORSEMENT CHANGES THE POLICY.**

If this insurance policy is cancelled at your request, there will be a Minimum Earned Premium retained by us of $ _____ or ____25____ %(per cent) of the premium, whichever is the greater. Cancellation for nonpayment of premium is considered a request by the first Named Insured for cancellation of this policy.

_____ / _____
AUTHORIZED REPRESENTATIVE            DATE

M/E-143 (4/99)                    COMPANY

**ESS_X INSURANCE COMPANY**

**MARKEL**

# PARTICIPANTS, ATHLETIC, SPORTS OR CONTESTANTS EXCLUSION

• *Entry optional if shown in the Common Policy Declarations.  If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CD8594 | 03/04/2002 | AMBERJACKS BAR & GRILL, INC & DANNY GHILAN TRUST 1993 |

**THIS ENDORSEMENT CHANGES THE POLICY.**

Description of Operations:
(if different from those shown in the declarations)

RESTAURANT & BAR

With respect to any operations shown above or in the declarations, this insurance does not apply to "bodily injury", to any person while practicing for or participating in any sports or athletic contest or exhibition that you sponsor, promote or endorse.

———————————————————————  /
AUTHORIZED REPRESENTATIVE              DATE

M/E-155 (4/99)                    COMPANY

**MARKEL**

ESSEX INSURANCE COMPANY

# SUBSIDENCE EXCLUSION ENDORSEMENT

\* *Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy*

| *ATTACHED TO AND FORMING PART OF POLICY NO | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CD8594 | 03/04/2002 | AMBERJACKS BAR & GRILL, INC & DANNY GHILAN TRUST 1993 |

**THIS ENDORSEMENT CHANGES THE POLICY.**

This policy does not apply to any liability for "Bodily Injury", "Personal Injury", disease or illness, including death, or "Property Damage" or to loss of, damage to, or loss of property, directly or indirectly arising out of, caused by, resulting from, contributed to or aggravated by the subsidence, settling, sinking, slipping, falling away, caving in, shifting, eroding, mud flow, rising, tilting, bulging, cracking, shrinking or expansion of foundations, walls, roofs, floors, or ceilings, or any other movements of land or earth, regardless of whether the foregoing emanates from, or is attributable to, any operations performed by or on behalf of any insured. The foregoing applies regardless of whether the first manifestation of same occurs during the policy period or prior or subsequent thereto.

It is further agreed that there is no coverage nor defense under this policy for any claims, loss, costs, or expense arising from any allegations against any insured resulting from or contributing to or aggravated by subsidence as described in the first paragraph of this endorsement.

_____/_____
AUTHORIZED REPRESENTATIVE          DATE

M/E-221 (4/99)                    COMPANY

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V - Definitions.

## SECTION I - COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverage A and B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

      (2) The "bodily injury" or "property damage" occurs during the policy period.

   c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

   This insurance does not apply to:

   a. **Expected Or Intended Injury**

      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of rea-

sonable force to protect persons or property.

   b. **Contractual Liability**

      "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

      (1) That the insured would have in the absence of the contract or agreement; or

      (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

         (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

         (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

   c. **Liquor Liability**

      "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

      (1) Causing or contributing to the intoxication of any person;

      (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

      (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages

      This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

   d. **Workers' Compensation And Similar Laws**

Any obligation of the insurer under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

    (a) Employment by the insured; or

    (b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph **(1)** above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f. **Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

    (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

        (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

        (ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

        (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

    (b) At or from any premises, site or location which is or was at any time used

by, or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

    (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

    (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

    (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors work-

Copyright, Insurance Services Office, Inc  1997

ing directly or in... ly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a government authority.

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising

out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. **Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III - Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

l. **Damage To Your Work**

"Property damage" to "your work" arising out

cf it or any part of it a... included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III - Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

1. **Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which

this insur... does not apply. We may, at our discretion, ...vestigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions**

This insurance does not apply to:

a. "Personal and advertising injury":

(1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

(2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(4) Arising out of a criminal act committed by or at the direction of any insured;

(5) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

(6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in an "advertisement";

(7) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement",

(8) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

(9) Committed by an insured whose business is advertising, broadcasting, publishing or telecasting. However, this exclusion does not apply to paragraphs

Copyright, Insurance Services Office, Inc . 1997

14.a., b. and c. of "personal and adver-
tising injury" under the Definitions sec-
tion; or

