Westlaw.

939 S.W.2d 139
939 S.W.2d 139, 40 Tex. Sup. Ct. J. 353
(Cite as: 939 S.W.2d 139)

Supreme Court of Texas.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA, Petitioner,
v.
MERCHANTS FAST MOTOR LINES, INC.,
Merchants of Texas, Inc., Merchants Truckload
Company, Inc., and Gordon D. Hart, Respondents.

No. 96-0633.

Feb. 21, 1997.

Insurer brought declaratory judgment action, seeking determination that it had no duty to defend insured trucking company and its driver under trucker's coverage policy. The 104th District Court, Taylor County, B.J. Edwards, J., entered summary judgment holding that insurer had no duty to defend. Trucking company and driver appealed. The Court of Appeals, 919 S.W.2d 903, Arnot, C.J., reversed. Insurer petitioned for writ of error. The Supreme Court held that allegation in pleadings that insured's driver was operating insured's truck when he negligently discharged firearm did not allege that injury from gunshot was "caused by an accident resulting from . . . use of a covered auto" as would trigger insurer's duty to defend.

Reversed and rendered.

West Headnotes

[1] Insurance ☞2914
217k2914 Most Cited Cases
(Formerly 217k514.10(1))
If petition does not allege facts within scope of insurance policy's coverage, insurer is not legally required to defend suit against its insured.

[2] Insurance ☞2914
217k2914 Most Cited Cases
(Formerly 217k514.10(1), 217k514.9(1))
Under "eight corners" rule, insurer's duty to defend is determined by allegations in pleadings and language of insurance policy.

[3] Insurance ☞2914
217k2914 Most Cited Cases
(Formerly 217k514.10(1))
Allegations in petition are given liberal interpretation in applying "eight corners" rule to determine whether insurer is required to defend suit against its insured.

[4] Insurance ☞2914
217k2914 Most Cited Cases
(Formerly 217k514.10(1))
If complaint does not state facts sufficient to clearly bring case within or without coverage, general rule is that insurer is obligated to defend if there is, potentially, case under complaint within coverage of policy.

[5] Insurance ☞2914
217k2914 Most Cited Cases
(Formerly 217k514.10(1))
Doubt as to whether allegations of complaint against insured state cause of action within coverage of liability policy sufficient to compel insurer to defend action is resolved in insured's favor.

[6] Insurance ☞2914
217k2914 Most Cited Cases
(Formerly 217k514.10(1))
In reviewing underlying pleadings to determine whether insurer must defend its insured, court must focus on factual allegations that show origin of damages rather than on legal theories alleged.

[7] Insurance ☞2893
217k2893 Most Cited Cases
(Formerly 217k514.10(2))

[7] Insurance ☞2914
217k2914 Most Cited Cases
(Formerly 217k514.10(2))
Allegation that insured's employee "was operating the tractor-trailer" when employee negligently discharged firearm was enough to allege "use of a covered auto" for purposes of determining whether truckers policy obligated insured to defend claim.

[8] Insurance ☞2675
217k2675 Most Cited Cases
(Formerly 217k435.27)

[8] Insurance ☞2678
217k2678 Most Cited Cases
(Formerly 217k435.27, 217k514.10(2))
Allegation in pleadings that insured's driver was operating insured's truck when he negligently discharged firearm did not allege that injury from gunshot was "caused by an accident resulting from . . . use of a covered auto" as would trigger insurer's duty to defend.

[9] Insurance ☞2674
217k2674 Most Cited Cases
(Formerly 217k435.27)

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

939 S.W.2d 139
939 S.W.2d 139, 40 Tex. Sup. Ct. J. 353
**(Cite as: 939 S.W.2d 139)**

Page 2

[9] **Insurance** ☞2678
217k2678 Most Cited Cases
(Formerly 217k435.27)
Mere fact that automobile is situs of accident is not enough to establish necessary nexus between use of automobile and accident to warrant conclusion that accident resulted from such use, for purposes of truckers policy insuring insured against sums insured would pay as damages for bodily injury or property damage "caused by an accident and resulting from the ownership, maintenance or use of a covered auto."

[10] **Insurance** ☞2915
217k2915 Most Cited Cases
(Formerly 217k514.10(2))
In reviewing underlying pleadings to determine whether insurer must defend its insured, court will not look outside pleadings, or imagine factual scenarios which might trigger coverage.
***140** Susan L. Abbott-Schwartz, Dana Shelhimer, Dallas, for Petitioner.

Malcolm Schulz, Abilene, Arlen D. Bynum, Dallas, for Respondents.

**OPINION**

PER CURIAM

This is a declaratory judgment action. The issue is whether a truck driver's allegedly negligent discharge of a gun, killing a ***141** passenger in another vehicle, triggers a duty to defend under the truck owner's vehicle liability policy. The trial court rendered summary judgment holding the insurer had no duty to defend. The court of appeals reversed. We reverse the judgment of the court of appeals and render judgment for the insurer.

The underlying pleadings allege that while operating a Merchants Fast Motor Lines truck, Gordon D. Hart "negligently discharged a firearm and caused a bullet to strike" Casimiro Gonzalez, who was a passenger in a van traveling alongside Hart's truck. Gonzalez later died from the gunshot wound. These are the only facts about the shooting in the pleadings. Gonzalez's parents and children brought a wrongful death action, alleging that Hart was negligent in handling a firearm. They also alleged that Merchants was negligent in hiring Hart and in failing to provide proper supervision of its driver. Merchants and Hart requested that National Union defend them in the underlying suit under either a commercial general liability policy or a truckers policy that National Union issued. National Union disputed its duty to defend Hart under the CGL policy in both its declaratory judgment action and on appeal. However, in a single point of error to this Court, National Union complains only that the court of appeals erred in reversing the summary judgment on its duty to defend Merchants and Hart under the truckers policy.

National Union's truckers policy provides:
We will pay all sums an insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto.
Although the court of appeals cautioned that a fully developed record was necessary to determine whether coverage exists, it held that plaintiffs' allegations stated a cause of action potentially covered by the policy. We disagree.

[1][2] If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured. *American Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 848 (Tex.1994); *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex.1982). An insurer's duty to defend is determined by the allegations in the pleadings and the language of the insurance policy. *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex.1965); *American Physicians*, 876 S.W.2d at 847-48; *Argonaut Southwest Ins. Co. v. Maupin*, 500 S.W.2d 633, 636 (Tex.1973). This is sometimes referred to as the "eight corners" rule. *See Cluett v. Medical Protective Co.*, 829 S.W.2d 822, 829 (Tex.App.--Dallas 1992, writ denied).

[3][4][5][6] When applying the eight corners rule, we give the allegations in the petition a liberal interpretation. As this Court has explained:
Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy. Stated differently, in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in insured's favor.
*Heyden*, 387 S.W.2d at 26 (citing 50 A.L.R.2D 458, 504). However, as the court of appeals stated, "[i]n reviewing the underlying pleadings, the court must focus on the factual allegations that show the origin

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

939 S.W.2d 139
939 S.W.2d 139, 40 Tex. Sup. Ct. J. 353
(Cite as: 939 S.W.2d 139)

Page 3

of the damages rather than on the legal theories alleged." 919 S.W.2d at 905. *See also Adamo v. State Farm Lloyds Co., 853 S.W.2d 673, 676 (Tex.App.--Houston [14th Dist.] 1993, writ denied)* ("It is not the cause of action alleged that determines coverage but the *facts* giving rise to the alleged actionable conduct") (emphasis in original).

[7] The only facts alleged in the underlying case are that Hart was operating a Merchants truck when he negligently discharged a firearm injuring Gonzalez. Given their most liberal interpretation, these allegations do not suggest that Gonzalez's injury resulted *142 from the use of the truck. The allegation that Hart "was operating the tractor-trailer" is enough to allege "use of a covered auto." *See State Farm Mut. Auto. Ins. Co. v. Pan Am. Ins. Co., 437 S.W.2d 542, 545 (Tex.1969)* ("The term 'use' is the general catchall of the insuring clause, designed and construed to include all proper uses of the vehicle not falling within other terms of definition such as ownership and maintenance.").

[8][9] However, the pleadings do not allege that Gonzalez's injury was "caused by an accident *resulting from* the ... use of a covered auto." The court of appeals correctly stated that a causal relation between the injury and the use of the auto is essential to recovery. 919 S.W.2d at 906. *See also Larry D. Scheafer, Annotation, Automobile Liability Insurance: What Are Accidents or Injuries "Arising Out of Ownership, Maintenance, or Use" of Insured Vehicle, 15 A.L.R.4TH 10, 17 (1982)* ("The cases agree that a causal relation or connection must exist between an accident or injury and the ownership, maintenance, or use of a vehicle in order for the accident or injury to come within the meaning of the clause 'arising out of the ownership, maintenance, or use' [FN1] of a vehicle, and where such causal connection or relation is absent, coverage will be denied."). But, the mere fact that an automobile is the situs of the accident is not enough to establish the necessary nexus between the use and the accident to warrant the conclusion that the accident resulted from such use. 7 AM.JUR.2D *Automobile Insurance* § 194, at 704 (1980).

FN1. We express no opinion about whether "resulting from" the use of a covered auto requires a higher degree of causation than "arising out of" the use of a covered auto.

[10] Because the facts alleged in the pleadings do not suggest even a remote causal relationship between the truck's operation and Gonzalez's injury,

they do not create that degree of doubt which compels resolution of the issue for the insured. *See Heyden, 387 S.W.2d at 26.* Although the pleadings allege that Hart *negligently* discharged the firearm, we must focus our review on the pleading's factual allegations, not on the legal theories asserted. *Merchants, 919 S.W.2d at 905; Clemons v. State Farm Fire & Cas. Co., 879 S.W.2d 385, 392 (Tex.App.--Houston [14th Dist.] 1994, no writ). Adamo, 853 S.W.2d at 676.* We will not read facts into the pleadings. *See Clemons, 879 S.W.2d at 393* ("Simplistically stated, to implicate the policy provision concerning damages for bodily injury or property and thereby the duty to defend, the petition must allege bodily injury or property damage. Here, it does not, and we cannot judicially read these elements of damage into the petition."). Nor will we look outside the pleadings, or imagine factual scenarios which might trigger coverage. *See Houston Petroleum Co. v. Highlands Ins. Co., 830 S.W.2d 153, 155 (Tex.App.--Houston [1st Dist.] 1990, writ denied)* ("In Texas, an insurer's contractual duty to defend must be determined solely from the face of the pleadings, without reference to any facts outside the pleadings.").

Because we hold the pleadings do not allege that Gonzalez's injuries resulted from the use of a covered auto, we need not consider whether the derivative claims against Merchants of negligent hiring and negligent supervision trigger coverage.

Accordingly, the Court grants National Union's application for writ of error, and under Texas Rule of Appellate Procedure 170, without hearing oral argument, reverses the judgment of the court of appeals and renders judgment for National Union.

939 S.W.2d 139, 40 Tex. Sup. Ct. J. 353

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

852 S.W.2d 252
852 S.W.2d 252
(Cite as: 852 S.W.2d 252)

Court of Appeals of Texas,
Dallas.

CULLEN/FROST BANK OF DALLAS, N.A.,
Appellant,
v.
COMMONWEALTH LLOYD'S INSURANCE
COMPANY and United States Fire Insurance
Company, Appellees.

No. 05-91-00755-CV.

Feb. 19, 1993.
Rehearing Denied April 14, 1993.

Liability insurers brought action for declaratory judgment that they had no duty to defend bank in action by condominium owners for misrepresentations, breach of warranty, and negligence in connection with sale of condominium units. Bank counterclaimed for defense and indemnity. The 116th Judicial District Court, Dallas County, Frank Andrews, J., entered summary judgment for insurers, and bank appealed. The Court of Appeals, Thomas, J., held that: (1) there were sufficient allegations of property damage in multiple occurrences in underlying suit, and (2) claims did not come entirely within exclusions for alienated property and completed operations.

Reversed and remanded.

West Headnotes

[1] Insurance 2914
217k2914 Most Cited Cases
(Formerly 217k514.10(1))
When determining insurer's duty to defend its insured, Texas courts follow the "eight corners" rule, under which they look only to pleadings and insurance policy to determine whether duty to defend exists.

[2] Insurance 2915
217k2915 Most Cited Cases
(Formerly 217k514.9(1))
Insurer's duty to defend is not affected by facts of case ascertained before, during, or after suit.

[3] Insurance 2914
217k2914 Most Cited Cases
(Formerly 217k514.10(1))
Truth or falsity of allegations in underlying pleadings are not considered in determining insurer's duty to defend.

[4] Insurance 2914
217k2914 Most Cited Cases
(Formerly 217k514.10(1))
Duty to defend arises if factual allegations against insured, when fairly and reasonably construed, state cause of action potentially covered by policy.

[5] Insurance 2914
217k2914 Most Cited Cases
(Formerly 217k514.10(1))
In determining applicability of provisions of policy to suit, for purposes of duty to defend, court focuses on facts that show origin of damages, not legal theories asserted for recovery; if petition against insured alleges only facts that are not covered by policy, insurer is not required to defend.