(10) Arising out of the actual, alleged or
threatened discharge, dispersal, see-
page, migration, release or escape of
"pollutants" at any time.

b. Any loss, cost or expense arising out of any:

(1) Request, demand or order that any
insured or others test for, monitor, clean
up, remove, contain, treat, detoxify or
neutralize, or in any way respond to, or
assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a gov-
ernmental authority for damages be-
cause of testing for, monitoring, clean-
ing up, removing, containing, treating,
detoxifying or neutralizing, or in any way
responding to, or assessing the effects
of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

1. **Insuring Agreement**

a. We will pay medical expenses as described
below for "bodily injury" caused by an
accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or
rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "cov-
erage territory" and during the policy
period;

(2) The expenses are incurred and reported
to us within one year of the date of the
accident; and

(3) The injured person submits to examin-
ation, at our expense, by physicians of
our choice as often as we reasonably
require.

b. We will make these payments regardless of
fault. These payments will not exceed the
applicable limit of insurance. We will pay
reasonable expenses for:

(1) First aid administered at the time of an
accident;

(2) Necessary medical, surgical, x-ray and
dental services, including prosthetic
devices; and

(3) Necessary ambulance, hospital, pro-
fessional nursing and funeral services.

2. **Exclusions**

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf
of any insured or a tenant of any insured.

c. To a person injured on that part of premises
you own or rent that the person normally
occupies.

d. To a person, whether or not an "employee" of
any insured, if benefits for the "bodily injury"
are payable or must be provided under a
workers' compensation or disability benefits
law or a similar law.

e. To a person injured while taking part in ath-
letics.

f. Included within the "products-completed
operations hazard".

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any
act or condition incident to war. War includes
civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

1. We will pay, with respect to any claim we investi-
gate or settle or any "suit" against an insured we
defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required
because of accidents or traffic law violations
arising out of the use of any vehicle to which
the Bodily Injury Liability Coverage applies.
We do not have to furnish these bonds.

c. The cost of bonds to release attachments,
but only for bond amounts within the applic-
able limit of insurance. We do not have to
furnish these bonds.

d. All reasonable expenses incurred us by the
insured at our request to assist us in the
investigation or defense of the claim or "suit",
including actual loss of earnings up to $250 a
day because of time off from work.

e. All costs taxed against the insured in the
"suit".

f. Prejudgment interest awarded against the
insured on that part of the judgment we pay.
If we make an offer to pay the applicable limit
of insurance, we will not pay any prejudg-
ment interest based on that period of time
after the offer.

g. All interest on the full amount of any judg-
ment that accrues after entry of the judgment
and before we have paid, offered to pay, or
deposited in court the part of the judgment
that is within the applicable limit of insurance.

These payments will not reduce the limits of insur-
ance.

2. If we defend an insured against a "suit" and an
indemnitee of the insured is also named as a
party to the "suit", we will defend that indemnitee
if all of the following conditions are met:

a. The "suit" against the indemnitee seeks dam-
ages for which the insured has assumed the
liability of the indemnitee in a contract or

agreement that is an "insur.. ..ntract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 2.b.(2) of Section I - Coverage A - Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damages" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above. or the terms of the agreement described in paragraph f.

above, a. ..onger met.

**SECTION II - WHO IS AN INSURED**

1. If you are designated in the Declarations as:

a. An individual. you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners. and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above. or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care. custody or

Copyright  Insurance Services Office, Inc., 1997

control of, or which physical control is being exercised for any purpose by you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

   (1) With respect to liability arising out of the maintenance or use of that property; and

   (2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a. Damages under Coverage A; and

b. Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months. starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

Copyright Insurance Services Office Inc , 1997

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not

payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. **Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to exclusion g. of Section I - Coverage A - Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

Copyright, Insurance Services Office, Inc., 1997

CL 137 (7-98)
CG 00 01 07 98

(1) The total amount that such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

c. All parts of the world if:

(1) The injury or damage arises out of:

(a) Goods or products made or sold by you in the territory described in a. above; or

(b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which comes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   (a) Preparing, approving or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or draw-

ings and specifications; or

   (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   (1) Power cranes, shovels, loaders, diggers or drills; or

   (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

Copyright, Insurance Services Office, Inc. 1997

(2) Cherry pickers and similar devices used to raise or lower worke.