[6] Insurance 2914
217k2914 Most Cited Cases
(Formerly 217k514.10(1))
Courts indulge liberal interpretation of meaning of allegations in petition against insured in determining whether allegations fall within provisions of insurance policy, such that insurer will have duty to defend; any doubt as to whether complaint states covered cause of action is resolved in insured's favor.

[7] Appeal and Error 854(1)
30k854(1) Most Cited Cases
Appellant had to show that each ground alleged in motion for summary judgment was insufficient to support summary judgment where trial court's judgment did not state grounds upon which summary judgment motion was granted.

[8] Insurance 2277
217k2277 Most Cited Cases
(Formerly 217k514.10(2))
Condominium owners' suit against bank for misrepresentations, breach of warranty, and negligence in connection with sale of condominium units adequately alleged "property damage" within meaning of liability policies, for purposes of determining whether insurers had duty to defend, where owners alleged, among other things, recurring and continuous problems in garage floor, excessive floor displacement, warped and swollen doors and window frames, rotten woodwork on patio doors and windowsills, and warped and uneven floors, and loss of use of property.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

852 S.W.2d 252
852 S.W.2d 252
**(Cite as: 852 S.W.2d 252)**

Page 2

**[9]** Insurance ☞2264
217k2264 Most Cited Cases
(Formerly 217k178.6)
Time of insured "occurrence" is when complaining party actually was damaged, not time that wrongful act was committed.

**[10]** Insurance ☞2265
217k2265 Most Cited Cases
(Formerly 217k512.1(1))
In cases involving continuous or repeated exposure to condition, there can be more than one manifestation of damage and, hence, occurrence under more than one policy.

**[11]** Insurance ☞2265
217k2265 Most Cited Cases
(Formerly 217k178.6)
Facts alleging continuous or repeated exposure causing continued or multiple property damages over extended period of time can be more than one "occurrence" under policy.

**[12]** Insurance ☞2264
217k2264 Most Cited Cases
(Formerly 217k514.10(2))
Condominium owners' complaint against bank for misrepresentation, breach of warranty, and negligence alleged more than one occurrence under liability policies, for purposes of determining insurers' duty to defend, in alleging that some property damage manifested itself after inspection revealed defects.

**[13]** Insurance ☞2261
217k2261 Most Cited Cases
(Formerly 217k514.10(2))

**[13]** Insurance ☞2275
217k2275 Most Cited Cases
(Formerly 217k514.10(2))
Condominium owners' allegations in complaint against bank, for misrepresentation, breach of warranty, and negligence, did not allege bank's prior knowledge of property damage, such that insurers would have no duty to defend because bank intended or expected damage so there was no occurrence or because recovery would be against public policy.

**[14]** Insurance ☞2278(28)
217k2278(28) Most Cited Cases
(Formerly 217k514.10(2))
Condominium owners' action against bank for misrepresentations, breach of warranties, and negligence in connection with sale of condominium units were not within alienated-property exclusions to liability policies to extent action was based upon property damage to common area in which bank retained ownership interest, for purposes of determining insurers' duty to defend.

**[15]** Insurance ☞2278(21)
217k2278(21) Most Cited Cases
(Formerly 217k435.22(4))
Condominium owners' action against bank for misrepresentations, breach of warranties, and negligence in connection with sale of condominium units did not come within completed operations exclusion to liability policies, where bank retained continued ownership interest in condominium common areas.
*254 Joseph E. Burns, Jerome B. Ferguson, III, Dallas, for appellant.

Kevin J. Cook, James D. Stanton, DeHay & Blanchard, L.L.P., Dallas, for State.

Before THOMAS, OVARD and MALONEY, JJ.

## OPINION

THOMAS, Justice.

This is a declaratory-judgment action concerning an insurer's duty to defend an insured. The trial court granted summary judgment in favor of Commonwealth Lloyd's Insurance Company (Commonwealth) and United States Fire Insurance Company (U.S. Fire), [FN1] finding that they had no duty to defend Cullen/Frost Bank of Dallas (Bank). Bank asserts nine points of error generally complaining that the trial court erred by granting the summary judgment, entering a take-nothing judgment against Bank on its counterclaim, and overruling its motion for new trial. We agree that the trial court erred in granting Insurers' motion for summary judgment and in rendering a take-nothing judgment against Bank on its counterclaim for a defense. Accordingly, we reverse the trial court's judgment and remand the cause for further proceedings consistent with this opinion.

> FN1. Commonwealth and U.S. Fire are referred to collectively as "Insurers."

## FACTUAL BACKGROUND

In October 1982, Bank foreclosed on nine units of a ten-unit condominium project known as 3710 Holland Condominiums (the property). Bank began selling individual units in May 1983. On September 23, 1987, various condominium owners who had purchased their units from Bank in 1984 and 1985 filed a lawsuit styled *Norman T. and Carolyn H. Tompkins, Darrell and Dixie Wright, Jordan Thomas, Douglas Crowder and Robert Peinado, Jr. v.*

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

*Cullen/Frost Bank of Dallas, N.A.,* Cause No. 87-12836-F, in the 116th District Court of Dallas County, Texas (the Tompkins suit). The second amended petition [FN2] in the Tompkins suit asserted the following claims: (1) section 17.50(a) of the Deceptive Trade Practices-Consumer Protection Act (DTPA) for false, misleading, or deceptive representations because the quality of the property sold to them did not conform to the quality represented; (2) breach of express or implied warranties because the condominiums delivered did not conform to the representations made; (3) rescission; and (4) negligence in disbursing funds for construction of the property and in failing to correct the alleged defects in the property. The Tompkins plaintiffs sought to recover the cost to repair the defects or, alternatively, the difference in market value between the condominiums as represented and as delivered, plus treble damages under DTPA, and attorney's fees. Robert D. Armstrong subsequently intervened as a plaintiff in the Tompkins suit. He alleged essentially the same claims and damages.

> FN2. Although pleadings prior to and subsequent to the second amended petition were filed in the Tompkins suit, the second amended petition appears to be the only pleading at issue in this summary-judgment proceeding.

Bank notified Insurers of the Tompkins suit and demanded a defense and indemnity under three Commonwealth policies and two U.S. Fire policies. Insurers notified Bank that, in their opinion, the allegations in the Tompkins suit were not within the *255 coverage of the policies or, alternatively, were excluded from coverage. Insurers then filed this action for a declaratory judgment that they had no duty to defend Bank in the Tompkins suit. Bank counterclaimed for a defense and indemnity. The trial court granted Insurers' motion for summary judgment finding that, as a matter of law, Insurers had no duty to defend Bank in the Tompkins suit.

## DUTY TO DEFEND

In the first five points of error, Bank argues that the trial court erred in granting Insurers' motion for summary judgment. In reviewing a summary-judgment record, this Court applies the following standards:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor.

*Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex.1985).* For the plaintiff as movant to prevail on summary judgment, it conclusively must prove all of the elements of its cause of action as a matter of law. *Cluett v. Medical Protective Co., 829 S.W.2d 822, 825 (Tex.App.--Dallas 1992, writ denied).* A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc., 644 S.W.2d 443, 446 (Tex.1982).* In a summary-judgment case, the question on appeal is whether the summary-judgment proof establishes, as a matter of law, that there is no genuine issue of material fact as to one or more of the essential elements of the cause of action. *Gibbs v. General Motors Corp., 450 S.W.2d 827, 828 (Tex.1970).*

[1][2][3][4][5][6] When determining an insurer's duty to defend its insured, Texas courts follow the "eight corners" rule. Under this rule, we look only to the pleadings and the insurance policy to determine whether the duty to defend exists. *Cluett, 829 S.W.2d at 829.* The duty to defend is not affected by the facts of the case ascertained before, during, or after the suit. *Cluett, 829 S.W.2d at 829* (citing *American Alliance Ins. Co. v. Frito-Lay, Inc., 788 S.W.2d 152, 154 (Tex.App.--Dallas 1990, writ dism'd)).* We do not consider the truth or falsity of the allegations in the underlying pleadings. *Argonaut S.W. Ins. Co. v. Maupin, 500 S.W.2d 633, 635 (Tex.1973).* The duty to defend arises if the factual allegations against the insured, when fairly and reasonably construed, state a cause of action potentially covered by the policy. *Norvell Wilder Supply Co. v. Employers Casualty Co., 640 S.W.2d 338, 339, 340 (Tex.App.--Beaumont 1982, writ dism'd).* In determining the applicability of provisions of the policy, we focus on the facts that show the origin of the damages, not the legal theories asserted for recovery. *Continental Casualty Co. v. Hall, 761 S.W.2d 54, 56 (Tex.App.-- Houston [14th Dist.] 1988, writ denied), cert. denied, 495 U.S. 932, 110 S.Ct. 2174, 109 L.Ed.2d 503 (1990).* If a petition against an insured alleges only facts that are not covered by the policy, the insurer is not required to defend. *Fidelity & Guar. Ins. Underwriters v. McManus, 633 S.W.2d 787, 788 (Tex.1982).* In determining whether the allegations in the underlying

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

petition fall within the provisions of the insurance policy, we indulge a liberal interpretation of the meaning of those allegations. *Mary Kay Cosmetics, Inc. v. North River Ins. Co.,* 739 S.W.2d 608, 612 (Tex.App.--Dallas 1987, no writ). Any doubt as to whether the complaint states a covered cause of action is resolved in the insured's favor. *Cluett,* 829 S.W.2d at 829.

[7] Insurers alleged that they were entitled to summary judgment because the allegations in the Tompkins suit: (1) fail to allege "property damage" or an "occurrence" as the terms are defined in the policies; (2) fall within the exclusions for *256 alienated property and completed operations; and (3) fail to come within the policy periods of three of the five policies at issue. Because the trial court's judgment does not state the grounds upon which the summary-judgment motion was granted, Bank must show that each ground alleged in the motion is insufficient to support summary judgment. *International Union UAW Local 119 v. Johnson Controls, Inc.,* 813 S.W.2d 558, 565 (Tex.App.--Dallas 1991, writ denied). In points of error two through five, Bank separately challenges the granting of summary judgment on each of the grounds raised by Insurers' motion for summary judgment. [FN3]

> FN3. Bank's first point is a general complaint that the trial court erred in granting Insurers' second motion for summary judgment. Our discussion of Bank's second through fifth points disposes of the first point.

*A. The Policies*

Five policies are at issue. Commonwealth issued three policies for the period beginning February 15, 1983 through November 6, 1987. U.S. Fire issued two policies for the period beginning November 6, 1987 through November 6, 1989. Commonwealth's policies are the older, comprehensive-general-liability forms, while the U.S. Fire policies are new forms. Although there are differences in language between the old and new forms, for purposes of this appeal, both parties essentially treat the relevant provisions the same.

The insuring agreements in all of the policies provide, in pertinent part, that Insurers will pay for property damage caused by an occurrence. The policies define "property damage" and "occurrence." All of the policies exclude liability for property damage arising out of property alienated by Bank.

With the exception of the period from April 9 to November 6, 1987, the policies also exclude coverage for property damage occurring after the insured's operations have been completed or abandoned and away from the insured's premises. The property is listed as an insured premises.

*B. Property Damage*

[8] In the second point of error, Bank contends that the trial court erred in granting summary judgment on the ground that the petition in the Tompkins suit failed to allege property damage. It argues that the Tompkins plaintiffs alleged recurring and continuous injury to their property.

"Property damage" is defined under the three Commonwealth policies as follows:
(1) Physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of the use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.
Under the U.S. Fire policies, "property damage" means: "a. Physical injury to tangible property, including all resulting loss of use of that property; or b. Loss of use of tangible property that is not physically injured."

The Tompkins plaintiffs alleged, among other things, drainage problems in the garage floor, excessive floor displacement, warped and swollen door and window frames, rotten woodwork on patio doors and windowsills, warped and uneven floors. These conditions constitute physical damage to tangible property that falls within the first part of the definition of property damage. *See Taylor-Morley-Simon, Inc. v. Michigan Mut. Ins. Co.,* 645 F.Supp. 596, 600 (E.D.Mo.1986) (cracking walls, ceilings, and floors; stress on water and gas lines; and loosening of ducts constitute "physical damage ... to tangible property"), *aff'd,* 822 F.2d 1093 (8th Cir.1987). The petition also alleged repeated breakdown of the elevators and asserted that Bank's failure to correct the complained-of conditions resulted in their *loss of use* of the property. These allegations constitute loss of use of tangible property falling within the second part of the definition of property damage. Interpreting the allegations of the petition in the Tompkins suit liberally in favor of coverage, we hold that they are sufficient *257 to allege property damage as that term is defined in the policies. We sustain the second point of error.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

852 S.W.2d 252
852 S.W.2d 252
**(Cite as: 852 S.W.2d 252)**

Page 5

*C. Occurrence*

In its third point of error, Bank asserts that the trial court erred in granting summary judgment on the ground that the petition in the Tompkins suit failed to allege an occurrence. Although both parties agree that there was an occurrence, they disagree as to the number of occurrences. Bank asserts that the Tompkins plaintiffs alleged continuous or multiple occurrences that fell within the coverage periods of all five policies. Insurers argue that, in this case, there was only one occurrence in Spring 1986 when, after an inspection of the property, the Tompkins plaintiffs discovered property damage.