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent, or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is

furnished to you to substitute a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Your product" means:

   a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      (1) You;

      (2) Others trading under your name; or

      (3) A person or organization whose business or assets you have acquired; and

   b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   "Your product" includes:

   a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product";

and

   b. The providing of or failure to provide warnings or instructions.

   "Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

21. "Your work" means:

   a. Work or operations performed by you or on your behalf; and

   b. Materials, parts or equipment furnished in connection with such work or operations.

   "Your work" includes:

   a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

   b. The providing of or failure to provide warnings or instructions.

Copyright, Insurance Services Office, Inc., 1997

CL 137 (7-98)
CG 00 01 07 98

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

CG 21 35 10 93

# EXCLUSION - COVERAGE C - MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective | | Policy No. |
|---|---|---|
| 03/04/2002 | 12:01 A.M. standard time | 3CD8594 |
| Named Insured<br>AMBERJACKS BAR & GRILL, INC &<br>DANNY GHILAN TRUST 1993 | | Countersigned by |

(Authorized Representative)

## SCHEDULE

**Description and Location of Premises or Classification:**
RESTAURANT & BAR
209 W. AMBERJACK, SOUTH PADRE ISLAND, TX 78597


(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule, coverage **C. MEDICAL PAYMENTS** (Section I) does not apply and none of the references to it in the Coverage Part apply

The following is added to SUPPLEMENTARY PAYMENTS (Section I):

8.  Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.

Copyright. Insurance Services Office, Inc., 1992

COMPANY

THIS ENDORSEMEN ⌒ ANGES THE POLICY. PLEASE ʀ. ⌐ IT CAREFULLY.

CG 24 07 01 96

# PRODUCTS/COMPLETED OPERATIONS HAZARD REDEFINED

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement effective | Policy No. |
|---|---|
| 03/04/2002    12:01 A.M. standard time | 3CD8594 |
| Named Insured<br>AMBERJACKS BAR & GRILL, INC &<br>DANNY GHILAN TRUST 1993 | Countersigned by |

(Authorized Representative)

## SCHEDULE

**Description of Premises and Operations:**

RESTAURANT & BAR
209 W. AMBERJACK, SOUTH PADRE ISLAND, TEXAS 78597

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to "bodily injury" or "property damage" arising out of "your products" manufactured, sold, handled or distributed:

1. On, from or in connection with the use of any premises described in the Schedule, or

2. In connection with the conduct of any operation described in the Schedule, when conducted by you or on your behalf.

Paragraph a. of the definition of "Products-completed operations hazard" in the DEFINITIONS Section is replaced by the following:

"Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" that arises out of "your products" if the "bodily injury" or "property damage" occurs after you have relinquished possession of those products.

COMPANY

Copyright. Insurance Services Office, Inc . 1994



## ESSEX INSURANCE COMPANY

**MARKEL**

## ENDORSEMENT

1

*The following spaces preceded by an asterisk (\*) need not be completed if this endorsement and the policy have same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CD8594 | 03/04/2002 | Amberjack's Bar & Grill, Inc. |

IN CONSIDERATION OF $243.00 IN ADDITIONAL PREMIUM, IT IS HEREBY AGREED TO AMEND THE PREMIUM BASIS AMOUNT ON FORM 011-1061(8-94), COMMERCIAL GENERAL LIABILITY COVERAGE PART SUPPLEMENTAL DECLARATIONS, TO READ 1,789,018 IN LIEU OF 1,763,000, PER FINAL AUDIT.

```
ADDITIONAL PREMIUM :        $243.00
STATE TAX :                   11.79
STAMPING FEE :                  .61

TOTAL DUE :                 $255.40
```

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

Authorized Representative

*In Witness Whereof,* the Company has caused this endorsement to be signed by a duly authorized representative of the Company

U. S. RISK UNDERWRITERS, INC.
11200 RICHMOND AVE, SUITE 600
HOUSTON, TX  77082

114

RANDALL G. GOSS, CHAIRMAN/CEO

AUTHORIZED REPRESENTATIVE

011-1009 (7-80)                    COMPANY

**ESSEX INSURANCE COM.. .NY**

**MARKEL**

# ENDORSEMENT

2

The following spaces preceded by an asterisk (*) need not be completed if this endorsement and the policy have same inception date.