The three Commonwealth policies define "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." The U.S. Fire policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Insurers cite several cases to support their contention that the Tompkins petitions allege only one occurrence. *See Michigan Chem. Corp. v. American Home Assurance Co., 728 F.2d 374 (6th Cir.1984); Appalachian Ins. Co. v. Liberty Mut. Ins. Co., 676 F.2d 56 (3d Cir.1982); Interstate Fire & Casualty Co. v. Portland Archdiocese, 747 F.Supp. 618 (D.Or.1990).* We note that in these three cases, the definition of occurrence is distinguishable from the definition at issue here. The policies involved in these three cases provided that all damages arising out of exposure to substantially the same general conditions were considered as arising out of one occurrence. *Michigan Chem. Corp., 728 F.2d at 378; Appalachian Ins. Co., 676 F.2d at 59 n. 8; Interstate Fire & Casualty Co., 747 F.Supp. at 623-24.* Further, the damages in all of the cases arose from exposure to substantially the same general condition emanating from one source. *Michigan Chem. Corp., 728 F.2d at 376, 382, 383* (distribution of contaminated livestock feed; injury occurred at time feed was shipped); *Appalachian Ins. Co., 676 F.2d at 61* (injuries all resulted from one source--the insured's discriminatory employment policies; the single occurrence for purposes of policy coverage was the insured's adoption of its discriminatory policies); *Interstate Fire & Casualty Co., 747 F.Supp. at 621, 624* (priest sexually molested child during four policy years; injury to each child occurred at the time of first molestation).

In contrast, the policies at issue here do not provide that all exposure to the same condition constitutes a single occurrence. Thus, our policies do not, by their terms, prevent there being multiple occurrences. For that reason, we conclude that *Michigan Chemical Corp., Appalachian Insurance Co.,* and *Portland Archdiocese* are not dispositive of this issue.

[9][10][11] In dealing with the definition of occurrence in the instant case, both sides cite *Dorchester Development Corp. v. Safeco Insurance Co., 737 S.W.2d 380 (Tex.App.--Dallas 1987, no writ).* This Court held that coverage is not afforded unless an identifiable damage or injury, other than merely causative negligence, takes place during the policy period. *Dorchester Dev. Corp., 737 S.W.2d at 383.* The time of the occurrence is when the complaining party actually was damaged, not the time that the wrongful act was committed. *Dorchester Dev. Corp., 737 S.W.2d at 383.* In cases involving continuous or repeated exposure to a condition, there can be more than one manifestation of damage and, hence, an occurrence under more than one policy. Under the definitions of occurrence at issue here, there can be a new occurrence each time the complaining party suffers damage. *See Dorchester Dev. Corp., 737 S.W.2d at 383.* We reject the argument that there can be only one occurrence when the facts allege continuous or repeated exposure causing continued or multiple property damages over an extended period of time.

**\*258** [12] The petitions in the Tompkins suit alleged, among other things, drainage problems in the garage floor, excessive floor displacement, warped and swollen windows and doors, rotten woodwork, leaking in the roof, warped and uneven floors, and continual breakdown of the elevators. Property damage was discovered when an inspection in Spring 1986 revealed the complained-of defects. The petition in the Tompkins suit does not make it clear that all of the property damage, including loss of use of the property, had manifested itself by Spring 1986. The petition asserts that Bank's failure to remedy the defects has caused repeated and continued exposure causing loss of use of the property. We must resolve any doubt as to coverage in Bank's favor. *Cluett, 829 S.W.2d at 829.* With this in mind, we conclude that the pleading in the Tompkins suit alleged that at least some property damage manifested itself after Spring 1986. Thus, we conclude that the Tompkins suit involves more than one occurrence.

[13] Insurers further argue that there is no coverage

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

852 S.W.2d 252
852 S.W.2d 252
**(Cite as: 852 S.W.2d 252)**

Page 6

under the policies because Bank knew about the damage in Spring 1986. In support of this argument, Insurers rely on *Bartholomew v. Appalachian Insurance Co., 655 F.2d 27 (1st Cir.1981)*. There, the insureds, who operated a car wash, had full and complete knowledge that their car wash equipment was defective and would damage customers' cars. The insureds had sued concerning the defects before the policy at issue took effect. *Bartholomew, 655 F.2d at 28*. The court held that there was no occurrence during the policy period because the insured had knowledge of the defects in the equipment prior to the effective date of the policy. *Bartholomew, 655 F.2d at 29*. Here, Insurers contend that Bank had knowledge in Spring 1986 when it discovered the damage after a property inspection. We note that there are inconsistent allegations as to who inspected the property. At one point, the Tompkins plaintiffs allege that they had an inspection of the building done in Spring 1986 and discovered the complained-of damage. At another point, they allege that Bank discovered the damage when it conducted an inspection in Spring 1986. In determining whether there is a duty to defend, we must accept the allegation that the Tompkins plaintiffs inspected the property. *See Cluett, 829 S.W.2d at 829*. There is no allegation that they informed Bank of the damage or that Bank had such knowledge from any other source. Thus, we cannot say that there was no occurrence under the theory that Bank intended or expected the accident constituting the occurrence.

Further, Insurers raise the issue of Bank's knowledge for the first time on appeal. Because this issue was not raised in support of their motion for summary judgment, the judgment could not have been granted on that basis. *See* Tex.R.Civ.P. 166a(c); *City of Coppell v. General Homes Corp., 763 S.W.2d 448, 451 (Tex.App.--Dallas 1988, writ denied)*.

Insurers also urge that it is against public policy to allow Bank to obtain insurance for an occurrence that already had taken place in Spring 1986, citing as authority, *First National Bank v. Tri-State General Agency, Inc., 578 S.W.2d 456 (Tex.Civ.App.--Texarkana 1979, writ ref'd n.r.e.)*. In *Tri-State*, an insurer did not issue an insurance policy because the party seeking coverage notified an agent of the insurer that the loss already had occurred. *See Tri-State, 578 S.W.2d at 459*. There is no allegation that the Tompkins plaintiffs informed Bank of the damage or that Bank had such knowledge from any other source. We conclude that *Tri-State* does not, therefore, support Insurers' public-policy argument.

Under *Dorchester*, relied on by both parties, the occurrence takes place when the property damage manifests itself. *See Dorchester Dev. Corp., 737 S.W.2d at 383*. Having viewed the petition in the Tompkins suit, we conclude that, for purposes of determining a duty to defend under these policies, the petitions allege continuing or multiple occurrences. Accordingly, we hold that summary judgment would be erroneous on the basis that the Tompkins suit failed to allege an occurrence.

***259 D. Failure to Come Within Policy Periods**

In the fourth point, Bank complains that the trial court erred in granting summary judgment on the basis that the allegations in the Tompkins suit fail to come within three of the policy periods. Insurers contend this case involves a single occurrence that took place in Spring 1986. Hence, they argue, there is no duty to defend under the three policies that were issued after Spring 1986. [FN4] The dispositive issue under this point is whether the petition in the Tompkins suit alleges one occurrence or multiple occurrences. We previously held that the Tompkins plaintiffs alleged continuous or repeated manifestation of property damage *beginning in Spring 1986*. The pleading in the Tompkins suit alleges continuing property damage. The Tompkins plaintiffs, therefore, claim property damage that may fall within coverage of the three policies issued after Spring 1986. The petition does not allege facts that clearly show that no property damage manifested itself during the coverage periods of the three policies issued after Spring 1986. The possibility of an occurrence within the coverage periods of the policies issued after Spring 1986 therefore gives rise to a duty to defend under these policies. We sustain the fourth point of error.

> FN4. Insurers urged that the allegations in the Tompkins petitions fail to come within the policy periods of Commonwealth policy number 500- 456519-1 and U.S. Fire policy numbers 503-043644-7 and 503-061439-5.

*E. Alienated-Property and Completed-Operations Exclusions*

In its fifth point, Bank complains that the trial court erred in granting summary judgment on the basis that the allegations in the Tompkins suit fell within the exclusions for alienated property and completed operations. Bank asserts that, because Bank continued to own an interest in the common areas of

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

the property, neither exclusion applies.

[14] The alienated-property exclusions provide that the policies do not apply to property damage to premises alienated by the insured arising out of such premises or any part thereof. The Tompkins plaintiffs alleged that Bank was "offering" one or more units of the project. Insurers do not dispute that Bank continued to own at least one unit of the ten-unit property and that, as an owner of the unit, Bank owned a corresponding percentage of the common areas. The petition complains of Bank's failure to remedy the complained-of defects. Further, the petition in the Tompkins suit alleges damage to the "project" or the "property," which, as defined in the petition, refers to the entire project known as 3710 Holland Condominiums.

Insurers cite several cases to support their assertion that the Tompkins plaintiffs' claims are excluded because the property damages arise out of premises alienated by Bank. In *Reliance Insurance Co. v. Povia-Ballantine Corp.*, 738 F.Supp. 523 (S.D.Ga.1990), aff'd, 927 F.2d 614 (11th Cir.1991), condominium purchasers sued the insured-developer alleging that the units were constructed in an unworkmanlike manner and sought damages relating *only to the individual condominium units. Reliance Ins. Co.*, 738 F.Supp. at 524. The court held that the alienated-property exclusion applied because the plaintiffs' damages were incurred after the sale of the units. *Reliance Ins. Co.*, 738 F.Supp. at 526. In *Taylor-Morley-Simon, Inc.*, 645 F.Supp. at 598-99, homeowners sued the insured-builder for breach of warranties and negligent construction. The *only damage* for which the plaintiffs asserted liability was damage to property alienated by the insured. *Taylor-Morley-Simon, Inc.*, 645 F.Supp. at 600. Thus, the claims fell within the alienated-property exclusion. *Taylor-Morley-Simon, Inc.*, 645 F.Supp. at 600.

Under these cases, the alienated-property exclusion precludes coverage of the underlying claims only to the extent that the Tompkins suit alleged damage to the plaintiffs' individual condominium units. Like the insureds in *Reliance Insurance Co.* and *Taylor-Morley-Simon, Inc.*, Bank alienated those units and retained no ownership *260 interest therein. However, unlike the cases relied on by Insurers, the complaints in the Tompkins suit are not limited to the individual units. Their complaints also include loss of use of the property as a whole and property damage arising from common areas. Although Bank alienated various condominium units and a corresponding percentage of its ownership in the common areas, it also retained ownership of a percentage of the common areas through its continued ownership of at least one unit. To the extent that the Tompkins suit is based upon property damage to a common area, Bank retained an ownership interest in that property. Hence, the Tompkins suit involves property not alienated by Bank. Therefore, we conclude that summary judgment based on the alienated-property exclusion of the policy would be erroneous.

[15] Bank also contends that, because it continued to have an ownership interest in the common areas, the completed-operations exclusion does not apply. The Commonwealth policy provides that "completed-operations hazard" includes:

bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, *but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured.* "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:
(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed,
(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or
(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as part of the same project.
(Emphasis added.) The completed-operations exclusion controls the general-liability-coverage section of the policies. *LaBatt Co. v. Hartford Lloyd's Ins. Co.*, 776 S.W.2d 795, 800 (Tex.App.-- Corpus Christi 1989, no writ).

Insurers rely on several cases to support their contention that the Tompkins plaintiffs' claims fall within the completed-operations exclusion. In *Consolidated Underwriters v. Loyd W. Richardson Construction Corp.*, 444 S.W.2d 781 (Tex.Civ.App.-- Beaumont 1969, writ ref'd n.r.e.), there was an accident on a road that had been repaired by the insured. The petition in the underlying suit specifically alleged that the insured had completed its work and activities, which had been accepted. *Consolidated Underwriters*, 444 S.W.2d at 783. The

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

852 S.W.2d 252
852 S.W.2d 252
**(Cite as: 852 S.W.2d 252)**

Page 8

court held that the insurer owed no duty to defend. _Consolidated Underwriters, 444 S.W.2d at 784._ That case is of little help in our disposition of this case. Our case is not clear-cut because the Tompkins petitions make no statement that anything had been completed by Bank.

In _Hargis v. Maryland American General Insurance Co., 567 S.W.2d 923 (Tex.Civ.App.--Eastland 1978, writ ref'd n.r.e.),_ employees were injured while working on an air conditioning unit. _Hargis, 567 S.W.2d at 924._ One year prior to the explosion, the insured had rewound the unit's motor. The court held that the underlying causes of action fell within the completed-operations exclusion because the explosion of the unit did not occur on the insured's premises and because the injury occurred after the unit had been physically delivered. _Hargis, 567 S.W.2d at 927._ We conclude that _Hargis_ is distinguishable because, as previously stated, to the extent that the Tompkins plaintiffs alleged damage to a common area of the property, the property damage occurred on premises still owned by Bank.