| ATTACHED TO AND FORMING PART OF POLICY NO | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CD8594 | 03/04/2002 | AMBERJACKS BAR & GRILL |

In consideration of no change in premium, it is agreed and understood the following forms are hereby added to the policy per the attached:

ME-189, ME-217 & CG2169


Houston, Texas
1/31/03 va/ekm


Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

Authorized Representative

U. S. RISK UNDERWRITERS, INC.
11200 RICHMOND AVE., SUITE 600
HOUSTON, TX 77082
174550

011 - 1009 (7-80)          COMPANY

In Witness Whereof, the Company has caused this endorsement to be signed by a duly authorized representative of the Company

AUTHORIZED REPRESENTATIVE



# ESSEX INSURANCE COMPANY

**MARKEL**

## RESTAURANT, BAR, TAVERN, NIGHT CLUBS, FRATERNAL AND SOCIAL CLUBS ENDORSEMENT

\* Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy

| \*ATTACHED TO AND FORMING PART OF POLICY NO | \*EFFECTIVE DATE OF ENDORSEMENT | \*ISSUED TO |
|---|---|---|
| 3CD8594 | 03/04/2002 | AMBERJACKS BAR & GRILL |

### THIS ENDORSEMENT CHANGES THE POLICY.

The coverage under this policy does not apply to "bodily injury," "property damage," "personal injury," "advertising injury," or any injury, loss or damage arising out of:

1.   Injury to any entertainer, stage hand, crew, independent contractor, or spectator, patron or customer who participates in or is a part of any athletic event, demonstration, show, competition or contest; or

2.   To property or equipment of any one in 1. above; or

3.   Any mechanical ride, slides, boat docks, piers, or swimming pools; or

4.   Assault and/or Battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any Insured, Insured's employees, patrons or any other person. Furthermore, assault and/or battery includes "bodily injury" resulting from the use of reasonable force to protect persons or property. The sentence "This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property" is deleted from the Commercial General Liability Coverage Form, Section I, Item 2., Exclusions, a.

5.   Liquor Liability.  Liquor Liability 2.c. Exclusion, Commercial General Liability Coverage Form,  Section I-Coverage, is replaced by the following and applies throughout this policy:

The coverage under this policy does not apply to "bodily injury," "property damage," "personal injury," "advertising injury," or any injury, loss or damage arising out of:

a.)  Causing or contributing to the intoxication of any person; and/or

b.)  Furnishing alcoholic beverages to anyone under legal drinking age or under the influence of alcohol; and/or

c.)  Any statute, ordinance or regulation relating to sales, gift, distribution or use of alcoholic beverages; and/or

d.)  Any act or omission by any insured, any employee of any insured, patrons, members, associates, volunteers or any other persons respects providing or failing to provide transportation, detaining or failing to detain any person, or any act of assuming or not assuming responsibility for the well being, supervision or care of any person allegedly under or suspected to be under the influence of alcohol; or

6.   Any charges or allegations of negligent hiring, employment, training, placement or supervision, nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same covered in this policy.

M/E-189 (9/00)

AUTHORIZED REPRESENTATIVE     DATE

N/A



**MARKEL**

## E ̄EX INSURANCE COMPANY

## SPECIFIED /DESIGNATED PREMISES/PROJECT LIMITATION

*\* Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CD8594 | 03/04/2002 | AMBERJACKS BAR & GRILL |

THIS ENDORSEMENT CHANGES THE POLICY.

Schedule

**Premises:**

**Project:**

(Complete above if information different than that shown in the Declarations)

This insurance applies only to "bodily injury", "property damage", "personal injury", "advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule (or Declarations);
   or

2. The project shown in the Schedule (or Declarations).

_____ /
AUTHORIZED REPRESENTATIVE    DATE

M/E-217 (11/99)                COMPANY

N/A

COMMERCIAL GENERAL LIABILITY
CG 21 69 01 02

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# WAR OR TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Exclusion **i.** under Paragraph **2., Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

2. **Exclusions**

This insurance does not apply to:

i. **War Or Terrorism**

"Bodily injury" or "property damage" arising, directly or indirectly, out of:

(1) War, including undeclared or civil war; or

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

(4) "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

However, with respect to "terrorism", this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

(1) The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

(2) Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

(a) Physical injury that involves a substantial risk of death; or

(b) Protracted and obvious physical disfigurement; or

(c) Protracted loss of or impairment of the function of a bodily member or organ; or

(3) The "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

(4) The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

N/A

added

© ISO Properties, Inc., 2001

(5) Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Paragraphs (1) and (2), immediately preceding, describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**B.** The following exclusion is added to Paragraph 2., Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:

**2. Exclusions**

This insurance does not apply to:

**War Or Terrorism**

"Personal and advertising injury" arising, directly or indirectly, out of:

(1) War, including undeclared or civil war; or

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

(4) "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

regardless of any other cause or event that contributes concurrently or in any sequence to the injury.