In _Mary Kay Cosmetics, Inc.,_ the plaintiff sued the insured for damages arising from the faulty installation of storage tanks. _739 S.W.2d at 609._ The pleadings *261 alleged that the injury occurred "after the [property] had been put to use by the Plaintiff." _Mary Kay Cosmetics, Inc., 739 S.W.2d at 612._ The court held that this allegation brought the claims within the policy's completed-operations clause because operations were deemed completed "when the portion of the work out of which the injury or damage arises has been put to its intended use." _Mary Kay Cosmetics, Inc., 739 S.W.2d at 612._

In all of the cases cited by Insurers, the insured had relinquished all possession or control of the property out of which the damage occurred. Here, Bank, by virtue of its continued ownership interest in the common areas, had not relinquished all possession or control to the common areas and part of the complaints in the Tompkins suit involve a common area. Thus, the completed-operations exclusion does not apply because not all of the alleged property damage occurred away from the premises owned by Bank. We conclude that the petition in the Tompkins suit alleges property damage that does not fall within the completed-operations exclusion.

Moreover, there was no completed-operations exclusion from April 9 to November 6, 1987. Because the petition in the Tompkins suit alleged multiple occurrences _beginning in Spring 1986,_ there

is a possibility that there was an occurrence during the time that no completed-operations exclusion was in effect. There is, therefore, a possibility of coverage giving rise to the duty to defend under the policy in effect during the period from April 9 to November 6, 1987. We conclude that the trial court erred if it granted summary judgment based on the completed-operations exclusion. The fifth point is sustained.

For these reasons, we conclude that the grounds alleged in Insurers' motion do not support the trial court's granting of summary judgment. Accordingly, we hold that the trial court erred in granting the summary judgment.

### BANK'S COUNTERCLAIM

In its eighth point of error, Bank argues that the trial court erred in entering a take-nothing judgment in its counterclaim for a defense. We already have concluded that the trial court erred in granting summary judgment on the basis that Insurers' had no duty to defend. Therefore, we further hold that the trial court erred in entering a take-nothing judgment on Bank's counterclaim for a defense. We sustain the eighth point of error.

We reverse the trial court's judgment and remand this cause for further proceedings consistent with this opinion. [FN5]

> FN5. It is unnecessary to address Bank's other complaints in view of our disposition of points of error two through five, and eight.

852 S.W.2d 252

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

758 S.W.2d 301                                                                    Page 1
758 S.W.2d 301
**(Cite as: 758 S.W.2d 301)**

▷

Court of Appeals of Texas,
Dallas.

Ronnie WHATLEY, Appellant,
v.
CITY OF DALLAS, Texas, Appellee.

No. 05-87-00620-CV.

Aug. 3, 1988.
Rehearing Denied Sept. 30, 1988.

Civil rights plaintiff who had accepted assignment of
police officer's claims against city, for wrongfully
refusing to defend plaintiff's action against officer,
sued to recover damages of those already
recovered under city's personal liability protection
plan. The 101st Judicial District Court, Dallas
County, Leonard E. Hoffman, Jr., J., entered
judgment in favor of city, and plaintiff appealed.
The Court of Appeals, Hecht, J., held that: (1) self-
insured governmental unit which had agreed to
defend any claims against its employees arising from
their negligent acts, errors or omissions was under
contractual obligation to defend civil rights claims
against police officer for his use of excessive force in
effecting arrest, but (2) absent any claim that city had
acted negligently or in bad faith in refusing to defend
action, police officer's assignees could not recover
damages in excess of limits of city's liability
protection plan based on city's alleged wrongful
refusal to defend.

Affirmed.

West Headnotes

**[1] Insurance** ☞2913
217k2913 Most Cited Cases
        (Formerly 217k514.9(1), 217k514.8)
Insurer's duty to defend its insured is ordinarily
contractual undertaking defined by policy.

**[2] Insurance** ☞2349
217k2349 Most Cited Cases
        (Formerly 217k514.9(1), 217k514.8)
Self-insured governmental unit which had agreed to
defend any claims against its employees arising from
their negligent acts, errors or omissions was under
contractual obligation to defend civil rights action
against police officer for his use of excessive force in

effecting arrest.

**[3] Pleading** ☞246(3)
302k246(3) Most Cited Cases
Assignees of police officer's claims against city for
its alleged wrongful failure to defend civil rights
action against officer could not amend complaint to
assert "Stowers" claim, based on city's alleged
negligence in failing to settle lawsuit within
limitations of its liability protection plan, absent
showing that officer's assignment also included
"Stowers" claim.

**[4] Pleading** ☞237(1)
302k237(1) Most Cited Cases
In deciding whether party may amend pleadings in
order to conform to evidence presented at trial, trial
court must carefully consider proceedings as whole to
determine whether parties have impliedly consented
to trial of unpleaded cause of action.

**[5] Pleading** ☞427
302k427 Most Cited Cases
Trial court has broad discretion in determining
whether unpleaded claim has been tried by implied
consent of parties, but must exercise discretion
liberally in favor of justice.

**[6] Pleading** ☞245(3)
302k245(3) Most Cited Cases
**[6] Pleading** ☞258(3)
302k258(3) Most Cited Cases
Trial amendments are exception rather than rule, and
should not be allowed in doubtful cases.

**[7] Pleading** ☞236(3)
302k236(3) Most Cited Cases
Ordinarily, party objecting to trial amendment must
demonstrate that unfair prejudice or surprise would
result if amendment were allowed; however, trial
court's exercise of discretion must be judged by
record and not by whether plea of surprise or
prejudice is asserted.

**[8] Insurance** ☞2934(3)
217k2934(3) Most Cited Cases
        (Formerly 217k514.13(1), 217k514.13)
**[8] Insurance** ☞2934(4)
217k2934(4) Most Cited Cases
        (Formerly 217k514.13(1), 217k514.13)
Absent claim that city had acted negligently or in
bad faith in refusing to defend civil rights claims
against police officer, police officer's assignee could
not recover damages in excess of limits of city's
liability protection plan based on city's alleged
wrongful refusal to defend.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

758 S.W.2d 301
758 S.W.2d 301
**(Cite as: 758 S.W.2d 301)**

Page 2

**[9] Insurance** 🔑**2934(1)**
217k2934(1) Most Cited Cases
　　　(Formerly 217k514.13(1), 217k514.13)
Insurer's breach of contractual duty to defend insured, like any breach of contract, may give rise to liability for all damages directly and foreseeably resulting from breach.

**[10] Release** 🔑**37**
331k37 Most Cited Cases
As general rule, claimant who covenants not to enforce any judgment he may obtain against insured does not thereby release insurer, who has wrongfully refused to defend its insured, from liability within policy limits.

**[11] Release** 🔑**37**
331k37 Most Cited Cases
As long as insured does not act in bad faith or in collusion with person claiming against him, covenant not to enforce adjudged damages against insured does not bar recovery from insurer within policy limits.

**[12] Insurance** 🔑**2933**
217k2933 Most Cited Cases
　　　(Formerly 217k514.13(1), 217k514.13)
Civil rights claimant who agreed not to hold police officer individually liable for any damages in excess of city's liability protection plan, in return for officer's assignment to claimant of "wrongful refusal to defend" claim against city, was barred from recovering from city any damages in excess of liability protection plan.

**[13] Insurance** 🔑**3560**
217k3560 Most Cited Cases
　　　(Formerly 217k514.13(1), 217k514.13)
Claim for wrongful refusal to defend sounds in contract not tort, so as to be subject to four-year statute of limitations on actions for breach of contract.

**[14] Limitation of Actions** 🔑**46(6)**
241k46(6) Most Cited Cases
Cause of action against insurer for wrongful refusal to defend first accrues, for statute of limitations purposes, when refusal to defend occurs.

**[15] Judgment** 🔑**715(3)**
228k715(3) Most Cited Cases
Judgment entered in earlier action that city's liability protection plan covered civil rights claims against officer was not res judicata of city's liability to officer for wrongfully refusing to defend him.
　　*302 Bertran T. Bader, III, Dallas, for appellant.

Robert S. Dickey, Dallas, for appellee.

Before DEVANY, STEWART and HECHT, JJ.

HECHT, Justice.

　Thrice now Ronnie Whatley has sued the City of Dallas to recover damages for a violation of his civil rights which occurred over a decade ago when Dallas police officer John Vito Del Gaudio used excessive force in arresting him. In this the latest of the three cases Whatley asserts the claim, assigned to him by Del Gaudio, that the City, under its self-administered liability protection plan, wrongly refused to defend Del Gaudio in Whatley's original civil rights action. By this claim Whatley seeks to recover the excess of his judgment against Del Gaudio in the civil rights action over the maximum benefits already paid by the City under its liability protection plan. The trial court rendered judgment on a jury verdict for the City.

We hold that:
　--The City wrongly refused to defend Del Gaudio against Whatley's civil rights claim;
　--Although the City's refusal to defend Del Gaudio was wrongful, there is no valid claim in this case that the City acted in bad faith, or that it negligently failed to settle Whatley's civil rights claim against Del Gaudio;
　--Because there is no proof of bad faith or negligent failure to settle on the part of the City, and because Whatley covenanted not to enforce against Del Gaudio individually the judgment awarding Whatley damages, Whatley cannot recover from the City for its wrongful refusal to defend Del Gaudio damages awarded against Del Gaudio *303 in excess of the benefits provided by the City under its liability protection plan; and
　--Whatley's action on Del Gaudio's wrongful refusal to defend claim is not barred by limitations.

Consequently, we affirm the judgment of the trial court.

I

　On the evening of May 2, 1977, Whatley was arrested and severely beaten by Dallas police officer Del Gaudio. Whatley has sued the City of Dallas three times to recover damages caused by Del Gaudio's use of excessive force in arresting him. The essentially undisputed facts material to this appeal derive from the conduct of this litigation.

Whatley I

　Whatley first sued the City, along with its police chief and officer Del Gaudio, on March 22, 1979, for

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

758 S.W.2d 301
758 S.W.2d 301
(Cite as: 758 S.W.2d 301)

Page 3

damages resulting from Del Gaudio's violation of his civil rights. Whatley was unable to locate Del Gaudio to serve him with citation until May 2, 1981. After being served with suit papers, Del Gaudio tendered defense of Whatley's action against him to the City under its self-administered liability protection plan. The City refused to defend Del Gaudio on the grounds that Whatley's claim was not covered by the plan.

Prior to trial, Whatley settled with Del Gaudio. Their agreement called for Del Gaudio to stipulate that he had negligently used excessive force in subduing and arresting Whatley, to appear for a deposition, and to deposit $2,000 in escrow to be paid to Whatley in the event Whatley recovered nothing against the City and police chief. For his part, Whatley promised never to attempt to enforce against Del Gaudio individually any judgment obtained against him. Del Gaudio fully performed his obligations under the settlement agreement.

Having stipulated liability, Del Gaudio did not appear for trial. In a trial on liability issues only, a jury found for the City and police chief. In a separate, non-jury trial on damage issues, the trial court found that Whatley had suffered actual damages of $125,000 and incurred reasonable and necessary attorney fees of $17,500. The trial court on May 11, 1982, rendered judgment for the City and police chief on the verdict, and for Whatley against Del Gaudio for the total sum of $142,500.

Whatley II

Whatley then filed a second action against the City for payment of his $142,500 judgment against Del Gaudio from benefits afforded by the City's self-administered liability protection plan, contending that his civil rights claim against Del Gaudio in *Whatley I* was covered by the plan. The trial court granted Whatley summary judgment against the City for $100,000, the maximum benefits offered under the plan. That judgment was affirmed on appeal. *City of Dallas v. Whatley, 754 S.W.2d 233 (Tex.App.-- Dallas 1984)*.

Whatley III

To recover the $42,500 unpaid balance of his judgment against Del Gaudio, Whatley took an assignment of Del Gaudio's claim against the City for wrongfully refusing to defend him in *Whatley I,* [FN1] in exchange for the release of the $2,000 Del Gaudio deposited in escrow for Whatley under their

settlement agreement in *Whatley I.* In the written assignment Whatley reaffirmed that he would never attempt to enforce the *Whatley I* judgment against Del Gaudio individually [FN2] and stated that he would seek *304 satisfaction of that judgment only from the City and its self-administered liability protection plan.

> FN1. Specifically, the assignment describes the claims assigned as follows: Del Gaudio conveys and assigns to Whatley any and all causes of action he may have against the City of Dallas, Texas whether founded in contract or tort for the failure of the City of Dallas to defend Del Gaudio in [*Whatley I* or otherwise to fulfill their duty to Del Gaudio to defend him and pay any judgment that may be rendered against him in [*Whatley I* ].

> FN2. The assignment recites that Whatley could execute on the *Whatley I* judgment against Del Gaudio at any time. This recitation conflicts with the testimony of Whatley's attorney that Whatley agreed in his settlement with Del Gaudio in *Whatley I* not to enforce against Del Gaudio individually any judgment obtained. The record does not explain this contradiction.

Whatley then filed this third suit against the City on May 2, 1985, alleging, as Del Gaudio's assignee, that the City's refusal to defend Del Gaudio was both a breach of contract and negligence. The case was tried before a jury, who found that the City was negligent in failing to defend Del Gaudio in *Whatley I,* but that such negligence was not the proximate cause of damage to Del Gaudio. The record reveals no discussion of Whatley's breach of contract claim by the trial court or counsel. The only jury issue requested or submitted pertaining to such claim was one inquiring as to reasonable attorney fees which Whatley sought only in connection with his contract claim. The trial court denied Whatley's motion for judgment non obstante veredicto and rendered judgment for the City on the verdict.