However, with respect to "terrorism", this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

(1) The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions ; or

(2) Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

(a) Physical injury that involves a substantial risk of death: or

(b) Protracted and obvious physical disfigurement; or

(c) Protracted loss of or impairment of the function of a bodily member or organ; or

(3) The "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

(4) The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

© ISO Properties, Inc., 2001    CG 21 69 01 02

(5) Pathogenic or poisonous biological or chemical materials are released. and it appears that one purpose of the "terrorism" was to release such materials.

Paragraphs (1) and (2), immediately preceding, describe the thresholds used to measure the magnitude of an incident of "terrorism' and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C. Exclusion h. under Paragraph 2., Exclusions of Section I - Coverage C - Medical Payments does not apply.

D. The following definition is added to the Definitions Section:

"Terrorism" means activities against persons. organizations or property of any nature:

1. That involve the following or preparation for the following:

   a. Use or threat of force or violence; or

   b. Commission or threat of a dangerous act; or

   c. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2. When one or both of the following applies:

   a. The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

   b. It appears that the intent is to intimidate or coerce a government, or to further political. ideological. religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

© ISO Properties, Inc., 2001

# ESSEX INSURANCE COMPANY

**MARKEL**

# ENDORSEMENT

1

*The following spaces preceded by an asterisk (\*) need not be completed if this endorsement and the policy have same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CD8594 | 03/04/2002 | AMBERJACKS BAR & GRILL, INC. & DANNY GHILAN TRUST 1993 |

In consideration of the premium charged, it is agreed and understood the following endorsement is hereby added to the policy per the attached:

M/E001(4/00)

It is further agreed and understood the following endorsements are hereby deleted from the policy:
M/E001B, M/E024, M/E126, M/E129, M/E067 & M/E221

Houston, Texas
09/18/02 va/ekm

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

Authorized Representative

*In Witness Whereof,* the Company has caused this endorsement to be signed by a duly authorized representative of the Company

U.S. Risk Underwriters, Inc.
11200 Richmond Ave., #600
Houston, Texas 77082
174550

_____
AUTHORIZED REPRESENTATIVE

011 - 1009 (7-80)                    COMPANY

# ESSEX INSURANCE COMPANY

**MARKEL**

## RESTAURANT, BAR, TAVERN, NIGHT CLUBS, FRATERNAL AND SOCIAL CLUBS ENDORSEMENT

*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CD8594 | 03/04/2002 | AMBERJACKS BAR & GRILL, INC. & DANNY GHILAN TRUST 1993 |

**THIS ENDORSEMENT CHANGES THE POLICY.**

The coverage under this policy does not apply to "bodily injury," "property damage," "personal injury," "advertising injury," or any injury, loss or damage arising out of:

1.   Injury to any entertainer, stage hand, crew, independent contractor, or spectator, patron or customer who participates in or is a part of any athletic event, demonstration, show, competition or contest; or

2.   To property or equipment of any one in 1. above; or

3.   Any mechanical ride, slides, boat docks, piers, or swimming pools; or

4.   Assault and/or Battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any Insured, Insured's employees, patrons or any other person. Furthermore, assault and/or battery includes "bodily injury" resulting from the use of reasonable force to protect persons or property. The sentence "This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property" is deleted from the Commercial General Liability Coverage Form, Section I, Item 2., Exclusions, a.