II

Before addressing the parties' points of error, we find we must analyze the issues which appear to be raised by their arguments.

A

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

758 S.W.2d 301
758 S.W.2d 301
(Cite as: 758 S.W.2d 301)

Page 4

[1][2] An insurer's duty to defend its insured is ordinarily a contractual undertaking defined by the insurance policy. *See Goswick v. Employers' Cas. Co., 440 S.W.2d 287, 290-291 (Tex.1969); see also Employers Nat'l Ins. Corp. v. Zurich Am. Ins. Co., 792 F.2d 517, 519 n. 1 (5th Cir.1986);* Annotation, *Consequences of Liability Insurer's Refusal to Assume Defense of Action Against Insured Upon Ground That Claim Upon Which Action Is Based Is Not Within Coverage of Policy, 49 A.L.R.2d 694, 711-716 (1956).* In this case the City, having assumed administration of its own liability protection plan, is cast in the role of an insurer, and the terms of insurance are contained in a City Council resolution adopting that plan. The City does not contest its role as equivalent to an insurer, nor does it contend that its self-administered plan should be viewed any differently than a liability insurance policy. Accordingly, we treat the City in this case as an insurer under an ordinary liability policy.

Whether the City assumed the obligation to defend Del Gaudio against claims like Whatley's depends upon the terms of the City Council resolution adopting a self-administered liability protection plan. The relevant portions of that resolution state:

WHEREAS, the City of Dallas recognized the need of the officers and employees of the City whose duties are directly or indirectly connected with law enforcement to have liability protection from damages because of negligent acts, error, or omissions, and

WHEREAS, by council resolution ... the City was authorized to provide *such liability protection through insurance coverage,* and

WHEREAS, due to the appreciable increase in premiums proposed by the insurance company, it has been determined that the City can more economically provide *the same liability protection under a self-administered plan,* and

WHEREAS, it is recommended that the City Manager *not renew the police professional liability insurance policy and that such coverage be provided by a self-administered plan.* Now, therefore:

BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF DALLAS:

SECTION 1. That the City Manager be authorized to provide the officers and employees of the City of Dallas whose duties are directly or indirectly connected with law enforcement professional liability protection from damages because of negligent acts, errors, or omissions relating to their employment *under a self-administered plan to the same extent as is now provided in policy of*

*insurance acquired by the City ...* a copy of [which is] filed with this resolution.

* * *

*305 SECTION 4. That the City Attorney shall provide all legal representation in accordance with the City Charter.

(Emphasis added.) The policy attached to the resolution stated, in part:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of negligent acts, errors or omissions of the insured ... to which this policy applies, and *the company shall have the right and duty to defend any suit against the Insured seeking damages on account of ... Personal Injury ..., even if any of the allegations of the suit are groundless, false or fraudulent....*

"Personal Injury" means ... assault and battery ... or deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States of America ... for which law enforcement officers may be held liable to the party injured in an action at law, suit in-equity, or other proper proceeding for redress; However, no act shall be deemed to be, or result in Personal Injury unless committed in the regular course of [sic] duty by the Insured....

(Emphasis added.)

The City originally refused to defend Del Gaudio on the grounds that his conduct made the basis of Whatley's complaint was not covered by the plan. Specifically, the City took the position that Del Gaudio's alleged wrongful conduct was intentional, not negligent, was outside the course of his employment, and was contrary to police and City policy. [FN3] This issue was resolved against the City in *Whatley II,* which held that Whatley's claim against Del Gaudio was covered by the City's liability protection plan.

FN3. The City may have given as further reason for refusing to defend Del Gaudio that it, too, was a defendant to Whatley's claims, and Del Gaudio's defense might conflict with its own. The City claims it did not want to share representation by the City Attorney with Del Gaudio, whom the City apparently believed to be liable to Whatley. However, the City has not explained why, if it determined a conflict existed, it did not obtain independent, outside counsel to

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

758 S.W.2d 301
758 S.W.2d 301
(Cite as: 758 S.W.2d 301)

Page 5

represent either itself or Del Gaudio.

The City now argues that even if its plan covered Whatley's claim, undertaking Del Gaudio's defense to the claim was discretionary, not obligatory. Pointing to section 4 of the resolution adopting the plan, which directs the City Attorney to "provide all legal representation in accordance with the City Charter", the City argues that chapter VII of the City Charter gives the City Attorney discretion whether to provide such legal representation. The only portion of chapter VII to which the City specifically refers, and the only portion which appears relevant to its argument, is section 3(12), which requires the City Attorney:

> when deemed for the best interest of the city, to advise or represent officers and employees of the city in litigation in matters arising out of the official conduct of their office or duties in the course of their employment....

This Charter provision gives the City Attorney discretion generally to decide whether to represent city officers and employees in litigation involving their official conduct. It does not, however, give the City Attorney the same discretion in deciding whether to represent law enforcement officers like Del Gaudio against claims like Whatley's because the City Council, in setting up its liability protection plan, preempted exercise of such discretion. The City Council's resolution determines that City law enforcement officers should have the same liability protection under the self-administered plan as they had under the lapsed insurance policy attached to the resolution. That policy unconditionally obligated the insurer to defend the insured against any covered claim. The resolution allows for no greater discretion on the part of the City Attorney than the City's previous insurer enjoyed. An officer's right to defense discretionary with the City Attorney hardly equates to the right to defense afforded by the policy attached to the resolution. Section 4 of the resolution reflects no intention by the City Council to impair so significantly the benefits conferred upon its employees by section 1. Section 4 does not take away what section 1 gives. Rather, *306 section 4 simply assigns the duty of legal representation to the City Attorney instead of outside counsel.

We conclude that the City obligated itself to defend its law enforcement officers like Del Gaudio against claims like Whatley's. Undisputedly, the City refused to defend Del Gaudio in *Whatley I.* By such refusal the City breached its duty under its liability protection plan to render such defense.

B

[3] Although the City's refusal to defend Del Gaudio in *Whatley I* was wrongful, Whatley has never claimed that the City acted in bad faith. Whatley did attempt to claim, belatedly, that the City was negligent in failing to settle his claim against Del Gaudio in *Whatley I* within the limits of its liability protection plan, commonly referred to in Texas as a "Stowers" claim. See *G.A. Stowers Furniture Co. v. Am. Indem. Co.,* 15 S.W.2d 544 (Tex.Comm'n App.1929, holding approved). We conclude, however, that the trial court properly refused to allow Whatley to assert this claim.

Whatley first attempted to assert a "Stowers" claim by trial amendment after the evidence in the instant case was closed. The trial court disallowed the amendment. Whatley now argues that the issue was tried with the City's implied consent. See TEX.R.CIV.P. 67. In support of his argument, Whatley cites the following testimony of two witnesses admitted without objection by the City that it was outside the scope of Whatley's pleadings. The first witness, the attorney who represented Whatley in *Whatley I,* testified that he never offered to settle with the City, that the City never offered to settle with him, that if the City had offered to settle within the limits of its liability protection plan he would have recommended that Whatley accept it, and that Whatley would have followed his advice. The second witness, another attorney called as an expert, testified that the City had a duty to offer to settle Whatley's claim within the limits of its liability protection plan, that if it had made such an offer Whatley would have accepted it, and that its failure to make such an offer was a failure to use ordinary care.

[4][5][6] To determine whether parties have impliedly consented to trial of an unpleaded cause of action, the trial court must carefully consider the proceedings as a whole. See *Jay Fikes & Assoc. v. Walton,* 578 S.W.2d 885, 889 (Tex.Civ.App.--Amarillo 1979, writ ref'd n.r.e.); see also *Ranger Ins. Co. v. Robertson,* 707 S.W.2d 135, 142 (Tex.App.--Austin 1986, writ ref'd n.r.e.). The trial court has broad discretion in determining whether an unpleaded claim has been tried by implied consent of the parties. See *Jones v. Blackmon,* 419 S.W.2d 434, 440 (Tex.Civ.App.--Houston [14th Dist.] 1967, writ ref'd n.r.e.); *Precision Motors v. Cornish,* 413 S.W.2d 752, 758 (Tex.Civ.App.--Dallas 1967, writ

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

ref'd n.r.e.). The trial court is to exercise that discretion liberally in favor of justice. *See Chambless v. Barry Robinson Farm Supply, Inc.,* 667 S.W.2d 598, 601 (Tex.App.--Dallas 1984, writ ref'd n.r.e.). However, trial amendments are to be the exception, not the rule, and should not be allowed in doubtful cases. *See Jay Fikes & Assoc.,* 578 S.W.2d at 889.

A careful review of the record in this case persuades us that the trial court did not abuse its discretion in refusing to allow Whatley to add a "Stowers" cause of action against the City after the evidence in the case was closed. The evidence pertaining to Whatley's "Stowers" claim was not extensive, and the absence of objection to that evidence does not imply the City's consent to try the claim as much as counsel's remissness in objecting. Moreover, given that the City asserted the defense of limitations to Whatley's wrongful refusal to defend claim, it seems only reasonable that the City would have asserted the same defense to a "Stowers" claim if it had intended that that claim be tried. [FN4] The *307 trial court indicated that a "Stowers" claim was not sufficiently developed in the record to warrant a trial amendment. We agree.

FN4. We note that, on the record before us, the City should have prevailed in asserting that any "Stowers" claim was barred by limitations. Any "Stowers" claim against the City accrued when the judgment in *Whatley I* became final in June 1982, and must have been brought within two years of that date. *See Hernandez v. Great Am. Ins. Co.,* 464 S.W.2d 91, 95 (Tex.1971). This action was not initiated until May 1985.

[7] Whatley also argues that the trial amendment should have been allowed because the City did not object to it on the grounds of unfair prejudice or surprise. Ordinarily, a party objecting to a trial amendment must demonstrate that unfair prejudice or surprise would result if the amendment were allowed. *See Chambless v. Barry Robinson Farm Supply, Inc.,* 667 S.W.2d 598, 601 (Tex.App.--Dallas 1984, writ ref'd n.r.e.). However, the trial court's exercise of discretion must be judged by the record and not by whether a plea of surprise or prejudice is asserted. *See Alamo Ambulance Service, Inc. v. Moulton,* 402 S.W.2d 200, 205 (Tex.Civ.App.--San Antonio 1966), *aff'd,* 414 S.W.2d 444 (Tex.1967). On this record, the unfairness of adding a "Stowers" claim to the case after the evidence was closed was apparent.

There is an even more important reason why the trial court did not abuse its discretion in refusing to allow Whatley a trial amendment to assert a "Stowers" claim. A claim that an insurer negligently failed to settle an injured party's action against an insured belongs to the insured, and the injured party has no standing to assert it. *Becker v. Allstate Ins. Co.,* 678 S.W.2d 561 (Tex.App.--Houston [14th Dist.] 1984, writ ref'd n.r.e.); *Samford v. Allstate Ins. Co.,* 529 S.W.2d 84 (Tex.Civ.App.--Corpus Christi 1975, writ ref'd n.r.e.); *Cook v. Superior Ins. Co.,* 476 S.W.2d 363 (Tex.Civ.App.--Beaumont 1972, writ ref'd n.r.e.); *see also, Hernandez v. Great Am. Ins. Co.,* 464 S.W.2d 91 (Tex.1971). Whatley has neither asserted nor proved that Del Gaudio assigned any "Stowers" claim to him. Del Gaudio's assignment of his wrongful refusal to defend claim to Whatley does not include a "Stowers" claim. The trial court did not err in refusing to allow Whatley to assert a "Stowers" claim he did not own.

In sum, while we have concluded that the City's refusal to defend Del Gaudio in *Whatley I* was wrongful, there is no valid claim in this case that the City acted in bad faith or negligently.

C

[8] The absence of a claim in this case that the City acted in bad faith in refusing to defend Del Gaudio, or that it was negligent in failing to settle Whatley's claim against Del Gaudio, precludes Whatley from recovering on his wrongful refusal to defend claim damages in excess of the limits of the City's liability protection plan. This conclusion is supported both by case authority and by logic.

In *Blakely v. American Employers' Insurance Co.,* 424 F.2d 728 (5th Cir.1970), Blakely sued Campbell, American's insured for damages arising out of an automobile accident. American was notified of the suit but refused to defend its insured. American was also notified of Blakely's offer to settle for the policy limits but refused to make any effort to negotiate a settlement. Blakely recovered a judgment in excess of the policy limits and then sued American both for wrongful refusal to defend Campbell and for negligent failure to settle. The district court granted summary judgment for Blakely for the full amount of his judgment, holding that as a matter of law American negligently failed to settle Blakely's action against Campbell. The court wrote:

Most of the cases dealing with the insurer's failure to settle involve an insurer who had assumed the defense of the action against the insured. Those

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

758 S.W.2d 301
758 S.W.2d 301
(Cite as: 758 S.W.2d 301)

Page 7

cases differ from the case at hand, since American never assumed control of the defense in the case at hand. However, the reason American was not in control of the litigation is that it wrongfully refused to defend Campbell, III, and this breach of contract to defend should not release it from its implied duty to consider Campbell's interest in the settlement. *308 When American denied liability, it did so at its own risk, and although its position may not have been entirely groundless, if the denial is found to be wrongful, it is liable for the full amount of a judgment against its insured, including any portion in excess of the policy limits....