5.   Liquor Liability.  Liquor Liability 2.c. Exclusion, Commercial General Liability Coverage Form, Section I-Coverage, is replaced by the following and applies throughout this policy:

The coverage under this policy does not apply to "bodily injury," "property damage," "personal injury," "advertising injury," or any injury, loss or damage arising out of:

a.)   Causing or contributing to the intoxication of any person; and/or

b.)   Furnishing alcoholic beverages to anyone under legal drinking age or under the influence of alcohol; and/or

c.)   Any statute, ordinance or regulation relating to sales, gift, distribution or use of alcoholic beverages; and/or

d.)   Any act or omission by any insured, any employee of any insured, patrons, members, associates, volunteers or any other persons respects providing or failing to provide transportation, detaining or failing to detain any person, or any act of assuming or not assuming responsibility for the well being, supervision or care of any person allegedly under or suspected to be under the influence of alcohol; or

6.   Any charges or allegations of negligent hiring, employment, training, placement or supervision, nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same covered in this policy.

M/E-189 (9/00)

AUTHORIZED REPRESENTATIVE    DATE

N/A

2405?

FILED 9:15 O'CLOCK A M
AURORA DE LA GARZA DIS". CLERK

JAN 3 0 2004

2004-01-536-E

| | | |
|---|---|---|
| JUDY LEMMONS<br>PLAINTIFF | § § § § § § | IN THE   DISTRICT COURT |
| VS | § § § § § | 357th JUDICIAL   DISTRICT |
| DANIEL B. GHILAIN<br>LEEANNE GHILAIN<br>DEFENDANTS | § § § § § | CAMERON COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

### TO THE HONORABLE COURT

NOW COMES Plaintiff JUDY LEMMONS and files this **PLAINTIFFS' ORIGINAL PETITION** complaining of DANIEL B. GHILAIN AND LEEANNNE GHILAIN Defendants and for cause of action Plaintiff would show:

### I.

Plaintiff Judy Lemmons is a resident of Cameron County, Texas; Defendants Ghilain are residents of Cameron County, Texas residing on South Padre Island and may be reached for service at 209 West Amberjack, South Padre Island, Cameron County, Texas. Plaintiff alleges discovery shall be conducted under Level 3, Rule 190.4, Texas Rules of Civil Procedure.

### II.

Plaintiff alleges that Defendants Ghilain have stated to third parties that Plaintiff has "embezzled quite a lot of money to the tune of $200,000.00 from Amberjacks". The statement by itself is slander per se as it directly or by innuendo accuses the Plaintiff of criminal acts. The statements made by Defendants are statutory slander because they tend to injure Plaintiffs' reputation and expose Plaintiff to public hatred, contempt, ridicule, and financial injury and impeach the honesty and integrity of the Plaintiff.

### IV.

Defendants Ghilain published the defamatory statements set out above to third parties within the business community of South Padre Island, Texas and others unknown to Plaintiff. The persons who overheard the statements understood the statement to be defamatory in the manner described above. Furthermore the persons who heard the statements understood that they referred directly to the Plaintiff. Plaintiff seeks damages in the amount of Two Million Dollars ($2,000,000.00).

**EXHIBIT**

_C_

## V.

The defamatory statements set forth above are false. The truth is that Defendants purchased Plaintiff's interest from a partnership and ownership in the restaurant "Amberjacks". Plaintiff was the in-house bookkeeper and maintained the accounts payables, accounts receivable, marketing payroll and group sales for the partnership, Amberjacks Bar and Grill, Inc. Defendant LeeAnn Ghilain disliked Plaintiff personally and refused to speak to Plaintiff and wished to discredit Plaintiff. Plaintiff believes that Defendant harbored ill feelings for Plaintiff for several years before Plaintiff's interest was purchased.

## IV.

The Defendant's publication of the defamatory statements are not privileged and Defendant has published the defamatory statement with malice and substantial grounds for knowing that they are false and with reckless disregard to whether the statements were true or false. Plaintiff requests punitive damages in an amount in excess of the jurisdictional limits of the court. Plaintiff further requests the issuance of a permanent injunction enjoining the Defendants from slandering the Plaintiff in the future.

WHEREFORE PREMISES considered Plaintiff request that Defendants be cited to appear and that upon hearing hereof that Plaintiff have judgment against the Defendants jointly and severally, for damages in the amount of Two Million ($2,000,000.00), punitive damages, the issuance of a permanent injunction, prejudgment interest, post judgment interest, costs of court and general relief.

RESPECTFULLY SUBMITTED,

R.W. Armstrong
Attorney At Law
2600 Old Alice Road Ste A
Brownsville Texas 78521
(956) 546 5556
(956) 546 0470 fax
Texas Bar Number 01323500

R.W. Armstrong