Here it is undisputed that American intentionally breached its contract to defend Campbell, III, a contract which the lower court found to have been in force at the time of the collision, and thereafter the insurer wrongfully refused to bargain and settle, after a firm offer in writing was communicated to it, which offer American stipulated was reasonable. So, under the factual context of this case, we hold that under Texas law, negligence was established as a matter of law.

*Id.* at 734.

The Fifth Circuit recently emphasized the importance of the claim of negligent failure to settle to the ruling in *Blakely.* In *Employers Nat'l Insurance Corp. v. Zurich American Insurance Co., 792 F.2d 517 (5th Cir.1986),* Zurich, the primary insurer, paid claims up to what it considered was the limit of its coverage and refused to defend any other claims. After it was determined that Zurich owed additional coverage, its insured and others sued to recover judgment awards suffered in excess of Zurich's coverage limits. The Fifth Circuit wrote:

The dispositive question here is this: under Texas law, if a liability insurer breaches its duty to defend the insured, and if the insured is thereafter held to be liable to a third party for an amount in excess of the policy limits, shall the insurer be held liable for the full amount of the judgment? The district court has rendered summary judgment against the insurer for the excess amount on a record that shows only that the insurer violated its contractual duty by refusing to defend the insured, and reflects the subsequent judgments acknowledged to have been rendered against the insured. No proof is made of bad faith or opportunity to settle within policy limits. We reverse this judgment.

* * *

The Texas cases imposing excess liability upon the insurer for breach of this duty have arisen out of

the insurer's loss of the opportunity to settle the claim within policy limits. None of them have [sic] imposed liability solely because the insurer denied coverage and refused to take responsibility for defending the insured. The Texas courts might well subject the insurer to no more than the consequences of its breach of contract for failing to defend, and might hold that the duty of care to compromise the claim does not thereafter rest on the insured. This court, however, in an *Erie* guess has decided that the duty to settle the claim persists even after coverage has been denied [citing *Blakely* ]....

While this panel is bound by the *Blakely* panel's view that under Texas law the duty to exercise reasonable care to settle claims survives the insurer's breach of its duty to defend, we find no justification for imposing strict liability on the insurer without any evidence that the claim could have been settled for less than the judgment if the insurer had conducted the defense.

There is some authority for holding an insurer liable for the excess judgment where it has acted in bad faith in denying coverage and refusing to defend.... We do not believe, however, that Texas would impose this liability without a causal connection between the action of the insurer and the injury to the insured, *i.e.,* the judgment in excess of policy limits.... The prevailing view is that without an offer or a showing that the claim could have been resolved for the policy limits, the excess judgment is not an injury caused to the insured by the insurer....

We find only one Texas case where the contention was made that the wrongful refusal to defend the insured was a sufficient ground to hold the insured liable for the subsequent judgment beyond policy limits. That contention was rejected, *309 without discussion, as being "without merit." *Dairyland County, etc. v. Estate of Basnight, 557 S.W.2d 597, 603 (Tex.Civ.App.--Waco 1977, writ ref'd n.r.e.).* Upon the authority of the *Basnight* case, the *Stowers* rationale as we read it in the Texas cases, and the prevailing view in other jurisdictions, we reverse the judgment of the district court. We need express no opinion on the Texas law under circumstances where the refusal to defend is made in bad faith or where the underlying claim could and should have been settled within the policy limits.

*Id.* at 518, 520-521.

*Texas United Ins. Co. v. Burt Ford Enterprises, Inc., 703 S.W.2d 828, 835 (Tex.App.--Tyler 1986, no*

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

758 S.W.2d 301
758 S.W.2d 301
(Cite as: 758 S.W.2d 301)

writ), decided only months before *Employers,* reaches the same result. In that case the court held that an insurer that refuses to defend its insured when it is obligated by its policy to do so is liable for--
--any damages adjudged against the insured, within policy limits;
--the amount, within policy limits, of any reasonable settlement reached by the insured with the claimant in good faith without fraud or collusion;
--all reasonable expenses incurred by the insured in defense or settlement of the claim, including attorney fees and court costs; and
--all reasonable expenses of prosecution of the claim for wrongful refusal to defend, whether by the insured or his claimant-creditor or assignee, including attorney fees and court costs.

*See* Annotation, *Consequences of Liability Insurer's Refusal to Assume Defense of Action Against Insured Upon Ground That Claim Upon Which Action Is Based Is Not Within Coverage of Policy,* 49 A.L.R.2d 694 (1956). Under *Texas United,* an insurer's only liability in excess of policy limits is for litigation expenses. *Texas United* involved no claim of bad faith or negligence.

[9] An insurer's breach of its contractual duty to defend its insured, like any breach of contract, may give rise to liability for all damages directly and foreseeably resulting from the breach. If the City had defended Del Gaudio in *Whatley I,* it would not be liable to Whatley and Del Gaudio for more than the liability protection it provided Del Gaudio, absent a showing that it negligently failed to settle with Whatley within the limits of its protection. Having failed to defend Del Gaudio, the City's liability should not exceed the limits of the liability protection it provided, at least in the absence of a proper claim and proof of negligence or bad faith in refusing to settle the claim. [FN5]

> FN5. We express no opinion on whether *Blakely* is correct in holding that an insurer that refuses to defend its insured in breach of its duty to do so may incur liability in excess of the policy limits if it is shown to have acted negligently or in bad faith in refusing to settle the claim.

### D

Moreover, Whatley is not entitled to recover from the City damages adjudged against Del Gaudio in excess of the City's liability protection plan because Whatley has covenanted never to enforce such judgment against Del Gaudio individually.

[10][11] As a rule, a claimant who covenants not to enforce any judgment he might obtain against an insured individually does not release the insurer who has wrongfully refused to defend its insured from liability within policy limits. *See Young Men's Christian Ass'n v. Commercial Standard Ins. Co.,* 552 S.W.2d 497 (Tex.Civ.App.--Ft. Worth 1977), *writ ref'd n.r.e., 563 S.W.2d 246 (Tex.1978); First Nat'l Indem. Co. v. Mercado, 511 S.W.2d 354 (Tex.Civ.App.--Austin 1974, no writ); Langdeau v. Pittman, 337 S.W.2d 343 (Tex.Civ.App.--Austin 1960, writ ref'd n.r.e.).* This rule is supported by law and policy. The legal basis for the rule is that a person who recovers a judgment against an insured is entitled to enforce the judgment directly against the insurer to the limits of the policy without attempting to enforce it against the insured. *See Seaton v. Pickens, 126 Tex. 271, 87 S.W.2d 709, 711 (1935).* Inasmuch as the judgment creditor has the right to enforce his judgment *310 against both the insured and the insurer independently, agreeing not to enforce it against the insured does not affect his right to enforce it against the insurer. The policy basis for the rule is that it reasonably allows the insured who is wrongfully left to defend himself to secure protection against his own individual liability and hold his defense costs to a minimum. As long as the insured does not act in bad faith or in collusion with the person claiming against him, the covenant not to enforce adjudged damages against the insured does not bar recovery from the insurer within its policy limits.

[12] Although we are aware of no Texas case on the issue, we conclude that the same rule does not apply to allow recovery against an insurer in excess of policy limits. Neither of the bases for the rule applies when recovery is sought beyond policy limits. The judgment creditor of the insured has no direct right of action against the insurer for damages exceeding policy limits. *See Hernandez v. Great Am. Ins. Co., 464 S.W.2d 91 (Tex.1971).* To recover more than the policy limits from the insurer, the judgment creditor must assert the insured's injury. If the judgment cannot be enforced against the insured, no such injury exists. The insured may assign to his judgment creditor any claim he has against his insurer for payment of the excess award, but such assigned claim is actionable only as long as the insured remains liable for the excess damages. To allow the creditor to release the insured from liability for such excess damages without effecting the release

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

758 S.W.2d 301
758 S.W.2d 301
(Cite as: 758 S.W.2d 301)

Page 9

of the insurer would give the creditor and insured the power unilaterally to extend the insurer's liability. This would defeat, not serve, public policy. [FN6]

> FN6. We express no opinion as to whether a judgment creditor may recover against an insurer damages awarded against its insured in excess of policy limits for which the insured is not personally liable if the insurer has acted negligently or in bad faith.

Accordingly, we conclude that by covenanting never to enforce against Del Gaudio individually the $42,500 awarded in excess of the City's liability protection plan, Whatley is precluded from recovering such damages against the City.

E

[13][14] The City contends that Whatley's claim is barred by limitations. As we have noted above, an insurer's duty to defend its insured is ordinarily a contractual undertaking defined by the insurance policy. A claim of wrongful refusal to defend is thus a claim for breach of the contract of insurance and as such, the four-year statute of limitations applies. *Nash v. Carolina Cas. Ins. Co.*, 741 S.W.2d 598, 600 (Tex.App.--Dallas 1987, writ denied); *Hastings v. Royal-Globe Ins. Co.*, 521 S.W.2d 869, 872 (Tex.Civ.App.--San Antonio 1975, no writ); *see* TEX.CIV.PRAC. & REM.CODE ANN. § 16.004 (Vernon 1986). A cause of action for wrongful refusal to defend accrues when the refusal to defend occurs. *Nash*, 741 S.W.2d at 600-601.

The evidence is not clear exactly when the City refused to defend Del Gaudio. The assignment by Del Gaudio of his wrongful refusal to defend claim to Whatley recites:

[*Whatley I* ] was served upon Del Gaudio on or about the 2nd day of May, 1981. Immediately thereafter Del Gaudio made due demand upon the City of Dallas, Texas to furnish him a defense under such liability policy plan. The City refused to do so. Thereafter, Del Gaudio retained private counsel to represent him in such action....

The City stipulated that Del Gaudio retained private counsel on June 30, 1981. An assistant City attorney recalled discussing with Del Gaudio whether the City would defend him in *Whatley I* sometime before the first trial setting on November 16, 1981, although he could not recall exactly when those conversations occurred.

The present suit was filed on May 2, 1985, as evidenced by the docket sheet. Taking the earliest date the City could have refused to defend Del Gaudio as May 3, 1981, the day after he was served, we conclude that this action was filed within *311 four years of the date it accrued and is therefore not barred by limitations.

III

We view the pleading and trial of this case as somewhat confused. Whatley pleaded the City's wrongful refusal to defend Del Gaudio both as a breach of contract and as negligence. The trial court submitted the case to the jury on negligence issues. We can find in the record no discussion of Whatley's contract claim.

In our view, Whatley's claim sounds in contract, not in tort. The City's breach of its duty to defend Del Gaudio, and the absence of any right of Whatley to recover for such breach, are both established as a matter of law in this case. The judgment of the trial court denying Whatley recovery against the City, although apparently rendered on the wrong theory, was nonetheless correct.

The confusion below has continued on appeal. Two of Whatley's four points of error aim aside the target. However, we believe Whatley's arguments fairly raises all the issues we have discussed. Accordingly, we have addressed those arguments apart from his specific points of error. We now turn to the points themselves.

[15] Whatley asserts in his first point of error that the court erred in denying his motion for judgment non obstante veredicto because *Whatley II* is res judicata of the City's liability for wrongfully refusing to defend Del Gaudio. *Whatley II* established only that Whatley's civil rights claim against Del Gaudio was covered under the City's liability protection plan. Although we have concluded that the City breached its duty to defend Del Gaudio, *Whatley II* does not establish that breach under the doctrine of res judicata or otherwise. Whatley's first point of error is therefore overruled.

Whatley asserts in his second point of error that the trial court erred in denying his motion for judgment non obstante veredicto because the City's refusal to defend Del Gaudio proximately caused his damages as a matter of law. We do not consider proximate cause to be an element of Whatley's claim in this case. Whatley's point is thus a non sequitur.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

758 S.W.2d 301
758 S.W.2d 301
**(Cite as: 758 S.W.2d 301)**

Page 10

However, we understand by the arguments Whatley makes under this point of error that his complaint is that the City's liability has been established as a matter of law.   Broadly reading this point of error, we overrule it.

Whatley asserts in his third and fourth points of error that the court erred in refusing to allow Whatley to assert by trial amendment a claim against the City for negligent failure to settle *Whatley I*, and in refusing to submit such claim to the jury.   For the reasons we have set forth above, we overrule points of error three and four.

Finally, the City complains in a single cross-point that the trial court erred in not holding that Whatley's claim in this case is barred by limitations. For the reasons we have given, we overrule the City's cross-point.

The judgment of the trial court is affirmed.

758 S.W.2d 301

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

844 F.Supp. 325
(Cite as: 844 F.Supp. 325)

Page 1

United States District Court,
S.D. Texas,
Houston Division.

AMERICAN GUARANTEE AND LIABILITY
INSURANCE COMPANY, Plaintiff,
v.
SHEL-RAY UNDERWRITERS, INC., Bunker Hill
Insurance Agency, Inc., Surplus
Underwriters Casualty Insurance Company and
Midcontinent General Agency, Inc.,
Defendants.

Civ. A. No. H-91-2618.

March 5, 1993.

Insurer filed action seeking declaration that it had no duty to defend insured in underlying state fraud action and insured counterclaimed for breach of contract and good faith and for violations of Texas Deceptive Trade Practices Act (DTPA) and Texas Insurance Code. The District Court, Harmon, J., held that petition in underlying action asserted various causes of action based on allegations of knowingly fraudulent statements by insured and, thus, insurer had no duty to defend in light of policy exclusion for injury done by or at direction of insured with knowledge of its falsity.

Ordered accordingly.

West Headnotes

[1] Insurance ☞2914
217k2914 Most Cited Cases
        (Formerly 217k514.1(1))

[1] Pleading ☞34(1)
302k34(1) Most Cited Cases

"Eight corners rule" under Texas law refers to court's focus on factual allegations in complaint and on policy terms at issue, not merely on legal theories asserted.

[2] Contracts ☞143(2)
95k143(2) Most Cited Cases

[2] Contracts ☞152
95k152 Most Cited Cases

Under Texas law, instrument is not ambiguous if instrument has certain and definite meaning, and reviewing court must construe instrument according to its terms.

[3] Evidence ☞448
157k448 Most Cited Cases

Admission of explanatory extrinsic evidence under Texas law depends on whether court finds as matter of law that written instrument is ambiguous.

[4] Contracts ☞176(2)
95k176(2) Most Cited Cases

Under Texas law, interpretation of instrument becomes fact issue for jury only if there remains genuine uncertainty as to which of two meanings is appropriate after application of pertinent rules of construction.

[5] Contracts ☞147(1)
95k147(1) Most Cited Cases

Objective, rather than subjective, intent of parties as expressed in written instrument controls instrument's construction under Texas law.

[6] Contracts ☞143.5
95k143.5 Most Cited Cases

Under Texas law, reviewing court must harmonize and give effect to all provisions of instrument so that none of writing will be meaningless, giving weight to each portion of instrument unless there is irreconcilable conflict.

[7] Contracts ☞143.5
95k143.5 Most Cited Cases

[7] Contracts ☞162
95k162 Most Cited Cases

Under Texas law, provisions in instrument that appear to conflict should be adapted to reflect true intentions of parties but no single provision taken alone will be given controlling effect; all provisions must be considered with reference to whole instrument.

[8] Insurance ☞2313(2)
217k2313(2) Most Cited Cases
        (Formerly 217k514.10(2))

Petition in underlying action against insured asserted

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

844 F.Supp. 325
(Cite as: 844 F.Supp. 325)

Page 2

various causes of action based on allegations of knowingly fraudulent statements by insured and, thus, insurer had no duty to defend in light of policy exclusion for injury done by or at direction of insured with knowledge of its falsity.

[9] Insurance ⚖1801
217k1801 Most Cited Cases
(Formerly 217k138(5))

Policy language clearly stated that insured agreed to and understood agreement and, thus, insured could not complain that it was ignorant of or mistaken about contents of policy exclusion, or that it failed to read exclusion before accepting policy.

*326 Patricia Kay Dube, Kroll & Tract, H. Lee Lewis, Jr., Griggs & Harrison, Houston, TX, for American Guarantee and Liability Ins. Co.

Jill Annette Schaar, Liddell Sapp Zivley Hill & LaBoon, Houston, TX, for Shel-Ray Underwriters, Inc. and Bunker Hill Ins. Agency, Inc.

Jeffrey Wayne Glass, Houston, TX, for Surplus Underwriters Cas. Ins. Co. and Mid-Continent General Agency, Inc.

### MEMORANDUM

HARMON, District Judge.

Plaintiff American Guarantee and Liability Insurance Company ("AGLIC") brings this action seeking a Declaratory Judgment that it has no duty to defend or indemnify defendants Shel-Ray Underwriters, Inc. ("Shel-Ray"), and Bunker Hill Insurance Agency, Inc. ("Bunker Hill") in a state court action brought by Surplus Underwriters Casualty Insurance Company ("SUCIC") and Mid-Continent General Agency, Inc. Pending before the Court is the Motion for Summary Judgment (Instrument No. 7) submitted by AGLIC and the cross motion for summary judgment submitted by Shel-Ray and Bunker Hill (Instrument No 11). Having considered the motions, the responses, and the applicable law, the Court is of the opinion that AGLIC's motion should be granted.

### I. STATEMENT OF FACTS  [FN1]

FN1. The Court will focus its summary on the *factual* allegations in the complaint, not merely on the *legal* theories asserted, and on the policy terms. In Texas this is

commonly referred to as the "eight corners rule." *Cluett v. Medical Protective Co.*, 829 S.W.2d 822, 827 (Tex.App.--Dallas 1992, writ denied); *Feed Store, Inc. v. Reliance Ins. Co.*, 774 S.W.2d 73, 75 (Tex.App.--Houston [14th Dist.] 1989, writ denied).

[1] In 1988 SUCIC started to offer competitive insurance plans to Texas nursing homes. Some of SUCIC's accounts were previously underwritten by Northland/Northfield Insurance Companies ("Northland") whose agent is Bunker Hill. Original Petition at ¶ ¶ XIII and IV. Ray Thomas, Bunker Hill's founder, fearing competition made false representations to SUCIC in an attempt to garner the position as SUCIC's local recording agent. Thomas allegedly promised SUCIC that the alliance would be mutually beneficial, that SUCIC would receive $700,000.00 in annual premiums, and that Bunker Hill would act fairly and honestly toward SUCIC. Original Petition at ¶ ¶ XIV & XV. SUCIC alleges that Bunker Hill violated that trust to the extent that SUCIC felt compelled to suspend Bunker Hill's authority to represent it. Bunker Hill then made additional assurances in order to retain their authority to represent SUCIC. Original Petition at ¶ XVII. The petition states that the above mentioned actions were committed prior to December 28, 1988. Rather than mending its ways Bunker Hill then disparaged SUCIC's business reputation by knowingly disseminating false, misleading, and damaging information. Original Petition at ¶ ¶ XVIII & XIX. Bunker Hill's business practices toward SUCIC were knowingly violative of their agreement and caused SUCIC to terminate Bunker Hill. Original Petition at ¶ XIX. After Bunker Hill was terminated by SUCIC it continued to mar SUCIC's reputation. Bunker Hill allegedly fabricated loss data in order to restrain trade, misrepresented SUCIC's financial solvency, misrepresented the nature of its insurance coverage, and disrupted SUCIC's daily operations. Original Petition at ¶ ¶ XXI & XXII. SUCIC maintains that the representations made by the defendants were known to be false at the time they were made. Original Petition at ¶ XXXI. Legal action was then instituted; a state court action brought by *Surplus Underwriters Casualty *327 Insurance Company and Mid-Continent General Agency, Inc. v. Shel-Ray Underwriters, Inc., Great Midwest Insurance Company, Bunker Hill Insurance Agency, Inc., Paul Poston, Sheldon Ouster, and Ray Thomas,* Cause No. 90-060868, is currently pending in the 334th District Court of Harris County, Texas.

Shel-Ray and Bunker Hill made several demands on

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

844 F.Supp. 325
(Cite as: 844 F.Supp. 325)

AGLIC to provide a defense to the suit. AGLIC declined.

AGLIC based its decision on its reading of the Texas Special Businessowners Policy, No. TBP 30-60-164-02, it issued to Shel-Ray, Bunker Hill and Memorial General Agency, Inc., which became effective December 28, 1988 and expired December 28, 1989. It is uncontested that the insurance policy contained an "Exclusions" provision. AGLIC now seeks a declaratory judgment to enforce the terms of the policy, including the exclusions, and to declare that it has no obligation to defend or indemnify Shel-Ray or Bunker Hill.

Shel-Ray and Bunker Hill assumed their own defense in the state action and brought a counterclaim in this action for breach of contract, claims under the Texas Deceptive Trade Practices Act and the Texas Insurance Code, breach of good faith, and exemplary damages to recover damages, attorneys' fees and all other costs incurred in connection to the state court suit.

The policy covers certain actions, among others, "personal injury" or "advertising injury," that result in business liability for the insured. The definitions of the terms "personal injury" and "advertising injury" appear in the policy as follows:

**F. LIABILITY AND MEDICAL EXPENSES DEFINITIONS**

1. **"ADVERTISING INJURY"** means injury arising out of one or more of the following offenses:
(a) Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
(b) Oral or written publication of material that violates a person's right of privacy;
(c) Misappropriation of advertising ideas or style of doing business; or
(d) Infringement of copyright, title or slogan.

\* \* \* \* \* \*

Pl.'s Motion for Summary J.Ex. A at p. 26.
10. **"PERSONAL INJURY"** means injury, other than "bodily injury" arising out of one or more of the following offenses:
(a) False arrest detention or imprisonment;
(b) Malicious prosecution;
(c) Wrongful entry into, or eviction of a person from a room, dwelling or premises that the person occupies;
(d) Oral or written publication of material that

slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or
(e) Oral or written publication of material that violates a person's right of privacy.

Pl.'s Motion for Summary J.Ex. A at p. 28.

**A. COVERAGES**
1. BUSINESS LIABILITY. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage," "personal injury" or **"advertising injury"** to which this insurance applies.....
a. This insurance applies only:

. . . . .

(2) To "personal injury" caused by an offense:
(a) Committed in the "coverage territory" during the policy period; and
(b) Arising out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you.
(3) To **"advertising injury"** caused by an offense committed:
**\*328** (a) In the "coverage territory" during the policy period; and
(b) In the course of advertising your goods, products or services.

\* \* \* \* \* \*

Pl.'s Motion for Summary J.Ex. A at p. 18.

The following exclusionary provisions are relevant:

**B. EXCLUSIONS**
1. **Applicable to Business Liability Coverage--** This insurance does not apply to:

\* \* \* \* \* \*

p. "Personal injury" or **"advertising injury"**:
(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;
(2) Arising out of oral or written publication of material whose first publication took place, if done by or at the direction of the insured with knowledge of its falsity;
(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

\* \* \* \* \* \*

q. **"Advertising injury"** arising out of:
(1) Breach of contract other than misappropriation

844 F.Supp. 325
(Cite as: 844 F.Supp. 325)

age 4

of advertising ideas under an implied contract;

* * * * * *

Pl.'s Motion for Summary J.Ex. A at p. 22.

In other words, if Shel-Ray or Bunker Hill commits an offense through "oral or written publication of material that **slanders** or libels a person or organization or disparages a person's or organization's goods, products or services" during the "policy period" that either "aris[e] out of the conduct of [their] business" or is committed "in the course of advertising" then it falls within the scope of the policy and AGLIC would have a duty to defend and indemnify. However, the insurance does not apply to, among other things, injuries arising out of the publication of material that is known to be false, or whose publication took place before the beginning of the policy period, or injuries that arise out of willful violations of a penal statute.

AGLIC contends that since the complaint alleges that Shel-Ray and Bunker Hill knowingly committed fraudulent acts that it is not bound to defend them. The complaint also alleges acts that were executed before the beginning of the policy period and that may be violative of certain penal statutes.

## II. DISCUSSION

### A. Summary Judgment Standard

Rule 56(c) provides that "[summary] judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The moving party has the burden of showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Williams v. Adams, 836 F.2d 958, 960 (5th Cir.1988). The burden is not on the movant to produce evidence showing the absence of a genuine issue of material fact. See International Ass'n of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co., 812 F.2d 219, 222

(5th Cir.1987). A defendant who moves for summary judgment may rely on the absence of evidence to support an essential element of the plaintiff's case Id.

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. See Celotex, 477 U.S. at 324-25, 106 S.Ct. at 2553-54. A party opposing a properly supported motion for summary judgment may *329 not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing the existence of a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57, 106 S.Ct. 2505, 2514-15, 91 L.Ed.2d 202 (1986). Assertions unsupported by facts are insufficient to oppose a motion for summary judgment. Williams v. Weber Management Serv., 839 F.2d 1039, 1041 (5th Cir.1987). There must be evidence giving rise to reasonable inferences that support the nonmoving party's position. St. Amant v. Benoit, 806 F.2d 1294, 1297 (5th Cir.1987). Bare or mere allegations are insufficient. Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc., 831 F.2d 77, 79 (5th Cir.1987).

In considering a motion for summary judgment, the district court must view the evidence through the prism of the substantive evidentiary burden. Anderson, 477 U.S. at 254, 106 S.Ct. at 2513. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. Id. at 254, 106 S.Ct. at 2513. The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Electric Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S.Ct. 1348, 1356-57, 89 L.Ed.2d 538 (1986). Summary judgment is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions. Honore v. Douglas, 833 F.2d 565, 567 (5th Cir.1987).

### B. The Applicable Law

In Texas, an insurer's contractual duty to defend must be determined solely from the face of the pleadings, without reference to any facts outside the pleadings. Continental Sav. Ass'n v. U.S. Fidelity and Guar. Co., 762 F.2d 1239, 1243 (5th Cir.), amended in part, rehearing denied, 768 F.2d 89 ([5th Cir.] 1985). The duty to defend arises when a third party sues the insured on allegations that, if taken as true, potentially state a cause of action within the terms of the policy. Id. Whether the policy covers the cause of action alleged must be determined from the contractual terms of the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

844 F.Supp. 325
(Cite as: 844 F.Supp. 325)

Page 5

insurance policy. *Whatley v. City of Dallas*, 758 S.W.2d 301, 304 (Tex.App.--Dallas 1988, writ denied). If under the facts alleged, there is a prima facie showing that the claim is not covered under the policy, the insurer has no duty to defend. *Holmes v. Employers Casualty Co.*, 699 S.W.2d 339, 340-41 (Tex.App.--Houston [1st Dist.] 1985, writ ref'd n.r.e.).

It is well established that insurance policies are to be strictly construed in favor of the insured in order to avoid exclusion of coverage. *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex.1984). This is not true, however, when a term in question is susceptible of [sic] only one reasonable construction. *Id.* Language in insurance provisions is only ambiguous if the court is uncertain as to which of two or more meanings was intended. *Entzminger v. Provident Life & Accident Ins. Co.*, 652 S.W.2d 533, 535 (Tex.App.--Houston [1st Dist.] 1983, no writ).

*Houston Petroleum Co. v. Highlands Ins. Co.*, 830 S.W.2d 153, 155 (Tex.App.--Houston [1st Dist.] 1990, writ denied).

As stated, we must liberally construe the allegations in the third-party complaint to determine if they fall within the provisions of the insurance policy[y]. *Heyden [Newport Chem. Corp. v. Southern Gen. Ins. Co.]*, 387 S.W.2d [22] 26 [ (Tex.1965) ], *Mary Kay Cosmetics, Inc. v. North River Ins. Co.*, 739 S.W.2d 608, 612 (Tex.App.-- Dallas 1987, no writ). If there is any doubt about whether the allegations reflect a potential liability, such doubt must be resolved in favor of the Insured. *Mary Kay*, 739 S.W.2d at 612. However, we must focus our review on the *factual* allegations in the complaint, not on the *legal* theories asserted. *Continental Casualty Co. v. Hall*, 761 S.W.2d 54, 56 (Tex.App.--Houston [14th Dist.] 1988, writ denied), *cert. denied*, 495 U.S. 932, 110 S.Ct. 2174, 109 L.Ed.2d 503 (1990). Unless the petition alleges *facts* within the coverage of the policies, the Insurers have no duty to defend. *Fidelity & Guar. Ins. Underwriters v. McManus*, 633 S.W.2d 787, 788 (Tex.1982); *Holmes v. Employers Casualty Co.*, 699 S.W.2d 339, 340-41 (Tex.App.--Houston [1st Dist.] 1985, writ ref'd n.r.e.).

**\*330** *Terra International, Inc. v. Commonwealth Lloyd's Ins. Co.*, 829 S.W.2d 270, 272 (Tex.App.-- Dallas 1992, writ denied) (emphasis in original).

It is obvious from the terms of the original petition that some of the acts of which SUCIC complains occurred before the beginning of the coverage period. More importantly, the original petition is replete with allegations that Bunker Hill knowingly made statements that it knew were false. The insurance coverage does not apply to this fact situation since the third-party lawsuit arises out of the allegedly fraudulent statements that were knowingly made. The insurance agreement and exclusion are apparently not ambiguous.

"Insurance policies are contracts, and their constructions are governed by ordinary contract principles. *Gomez v. Hartford Co. of the Midwest*, 803 S.W.2d 438, 441 (Tex.App.--El Paso 1991, writ denied) (citing *U.S. Fire Insurance Company v. Aetna Casualty & Surety Company*, 781 S.W.2d 394, 398 (Tex.App.--Houston [1st Dist.] 1989, no writ)).

Texas law is clear. "Before resorting to the rules of construction, the court must first determine whether an ambiguity does in fact exist." *Gomez v. Hartford Co. of the Midwest*, 803 S.W.2d at 441-42 (quoting *Glover v. National Insurance Underwriters*, 545 S.W.2d 755, 761 (Tex.1977)). "The courts will enforce an unambiguous instrument as written; and in an ordinary case, the writing alone will be deemed to express the intention of the parties." *Sun Oil Company (Delaware) v. Madeley*, 626 S.W.2d 726, 728 (Tex.1981). *See also Cherokee Water Company v. Forderhause*, 641 S.W.2d 522 (Tex.1982); *Aetna Life and Casualty Company v. Gunn*, 628 S.W.2d 758 (Tex.1982).

[2] If an instrument has certain and definite meaning then it is not ambiguous and the Court must construe the instrument according to its terms. *Coker v. Coker*, 650 S.W.2d 391, 392 (Tex.1983). This Court must ascertain the true intentions of the parties as expressed in the instrument. *Id.*

[3] The admission of explanatory extrinsic evidence depends on whether the court finds as a matter of law that a written instrument is ambiguous. *Isbell v. Williams*, 738 S.W.2d 20, 24 (Tex.App.--Texarkana 1987, writ ref'd n.r.e.); *Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 527 (Tex.1987); *O'Shea v. Coronado Transmission Co.*, 656 S.W.2d 557, 561 (Tex.App.--Corpus Christi 1983, writ ref'd n.r.e.).

[4] The interpretation of an instrument becomes a fact issue for the jury only when, after application of the pertinent rules of construction, there remains a genuine uncertainty as to which of two meanings is proper. *Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex.1979). This is so as Texas courts have repeatedly declared that the question of whether an instrument is ambiguous is one of law for

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

determination by the court. *See e.g., R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.,* 596 S.W.2d 517, 518-19 (Tex.1980); *Coker v. Coker,* at 394.

There are other meanings of ambiguity. An instrument may be ambiguous if its meaning is "uncertain and doubtful." *Skyland Developers, Inc. v. Sky Harbor Associates,* 586 S.W.2d 564, 568 (Tex.Civ.App.--Corpus Christi 1979, no writ); *Walter E. Heller & Co. v. Allen,* 412 S.W.2d 712, 718 (Tex.Civ.App.--Corpus Christi 1967, writ ref'd n.r.e.) (guarantor liability). A written instrument may be ambiguous if it is "difficult to comprehend or distinguish, [or] of doubtful import," as there is "doubt as to [its] true meaning." *S ee San Antonio Life Insurance Co. v. Griffith,* 185 S.W. 335 (Tex.Civ.App.--Fort Worth 1916, no writ); *O'Shea v. Coronado Transmission Co.,* 656 S.W.2d at 561; *see also Goff v. Southmost Sav. & Loan Ass'n,* 758 S.W.2d 822, 825 (Tex.App.--Corpus Christi 1988, writ denied).

The principal purpose of contract construction is to ascertain the intentions of the parties. Therefore, contracts must be construed from a "utilitarian standpoint bearing in mind the particular business activity sought to be served." *Neece v. A.A.A. Realty Co.,* 159 Tex. 403, 322 S.W.2d 597, 602 (1959); *see also Skyland Developers Inc. v. Sky Harbor Associates,* 586 S.W.2d at 570.

**\*331** [5] Courts must give effect to the objective, not subjective, intent of the p arties as it is e xpressed in writing, as that intent controls the instrument's construction. *Westwind Exploration, Inc. v. Homestate Sav. Ass'n,* 696 S.W.2d 378, 382 (Tex.1985).

[6][7] This Court must harmonize and give effect to all the provisions of the instrument so that none of the writing will be meaningless. *Chapman v. Orange Rice Milling Co.,* 747 F.2d 981, 983 (5th Cir.1984); *Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 243 S.W.2d 154, 158 (1951). If the provisions in the instrument appear to conflict, they should be adapted to reflect the true intentions of the parties. *Ogden v. Dickinson State Bank,* 662 S.W.2d 330, 332 (Tex.1983). This Court must give weight to each portion of the instrument unless there is an irreconcilable conflict. *Id.* Moreover, no single provision taken alone will be given controlling effect; rather, all provisions must be considered with reference to the w hole i nstrument. *C oker v. Coker,* 650 S.W.2d at 3 93; *B ush v. Brunswick Corp.,* 7 83 S.W.2d 724, 728 (Tex.App.--Fort Worth 1989, writ

denied).

An otherwise unambiguous insurance policy is not rendered ambiguous simply because a proper understanding required the insured to read it thoroughly and carefully. *LaBatt Company v. Hartford Lloyd's Insurance Company,* 776 S.W.2d 795 (Tex.App.--Corpus Christi 1989, no writ). Likewise, a policy is not ambiguous because it does not comport with the coverage desired by the insured. *Guthrie v. Republic National Insurance Company,* 682 S.W.2d 634, 640 (Tex.App.--Houston [1st Dist.] 1984, writ ref'd n.r.e.). Where provisions of the contract are c lear a nd free from ambiguity, the interpretation of the parties is immaterial. *Ussery Investments v. Cannon & Carpenter, Inc.,* 663 S.W.2d 591, 593 (Tex.App.--Houston [1st Dist.] 1983, writ dism'd).

*Gomez v. Hartford Co. of the Midwest,* 803 S.W.2d at 442.

[8] Much like the court in *Houston Petroleum* considering the scope of similar clauses and definitions, this Court finds that these statements, as alleged in SUCIC's petition, fall within the exceptions to policy coverage. *See Houston Petroleum Co. v. Highlands Ins. Co.,* 830 S.W.2d at 156-57. The exclusion contains language that unambiguously states that AGLIC would not insure for injury if done by or at the direction of the insured with knowledge of its falsity. *See Daca, Inc. v. Commonwealth Land Title Ins. Co.,* 822 S.W.2d 360, 363-64 (Tex.App.--Houston [1st Dist.] 1992, writ denied) (no duty to defend where underlying s uit i s based on fraud); *cf. Decorative Center of Houston v. Employers Cas. Co.,* 833 S.W.2d 257, 260 (Tex.App.--Corpus Christi 1992, writ denied) ("Public policy prohibits permitting an insured to benefit from his own wrongdoing" in that " 'one should not be able to insure against one's own intentional misconduct.' "). Since SUCIC's petition alleges causes of actions based on knowingly fraudulent statements and since AGLIC's duty to defend a nd i ndemnify i s b ased on the allegations of the complaint [FN2] when viewed in light of the insurance policy, AGLIC is clearly entitled to a declaratory judgment. *Houston Petroleum Co. v. Highlands Ins. Co.,* 830 S.W.2d at 156; *see also Puckett,* 678 S.W.2d at 938.

FN2. It should be noted that the parties to this action have focused their examination on the causes of action set forth in the petition. To the extent that a review of the causes of action is necessary it is clear that

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

SUCIC's claims of breach of fiduciary duty and common law fraud stem from the allegations that Bunker Hill made knowingly false statements. No duty to defend or indemnify arises from the allegations contained in those causes of action.

With respect to SUCIC's allegation of antitrust violations AGLIC need not defend that claim because it also constitutes a violation of a penal statute. _Decorative Center of Houston v. Employers Cas. Co., 833 S.W.2d at 263_ (allegation of intentional trespass action in tort allowed insurer to deny duty to defend since the allegation was sufficient for the insurer to conclude that the behavior violated a penal statute precluding all available coverage). Alternatively, it is clear that antitrust claim is predicated on the underlying allegations that Bunker Hill made knowingly false statements to SUCIC's prospective clients. Original Petition at ¶ ¶ XXXII-XXXIII ("SUCIC and Mid-Continent reallege and incorporate paragraphs II and XXV as if fully set forth at length.").

**\*332** [9] Bunker Hill cannot complain that it was ignorant of, or mistaken about the contents of the exclusion, or failed to read it before accepting it where it accepted the agreement that clearly states that it was agreed and understood by the insured. _Heritage Manor of Blaylock Properties, Inc. v. Petersson. 677 S.W.2d 689, 691 (Tex.App.--Dallas 1984, writ ref'd n.r.e.)_ (insured has the duty to read the policy and is bound by its terms, insured is charged with the conditions of coverage); _see generally Torchia v. Aetna Cas. & Sur. Co., 804 S.W.2d 219, 222-24 (Tex.App.--El Paso 1991, writ denied)_ (a settlement contract where claimant released insurer and court determined settlement was fair).

### III. CONCLUSION

This Court, having considered all the issues presented concludes, for the reasons set for the above, that AGLIC's motion for summary judgment should be granted, AGLIC is entitled to its declaratory judgment.

### FINAL JUDGMENT

In accordance with the memorandum of even date it is ordered that AGLIC's motion for summary judgment is hereby GRANTED. It is further

**ORDERED** that this **DECLARATORY JUDGMENT** be rendered that AGLIC has neither a duty to defend nor duty to indemnify the Shel-Ray Underwriters, Inc., or Bunker Hill Insurance Agency, Inc., in the state suit numbered Cause No. 90-060868, that is currently pending in the 334th District Court of Harris County, Texas. It is further

**ORDERED** that the cross motion for summary judgment submitted by Shel-Ray and Bunker Hill is hereby **DENIED**. Since the Court has determined that AGLIC has neither a duty to defend nor indemnify Shel-Ray and Bunker Hill their counterclaims are hereby **DISMISSED**.

844 F.Supp. 325

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works