Westlaw.
699 S.W.2d 339                                                                   Page 1
699 S.W.2d 339
(Cite as: 699 S.W.2d 339)

H

Court of Appeals of Texas,
Houston (1st Dist.).

Lamar HOLMES and Joe Robledo, Individually and
d/b/a/ the Hair Crimpers,
Appellants,
v.
EMPLOYERS CASUALTY COMPANY, Appellee.

No. 01-85-0428-CV.

Oct. 17, 1985.
Rehearing Denied Nov. 7, 1985.

Action was instituted for a declaratory judgment as to liability coverage under a policy insuring operators of a beauty salon and barber shop. The 215th District Court, Harris County, Eugene Chambers, J., entered summary judgment for insurer, and insureds appealed. The Court of Appeals, Levy, J., held that facts alleged in personal injury action against insured operators of beauty salon and barber shop, that an unnamed employee acting within course and scope of employment dropped hair dye or some other type solution into customer's left eye causing painful and severe damage to that eye, concerned an injury resulting from treatment, rather than from an accident or occurrence unrelated to treatment, and thus fell within provision of owners', landlords', and tenants' liability policy excluding coverage for injuries due to rendering of cosmetic or tonsorial treatments.

Affirmed.

West Headnotes

[1] Insurance ☞2914
217k2914 Most Cited Cases
(Formerly 217k514.10(1))
A duty to defend should not be placed upon an insurer if facts are alleged that, prima facie, exclude insured from coverage under policy.

[2] Insurance ☞2374
217k2374 Most Cited Cases
(Formerly 217k514.10(2))
Facts alleged in personal injury action against insured operators of beauty salon and barber shop, that an unnamed employee acting within course and scope of employment dropped hair dye or some other type solution into customer's left eye causing painful and severe damage to that eye, concerned an injury resulting from treatment, rather than from an accident or occurrence unrelated to treatment, and thus fell within provision of owners', landlords', and tenants' liability policy excluding coverage for injuries due to rendering of cosmetic or tonsorial treatments.

*340 Clinard J. Hanby, Haynes & Fullenweider, Houston, for appellants.

Richard P. Colquitt, Fulbright & Jaworski, Houston, for appellee.

Before EVANS, C.J., and COHEN and LEVY, JJ.

OPINION

LEVY, Justice.

This is an appeal from a summary judgment rendered against the appellants, operators of a beauty salon and barber shop, who brought this action for declaratory judgment against their insurer. The issue on appeal is whether the appellee had a duty to defend the appellants in a personal injury suit filed against them by a customer. We hold that the appellee had no such duty and affirm.

The appellants were insured under an owners', landlords', and tenants' liability policy, which provided:
> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of ... bodily injury ... to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental thereto, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent.

The policy also contained an exclusion for malpractice and professional services:
> It is agreed that with respect to any operation described below or designated in the policy as subject to this endorsement, the insurance does not apply to bodily injury or property damage due to the rendering of or failure to render any cosmetic ... [or] tonsorial ... services or treatments.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

[1] An insurer is required to defend only those actions that fall within the insured's policy coverage. *Fidelity & Guaranty Insurance Underwriters, Inc. v. McManus, 633 S.W.2d 787, 788 (Tex.1982)*. The insurer may rely on the allegations of the petition, and if the plaintiff alleges facts that, prima facie, exclude the plaintiff from the liability coverage, the insurer has *341 no duty to defend. *Heyden Newport Chemical Corp. v. Southern General Insurance Co., 387 S.W.2d 22, 24-25 (Tex.1965)*.

During the term of the policy, one of the beauty salon's customers filed a personal injury action against the appellants, claiming that an employee had dropped hair dye into her eye during a hair coloring treatment. The customer's petition alleged:

> On or about December 6, 1978, the Plaintiff was a business customer invitee at the Defendant HAIR CRIMPERS. *While the Plaintiff was being attended to by a female employee ... acting within the course and scope of her employment* with HAIR CRIMPERS, said unnamed female employee dropped hair dye or some other type solution into the Plaintiff's left eye causing painful and severe damage to the Plaintiff's left eye (Emphasis added).

Based on these allegations in the customer's petition, the appellee refused to defend the suit against the appellants, on the grounds that the cause of the bodily injury alleged was expressly excluded from the appellants' liability coverage. The appellants brought this action for declaratory relief to establish the appellee's duty to defend the personal injury suit.

The appellants contend that the language of the policy is ambiguous and that, therefore, it must be strictly construed against the insurer. *See Puckett v. U.S. Fire Insurance Co., 678 S.W.2d 936, 938 (Tex.1984)*. They allege that the customer's injury was caused by accident and not "because of" the rendering of professional cosmetic or tonsorial services; therefore, they argue, the exclusion did not apply.

[2] The plain language of the insurance policy excluded coverage for injuries "due to the rendering of ... cosmetic ... [or] tonsorial treatments." The customer's petition did not allege that her injury was caused by an accident or occurrence unrelated to the treatment, but rather that the injury was the direct result of the employee dropping hair dye into her eye. The customer alleged that her eye was harmed by hair dye or some other type of solution while she was being attended to by the beauty shop employee. The injury was of a type easily foreseeable by the beautician. This case is distinguishable from those in which the harm is caused by a breach of a proprietor's duty to a patron/invitee, instead of by a failure to exercise a professional beautician's standard of care. *See, e.g., Beauty By Encore, Inc. v. Commercial Union Insurance Co., 92 A.D.2d 855, 459 N.Y.S.2d 848 (N.Y.App.Div.1983); Lady Beautiful, Inc. v. Zurich Insurance Co., 16 Ohio Misc. 169, 240 N.E.2d 894 (Ct.C.P.1968)*.

The appellants contracted only for general liability coverage under a policy that specifically excluded liability for bodily injury due to the rendering of professional services or malpractice. In this case, the contract is unambiguous, and the injurious circumstances are clearly of the type contemplated by the exclusion. The appellants' two points of error are overruled.

The judgment of the trial court is affirmed.

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

830 S.W.2d 153
(Cite as: 830 S.W.2d 153)

Page 1

**H**

Court of Appeals of Texas,
Houston (1st Dist.).

HOUSTON PETROLEUM COMPANY and Richard O'Donnell, Appellants,
v.
HIGHLANDS INSURANCE COMPANY, Appellee.

No. 01-89-01064-CV.

Aug. 31, 1990.
Publication Ordered Jan. 17, 1991.

Insureds appealed from summary judgment of the 80th District Court, Harris County, in favor of insurer, declaring that insurer had no duty to defend insureds in suit brought against them in federal district court. The Court of Appeals, Evans, C.J., held that: (1) complaint in underlying federal suit did not allege "bodily injury" within meaning of insurance coverage, so as to trigger insurer's duty to defend; (2) allegations in federal suit did not trigger provisions of policies covering "property damage"; and (3) federal complaint did not allege a "personal injury" within meaning of policies.

Affirmed.

West Headnotes

[1] Insurance ⚿2915
217k2915 Most Cited Cases
  (Formerly 217k514.10(1))

Insurer's contractual duty to defend must be determined solely from face of the pleadings, without reference to any fact outside the pleadings.

[2] Insurance ⚿2914
217k2914 Most Cited Cases
  (Formerly 217k514.10(1))

Insurer's duty to defend arises when third party sues insured on allegations that, if taken as true, potentially state cause of action within terms of policy; whether policy covers cause of action alleged must be determined from contractual terms of policy; if under facts alleged, there is a prima facie showing that claim is not covered under the policy, insurer has no duty to defend.

[3] Insurance ⚿1822
217k1822 Most Cited Cases
  (Formerly 217k146.5(2))

[3] Insurance ⚿1835(2)
217k1835(2) Most Cited Cases
  (Formerly 217k146.7(6))

Insurance policies are to be strictly construed in favor of insured in order to avoid exclusion of coverage; however, when there is no ambiguity, it is court's duty to give words used their plain meaning.

[4] Insurance ⚿1808
217k1808 Most Cited Cases
  (Formerly 217k146.1(2))

Language in insurance provisions is only ambiguous if court is uncertain as to which of two or more meanings was intended.

[5] Insurance ⚿2315
217k2315 Most Cited Cases
  (Formerly 217k437.2(1))

Exposure to "fraudulent promises, false representations, and untrue statements" allegedly made by insureds did not, as a matter of law, fall within plain meaning of definition of "occurrence" contained in liability policy covering bodily injury caused by an occurrence.

[6] Insurance ⚿2277
217k2277 Most Cited Cases
  (Formerly 217k514.10(2))

Complaint which alleged that plaintiffs suffered economic loss, including loss of capital contributions in limited partnership venture conducted by insureds did not allege property damage claim under provision of insurance policies, so as to trigger insurer's duty to defend; plaintiffs alleged they made substantial payments based on insured's false representations, and then were deprived of their initial investment, subscription funds, profits and other benefits; however, policy phrase, "loss of use of tangible property," did not include economic loss; rather, policy language was based on assumption that tangible property, unlike economic loss, is generally subject to physical injury or destruction.

[7] Insurance ⚿2307
217k2307 Most Cited Cases
  (Formerly 217k514.10(2))

Complaint against insureds did not allege a "personal

injury" within meaning of insurance policies, so as to trigger insurer's duty to defend; policy defined "personal injury" as, inter alia, publication or utterance of a libel or **slander**, or discrimination or humiliation; complaint simply alleged that insureds made extravagant and fraudulent promises regarding investment, and made untrue statements regarding soundness and profitability of business.

*154 Laurence T. Gillaspia, Houston, for appellants.

Richard P. Colquitt, Houston, for appellee.

Before EVANS, C.J., and DUGGAN and MIRABAL, JJ.

OPINION

EVANS, Chief Justice.

This is an appeal from a summary judgment in favor of appellee, Highland Insurance Company. The judgment declares that Highlands has no duty to defend appellants, Houston Petroleum Company and its president, Richard O'Donnell, in a suit (the "Topalian suit"), brought against them in federal district court, where they are the defendants.

*155 In their first point of error, appellants contend generally that the trial court erred in entering the summary judgment. Under this point, appellants argue various procedural objections to Highlands' motion for summary judgment, all of which relate to the authenticity of the insurance policies in question. Based on counsels' statements at oral submission, we have determined there is no dispute as to the authenticity of the insurance policies that were properly before the trial court, and the only question raised by the record is the legal interpretation to be accorded such policies. Accordingly, we conclude that the trial court did not err in considering the policy provisions contained in the record. The first point of error is overruled.

In their second point of error, appellants' principal contention is that the trial court erred in granting the summary judgment because the allegations in the plaintiffs' Topalian suit complaint are covered by the Highlands' insurance policies.

[1][2] In Texas, an insurer's contractual duty to defend must be determined solely from the face of the pleadings, without reference to any facts outside the pleadings. _Continental Sav. Ass'n v. U.S. Fidelity and Guar. Co., 762 F.2d 1239, 1243 (5th Cir.), amended in part, rehearing denied, 768 F.2d 89 (1985)_. The duty to defend arises when a third party sues the insured on allegations that, if taken as true, potentially state a cause of action within the terms of the policy. _Id._ Whether the policy covers the cause of action alleged must be determined from the contractual terms of the insurance policy. _Whatley v. City of Dallas, 758 S.W.2d 301, 304 (Tex.App.--Dallas 1988, writ denied)_. If under the facts alleged, there is a prima facie showing that the claim is not covered under the policy, the insurer has no duty to defend. _Holmes v. Employers Casualty Co., 699 S.W.2d 339, 340-41 (Tex.App.--Houston [1st Dist.] 1985, writ ref'd n.r.e.)_.

[3][4] It is well established that insurance policies are to be strictly construed in favor of the insured in order to avoid exclusion of coverage. _Puckett v. U.S. Fire Ins. Co., 678 S.W.2d 936, 938 (Tex.1984)_. This is not true however, when a term in question is susceptible of only one reasonable construction. _Id._ When there is no ambiguity, it is the court's duty to give the words used their plain meaning. _Id._ Language in insurance provisions is only ambiguous if the court is uncertain as to which of two or more meanings was intended. _Entzminger v. Provident Life & Accident Ins. Co., 652 S.W.2d 533, 535 (Tex.App.--Houston [1st Dist.] 1983, no writ)_.

The Topalian suit plaintiffs essentially allege that they incurred obligations and suffered economic loss, including loss of capital contributions in a limited partnership venture conducted by appellants, due to appellants' wrongful conduct.

[5] We first address appellants' assertions that the complaint in the Topalian suit alleges "bodily injury" within the meaning of their insurance coverage.

The Highland Insurance policy covers:
a) bodily injury; b) personal injury; c) property damage; d) **advertising injury**; ... *caused by an occurrence* which takes place anywhere in the world.

(Emphasis added)

The insurance policy defines "bodily injury" as:
bodily injury, sickness or disease sustained by a person, which occurs during the policy period, including mental injury, *mental anguish*, shock, fright, disability or death at any time resulting therefrom.

(Emphasis added)

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

The policy defines "occurrence" with respect to bodily injury as:
> an accident, including continuous or repeated exposure to conditions, which result in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

We find a few paragraphs in the Topalian suit complaint that arguably might fall within the "bodily injury" provision of the insurance policies. In those paragraphs, the plaintiffs allege appellants made fraudulent promises, false representations, and untrue statements of material fact, which resulted in damages in excess of $12 million. *156 The $12 million figure includes the alleged fair value of the plaintiffs' limited partnership units, as well as damages for "emotional distress." Appellants must show that the alleged fraudulent promises, false representations, and untrue statements constituted a "condition," and "continuous or repeated exposure" to the condition resulted in some bodily injury to the insured.

We hold that exposure to "fraudulent promises, false representations, and untrue statements" does not, as a matter of law, fall within the plain meaning of the definition of "occurrence." To hold otherwise would require us to unnaturally extend the definition of the term "conditions," and consequently, the definition of "bodily injury." We conclude that the language of the insurance contracts is unambiguous in this respect, and we give such words their plain meaning. See *Puckett*, 678 S.W.2d at 936.

[6] We next address appellants' contention that the allegations in the Topalian suit trigger the provisions of their insurance policies covering "property damage."

The insurance policy defines property damage as:
> (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof resulting therefrom or *(2) the loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.*

(Emphasis added.)

The policy provision defining an occurrence with respect to property damage is the same as that for bodily injury:
> an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected not intended from the standpoint of the insured;

The complaint in the Topalian suit simply alleges that each plaintiff has been "substantially injured in his business and property by the pattern of unlawful activity" in which appellants participated, aided or abetted. More particularly, the plaintiffs allege they made substantial payments based on appellants' false representations, and therefore, they were deprived of their initial investment, subscription funds, profits, and other benefits. The plaintiffs further allege they were injured in their "business or property" within the meaning of 18 U.S.C. sec. 1964(c), because appellants' conduct and participation in the partnership constituted a pattern of racketeering activity.

We hold that the plain meaning of the insurance contract phrase, "the loss of use of tangible property," does not include economic loss, i.e., the loss of initial investments, subscription funds, and profits. The language used in the policy is based on the assumption that tangible property, unlike an economic loss, is generally subject to physical injury or destruction. Because the Topalian suit complaint alleges only economic loss, we hold that the Topalian suit complaint does not allege a property damage claim.

[7] We finally review appellants' claim that the Topalian suit complaint alleges a "personal injury" within the meaning of the insurance policies.

The term "personal injury" is defined in the policy as:
> injury, other than **advertising injury**, arising out of one or more of the following offenses committed during the policy period in the conduct of the Named Insured's business:
> a) *the publication or utterance of a libel or **slander** or of other defamatory or disparaging material,* or a publication or utterance in violation of an individual's right of privacy;
> b) false arrest detention or imprisonment, or malicious prosecution;
> c) wrongful entry or eviction or other invasion of an individual's right of privacy or private occupancy;
> d) *discrimination or humiliation, but only with respect to injury to the feelings or reputation of a natural person.*

(Emphasis added.)

In the Topalian suit complaint, plaintiffs allege that they were damaged in their *157 "personal and

business reputation and standing in the community." The complaint simply alleges, however, that appellants made extravagant and fraudulent promises regarding the questioned investment, and made untrue statements regarding the soundness and profitability of the business. There are no allegations that the defendant discriminated against or humiliated the plaintiffs. Neither does the complaint allege the publication or utterance of a libel or **slander** or other defamatory or disparaging material.

We hold that the plaintiffs' complaint in the Topalian suit does not allege a personal injury claim within the meaning of the insurance contract. Accordingly, we overrule the second point of error.

In view of our disposition of the second point of error, we need not discuss appellants' remaining point of error complaining of the trial court's refusal to consolidate the proceedings with another action involving the same subject matter but different parties.

The judgment of the trial court is affirmed.

830 S.W.2d 153

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

890 F.Supp. 634  
(Cite as: 890 F.Supp. 634)

Page 1

United States District Court,
S.D. Texas,
Houston Division.

POTOMAC INSURANCE COMPANY OF
ILLINOIS, Plaintiff,
v.
Deborah S. PEPPERS, John M. Mann, and Revenue
Properties, Inc., Defendants.

Civ. A. No. H-94-4227.

June 26, 1995.

Commercial general liability (CGL) insurer sought declaratory judgment that policy did not cover shareholder's claims against insured corporation's president for conversion, tortious interference, fraud, intentional infliction of emotional distress, defamation, and breach of fiduciary duty. Insurer also sought declaratory judgment that policy did not cover claims against insured's attorney for conversion and tortious interference. Insurer moved for summary judgment. The District Court, Stacy, United States Magistrate Judge, held that: (1) president's alleged conversion, fraud, and intentional infliction of emotional distress were not "occurrence" covered by policy; (2) expected or intended exclusion barred coverage for conversion and fraud claims; (3) knowledge of falsity and employment practices exclusions barred coverage for defamation claim; (4) economic loss was not property damage covered by policy; and (5) attorney was not insured.

Motions granted.

West Headnotes

[1] Insurance ⚷2914
217k2914 Most Cited Cases
  (Formerly 217k514.10(1))

[1] Insurance ⚷2915
217k2915 Most Cited Cases
  (Formerly 217k514.10(1))

Under "eight corners rule" for determining duty to defend under Texas law, courts look to allegations in pleadings in light of policy provision without reference to truth or falsity of such allegations and without reference to what parties know or believed facts to be or without reference to legal determination thereof; under the rule, duty to defend only arises if allegations in pleadings are potentially covered by the policy.

[2] Insurance ⚷2914
217k2914 Most Cited Cases
  (Formerly 217k514.10(1))

If there is any doubt as to whether allegations in complaint state claim that is covered by policy, such doubt is to be resolved in favor of insured under Texas law on duty to defend.

[3] Trover and Conversion ⚷3
389k3 Most Cited Cases

Although wrongful intent need not be proved in order to prevail on conversion claim under Texas law, plaintiff must establish that defendant had intent to exercise control over plaintiff's property.

[4] Insurance ⚷2275
217k2275 Most Cited Cases
  (Formerly 217k435.22(2))

Under Texas law, alleged conversion by putative insured was not "occurrence" and, therefore, was not covered by commercial general liability (CGL) liability insurance policy; all allegations surrounding conversion claim were based on putative insured's intentional acts, not accident or happening that was unexpected, unforeseen, or undesigned.

[5] Insurance ⚷2278(3)
217k2278(3) Most Cited Cases
  (Formerly 217k435.22(2))

Under Texas law, commercial general liability (CGL) insurance policy's intentional injury exclusion for bodily injury or property damage expected or intended from standpoint of insured barred coverage for alleged conversion by putative insured; putative insured intended to exercise dominion over owner's property and intended damage by her actions.

[6] Torts ⚷12
379k12 Most Cited Cases

Under Texas law, claim for tortious interference with contract is based on (1) existence of contract subject to interference; (2) willful and intentional act of interference with that contract; (3) proof that intentional act of interference was proximate cause of damage sustained; and (4) proof that actual damage or loss occurred.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

890 F.Supp. 634
(Cite as: 890 F.Supp. 634)

Page 2

**[7] Torts ⇐10(1)**
379k10(1) Most Cited Cases

**[7] Torts ⇐12**
379k12 Most Cited Cases

Under Texas law, claim for tortious interference with prospective contract or business relationship is based on (1) reasonable possibility that parties would have entered into contractual relationship; (2) intentional or malicious act by defendant that prevented relationship from occurring with purpose of doing harm to plaintiff; (3) lack of justification for the interference; and (4) proof of actual harm or damage resulting from the interference.

**[8] Torts ⇐12**
379k12 Most Cited Cases

Under Texas law, party cannot tortiously interfere with his or her own contract.

**[9] Insurance ⇐2275**
217k2275 Most Cited Cases
(Formerly 217k435.22(2))

Under Texas law, putative insured's alleged fraud by entering into agreements that she never intended to perform was not "occurrence" and, therefore, was not covered by comprehensive general liability (CGL) insurance policy; alleged fraud did not involve accident or happening that was unexpected, unforeseen, or undesigned.

**[10] Insurance ⇐2278(3)**
217k2278(3) Most Cited Cases
(Formerly 217k435.22(2))

Under Texas law, commercial general liability (CGL) insurance policy's intentional injury exclusion for bodily injury or property damage expected or intended from standpoint of insured barred coverage for putative insured's alleged fraud by entering into agreements which she never intended to perform.

**[11] Damages ⇐50.10**
115k50.10 Most Cited Cases

Under Texas law, claim for intentional infliction of emotional distress (IIED) requires plaintiff to show that (1) defendant acted recklessly or intentionally; (2) conduct of defendant was extreme or outrageous; (3) actions of defendant caused plaintiff emotional distress; and (4) emotional distress sustained by plaintiff was severe.

**[12] Insurance ⇐2275**
217k2275 Most Cited Cases
(Formerly 217k435.22(2))

Under Texas law, putative insured's alleged intentional infliction of emotional distress was not "occurrence" and, therefore, was not covered by commercial general liability (CGL) insurance policy.

**[13] Insurance ⇐2313(2)**
217k2313(2) Most Cited Cases
(Formerly 217k435.22(2))

Under Texas law, commercial general liability (CGL) insurance policy's "knowledge of falsity" exclusion barred coverage for putative insured's alleged defamatory statements to extent that they were known by putative insured to be false.

**[14] Insurance ⇐2278(11)**
217k2278(11) Most Cited Cases
(Formerly 217k435.22(2))

Under Texas law, shareholder's claim that another shareholder president defamed him and killed many valuable business relations related to insured corporation's employment practices, and, thus, coverage under commercial general liability (CGL) insurance policy was barred by employment practices exclusion for personal injury arising out of employment-related practices; both shareholders were either officers, directors, or employees, and alleged defamation arose out of their respective positions.

**[15] Insurance ⇐2277**
217k2277 Most Cited Cases
(Formerly 217k435.22(1))

Under Texas law, economic damage from putative insured's alleged breach of fiduciary duty as officer and director and equal shareholder with alleged victim was not "property damage" and, therefore, was not covered by commercial general liability (CGL) insurance policy.

**[16] Insurance ⇐2272**
217k2272 Most Cited Cases
(Formerly 217k435.22(1))

Attorney allegedly retained by insurer to perform legal services was at most independent contractor, not "employee," under Texas law and, therefore, was not "insured" under commercial general liability

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

890 F.Supp. 634
(Cite as: 890 F.Supp. 634)

Page 3

(CGL) insurance policy.
*636 G. Byron Sims, Brown Sims Wise & White, Houston, TX, for plaintiff.

James J. Hansen, Leonard Hurt Terry & Blinn, Houston, TX and Grant J. Harvey, Gibbs & Bruns, Houston, TX, for defendants.

**MEMORANDUM AND ORDER GRANTING PLAINTIFF POTOMAC INSURANCE'S MOTION FOR SUMMARY JUDGMENT AGAINST DEBORAH PEPPERS, GRANTING PLAINTIFF POTOMAC INSURANCE'S MOTION FOR SUMMARY JUDGMENT AGAINST JOHN MANN AND DENYING DEFENDANT JOHN MANN'S CROSS-MOTION FOR SUMMARY JUDGMENT**

STACY, United States Magistrate Judge.

Before the Magistrate is Plaintiff Potomac Insurance Company of Illinois' Motion for Summary Judgment Against Defendant Deborah Peppers (Document No. 10), Plaintiff Potomac Insurance Company of Illinois' Motion for Summary Judgment Against Defendant John Mann (Document No. 11), and Defendant John Mann's Cross-Motion for Summary Judgment (Document No. 14). On April 28, 1995, the parties consented to trial before United States Magistrate Judge Frances H. Stacy. Upon such consent, the District Judge referred the case for all proceedings to the Magistrate Judge.

After considering the motions, the responses, the submissions of the parties, the *637 relevant pleadings from the underlying state court action, and the applicable law, the Magistrate finds that Plaintiff Potomac Insurance Company of Illinois' Motion for Summary Judgment Against Defendant Deborah Peppers should be granted, Plaintiff Potomac Insurance Company of Illinois' Motion for Summary Judgment Against Defendant John Mann should be granted and Defendant John Mann's Cross-Motion for Summary Judgment should be denied for the reasons set forth below.

**I. BACKGROUND**

This is a declaratory judgment action that was commenced by Potomac Insurance Company of Illinois ("Potomac") against Deborah Peppers ("Peppers"), John Mann ("Mann"), and Revenue Properties, Inc. ("RPI"), seeking declaration as to its duty to defend Peppers, Mann and RPI in a state court action entitled, *Robert Bezuch v. Deborah S. Poarch and Petro-Konsults AG*, cause number 93-019239, in the 270th District Court of Harris County, Texas ("the underlying case"). According to Potomac, the allegations contained in the underlying case establish, as a matter of law, that no insurance coverage is available for Peppers or Mann and that Potomac is therefore under no obligation to defend Peppers or Mann. Potomac has filed a Motion for Summary Judgment against both Peppers and Mann on that basis. Peppers and Mann oppose Potomac's Motions for Summary Judgment, arguing that the allegations contained in the underlying case, which are vague and ambiguous, will not support a finding of no coverage.

**II. SUMMARY JUDGMENT STANDARD**

Summary judgment is proper when pleadings and evidence on file, along with affidavits, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The substantive law determines which facts are material, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986), and the Court must view these facts and the inferences to be drawn from them in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88, 106 S.Ct. 1348, 1356-57, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986).

The burden of proof is on the moving party to show an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-27, 106 S.Ct. 2548, 2552-55, 91 L.Ed.2d 265 (1986). Once this burden has been met, the nonmoving party can resist the motion for summary judgment by making a positive showing that a genuine dispute of material fact does indeed exist and that it consists of more than bare allegations in briefs and pleadings. *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. The plain language of Rule 56(c) mandates the entry of summary judgment, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and upon which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

**III. INSURER'S DUTY TO DEFEND**

[1] Insurers have a duty to defend their insureds against claims that fall within the terms of the policy. *Gulf States Ins. Co. v. Alamo Carriage Serv.*, 22 F.3d 88, 90 (5th Cir.1994); *Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F.3d 365, 369 (5th Cir.1993); *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 24 (Tex.1965). Whether a claim falls within the terms of the insurance policy such that the insurer's duty to defend is triggered is governed by the "eight corners" rule. *Cullen/Frost Bank of Dallas v. Commonwealth Lloyd's Ins. Co.*, 852 S.W.2d 252, 255 (Tex.App.--Dallas 1993, writ denied). Under this rule, courts look to the allegations in the pleadings "in light of the policy provisions without reference to the truth or falsity of such allegations and without reference to what the parties know or believe the true facts to be, or without reference to a legal determination thereof." *638*Heyden*, 387 S.W.2d at 24; *See also Gulf States*, 22 F.3d at 90; *Gulf Chemical*, 1 F.3d at 369; *Enserch Corp. v. Shand Morahan & Co., Inc.*, 952 F.2d 1485, 1492 (5th Cir.1992); *Cullen/Frost Bank*, 852 S.W.2d at 255; *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex.1982). "The duty to defend is not affected by facts ascertained before suit, developed in the process of litigation, or by the ultimate outcome of the suit." *American Alliance Ins. Co. v. Frito-Lay, Inc.*, 788 S.W.2d 152, 153-54 (Tex.App.--Dallas 1990, writ dism'd); *See also Cullen/Frost Bank*, 852 S.W.2d at 255 ("The duty to defend is not affected by the facts of the case ascertained before, during, or after the suit").

[2] Under the "eight corners" rule, a duty to defend only arises if the allegations in the pleadings are "potentially" covered by the policy. *Gulf States*, 22 F.3d at 90; *Enserch*, 952 F.2d at 1492; *Fidelity & Guaranty*, 633 S.W.2d at 788; *Heyden*, 387 S.W.2d at 24. If there is any doubt as to whether the allegations in the complaint state a claim that is covered by the policy, such doubt is to be resolved in favor of the insured. *Heyden*, 387 S.W.2d at 26. Additionally, if there are insufficient allegations in the pleadings upon which to make a determination as to whether or not there is coverage, courts will generally find a duty to defend. *Id.* Finally, as long as one claim or allegation in the pleadings is "potentially" covered by the insurance policy, the duty to defend arises. *Id.*

## IV. THE UNDERLYING SUIT

In the underlying case, Robert A. Bezuch ("Bezuch") filed suit against Deborah Poarch/Peppers, John M. Mann, and Revenue Properties, Inc., alleging various causes of action associated with the operation and management of RPI. The facts in the underlying case, as contained in the Fifth Amended Petition, are as follows:

> Sometime in 1984 Bezuch and Poarch/Peppers met and became involved in both business and personal relationships. Those relationships evolved to the parties sharing habitation and numerous joint business interests. Because of the intimate nature of their personal relationship, much of their "business" relationship was based on trust and emotions, and many of the usual, necessary, and common formalities entered into between business partners were foregone....
> 
> Their sexual relationship became untenable when Poarch/Peppers took on additional lovers and Bezuch uncovered her deceit. Consequently, Bezuch and Poarch/Peppers entered into an agreement "to delineate the status of their jointly held assets and interests and to define the nature of their business relationship...." The Agreement was, and is simple, clear and unambiguous. It plainly defines the interests of Bezuch and Poarch/Peppers in Revenue Properties, Inc. and all other jointly held assets and liabilities as of April 2, 1990.
> 
> The Agreement was a contract which existed which was subject to interference. Mann intentionally and wilfully interfered with the contract by telling Poarch/Peppers that he could show her a way out of it. Mann's intentional act was a proximate cause of Mr. Bezuch's damages, which included having his partnership interests defaulted, having his business reputation damaged and numerous assets converted.
> 
> The Agreement clearly shows that Bezuch and Poarch/Peppers are 50%-50% owners of Revenue Properties, Inc. Poarch/Peppers also made numerous other oral and written agreements with Bezuch. In one written agreement, Poarch/Peppers represented she would prepare accurate books, records, and tax returns for entities they co-owned. Such representations were false when Poarch/Peppers made them, but Bezuch believed them to be true and so relied on them. Poarch/Peppers agreed to continue in joint business ventures as equal partners, despite the fact that they were no longer lovers. The expressed written representation of Poarch/Peppers was that she would conduct business ventures with Bezuch as equal partners. Such representations were false when Poarch/Peppers made them, but Bezuch believed them to be true and so relied on them.
> 
> Poarch/Peppers entered into oral partnerships and agreements even though at the *639 time she entered into the oral partnerships and agreements

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

she had no intention whatsoever of performing her promises under them. In fact, Poarch/Peppers maintains Bezuch was never her partner, but was her "attorney, trustee, financial advisor and asset manager," when in fact Bezuch never agreed, represented or lead [sic] Poarch/Peppers to believe that he was acting in any of those capacities. Poarch/Peppers' representations that she was to be equal partners with Bezuch were known by her to be false at the time she made them. Her intent at the time was to use deceit, cunning and artifice to steal, pilfer and defraud from Bezuch every last cent she possibly could.

On or about April 2, 1993, Bezuch left Houston to attend his father's 77th birthday celebration held in Hianassee, Georgia. When Bezuch returned, he found Poarch/Peppers had, with the aid and advice of her attorney, Mann, forcibly commandeered their joint office located at 4444 Montrose Blvd., and taken possession of all contents including not only the joint business records, but Bezuch's personal files, records and personal property as well. Poarch/Peppers and Mann changed the locks and hired a security guard to prevent Bezuch from entering the Premises and retrieving his property and records. Shortly thereafter, Poarch/Peppers pilfered through Bezuch's office and destroyed large numbers of documents. These documents evidenced the truths that Bezuch would show this court, and but for their destruction by Poarch/Peppers they would be before the Court today.

Approximately two months after Poarch/Peppers and Mann commandeered the office building, on or about June 3, 1993, they pirated Revenue Properties, Inc., a corporation jointly owned by Bezuch and Poarch/Peppers. Poarch/Peppers fraudulently and without authority represented herself to be the sole owner of Revenue Properties, Inc. Such representation was known by her and Mann to be false at the time. Poarch/Peppers then held an unauthorized and illegal shareholder's meeting, elected herself president and chairman of the board of RPI, and proceeded to publish defamatory lies about Bezuch in the name of RPI. Poarch/Peppers then proceeded to strip Bezuch of his apparent authority to act as President of Revenue Properties, Inc. (RPI) by sending letters to those persons with whom he had done business as president of RPI. In these letters, Poarch/Peppers supported her false and fraudulent claim that she was president of RPI by citing the fact that Bezuch no longer was available at the 4444 Montrose Blvd address. This falsehood bolstered Poarch/Peppers' apparent authority to act as the "de facto" president of RPI.

As de facto president of RPI, and personally and individually, Poarch/Peppers continued to defame Bezuch's character. Poarch/Peppers looted and plundered jointly held assets, and emotionally tortured Bezuch using her de facto presidency in the following ways:

1. by calling meetings of limited partnerships and making capital calls without giving Bezuch timely notice of either, then defaulting Bezuch's interest in those partnerships for failure to make the capital contributions as required (RPI was the general partner of these limited partnerships),

2. by preparing tax returns which indicate Bezuch as the individual owner of limited partnership interests which are actually held in partnership with his sister (RPI was the general partner of these limited partnerships),

3. by appropriating and converting to her own use, assets of RPI to which Bezuch as 50% owner was entitled.

Fifth Amended Petition in the underlying case at 3-7, attached as Exhibit E to Potomac's Motion for Summary Judgment. Relying on these facts, Bezuch alleged causes of action against both Peppers and Mann for 1) conversion of personal property and 2) tortious interference with business relations. Bezuch also alleged causes of action solely against Peppers for 1) fraud, 2) defamation, 3) intentional infliction of emotional distress, and 4) breach of fiduciary duty.

*640 V. THE INSURANCE POLICY

The insurance policy at issue in this case, No. TPP1110169-00, is a Commercial General Liability policy, which was issued by Potomac Insurance Company of Illinois to Revenue Properties, Inc. ("the Policy").

A. The Insureds

The named insureds on the Policy included three organizations, Revenue Properties, Inc., Revenue Asset Management, Inc., and Thor Investments, Inc. Under the terms of the policy, the executive officers and directors of those organizations were also insureds, but only "with respect to their duties as [the organization's] officers and directors;" the stockholders of the organization were insureds, "but only with respect to their liability as stockholders;" and the employees of those organizations were insureds, "but only for acts within the scope of their employment with [the organization]." Policy No. TPP1110169-00 at 6, attached as Exhibit A to Potomac's Motion for Summary Judgment. [FN1]

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

> FN1. The policy provides verbatim:
> II. WHO IS AN INSURED
> 1. If you are designated in the Declarations as:
> c. An organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers and directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.
> 2. Each of the following is also an insured:
> a. Your employees, other than your executive officers, but only for acts within the scope of their employment by you. However, no employee is insured for: (1) "Bodily injury" or "personal injury" to you or to a co-employee while in the course of his or her employment ...
> (3) "Property damage" to property owned or occupied by or rented or loaned to that employee, any of your other employees, or any of your partners or members.
> Policy No. TPP1110169-00 at 6.

**B. The Coverage**

The Policy provides coverage for "bodily injury" and "property damage" that is caused by an "occurrence." It also provides coverage for "personal injury" and **"advertising injury."** An "occurrence," as defined by the Policy, is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." "Bodily injury" is defined by the policy as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Policy No. TPP1110169-00 at 9. "Property damage" is defined as:

> a. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> b. Loss of use of tangible property that is not physically injured. All such loss that be deemed to occur at the time of the "occurrence" that caused it.

Policy No. TPP1110169-00 at 12. "Personal injury" is defined as "injury, other than 'bodily injury' arising out of one or more of the following offenses:"

> a. False arrest, detention or imprisonment;
> b. Malicious prosecution;
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;
> d. Oral or written publication of material that **slanders** or libels a person or organization or disparages a persons's or organization's goods, products or services; or
> e. Oral or written publication of material that violates a person's right of privacy.

Policy No. TPP1110169-00 at 11.

**C. The Relevant Exclusions**

The Policy contains numerous coverage exclusions. The exclusions that are relevant to this proceeding include:

> 1. This insurance does not apply to "bodily injury" or "property damage" expected or intended from the standpoint of the insured. Policy No. TPP1110169-00 at 1.
> *641 2. This insurance does not apply to "personal injury" or **"advertising injury"** arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity. Policy No. TPP1110169-00 at 4.
> 3. This insurance does not apply to "personal injury" to a person arising out of any employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person. Policy No. TPP1110169-00, "Employment-Related Practices Exclusion," B(1)(c).

**VI. PEPPERS IS EITHER NOT COVERED BY THE POLICY OR COVERAGE IS EXCLUDED FOR THE CLAIMS ALLEGED BY BEZUCH IN HIS FIFTH AMENDED PETITION**

In the underlying case, Bezuch alleged six claims against Peppers, including, conversion, tortious interference with business relations, fraud, defamation, intentional infliction of emotional distress, and breach of fiduciary duty. Although it is not clear from those allegations the capacity in which Bezuch sued Peppers, Peppers' capacity and relation to the named insured, RPI, is irrelevant to a determination of coverage and the applicability of the Policy's exclusions. In applying the eight corners rule to all the claims and allegations against Peppers, the Magistrate finds, for the specific reasons set forth below, that Peppers is either not covered by the Policy or coverage is excluded for the claims alleged by Bezuch in his Fifth Amended Petition.

**A. Intentional Tort Claims**

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

With regard to the conversion, tortious interference with business relations, fraud, and intentional infliction of emotional distress claims, Potomac argues that there is no coverage for these claims because the allegations underlying the claims cannot support a conclusion that Peppers' actions met the Policy definition of "occurrence." According to Potomac, none of Peppers' actions could be considered an accident, defined by Texas courts as an "unexpected, unforeseen or undesigned happening or consequence from either a known or unknown cause," *Travelers Ins. Co. v. Volentine*, 578 S.W.2d 501 (Tex.Civ.App.--Texarkana 1979, no writ), thus placing Peppers' alleged actions outside the Policy definition of occurrence. See *Argonaut Southwest Insurance Company v. Maupin*, 500 S.W.2d 633, 635 (Tex.1973) (acts which are voluntary and intentional, even though the result of those acts is unexpected, unforeseen and unintended, do not fall within the definition of an occurrence). Similarly, Potomac argues that the "expected" or "intended" exclusion, which excludes coverage for damages that were expected or intended by Peppers, forecloses coverage on these intentional tort claims. According to Potomac, Bezuch's allegations that Peppers intended to commit the acts that she did and that she intended Bezuch to be harmed by those actions suffices to bring the intentional tort claims within the Policy's "expected" or "intended" exclusion.

As it is clear from the allegations in Bezuch's Fifth Amended Petition that Bezuch is complaining of Peppers' intentional acts, acts by which he alleges Peppers intended to inflict injury upon him, the Magistrate finds that the Policy provides no coverage for the conversion, tortious interference with business relations, fraud, and intentional infliction of emotional distress claims.

### 1. Conversion Claim

[3] Conversion, under Texas law, is "the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights." *Winkle Chevy-Olds-Pontiac, Inc. v. Condon*, 830 S.W.2d 740, 746 (Tex.App.--Corpus Christi 1992, writ dism'd). Although wrongful intent need not be proved in order to prevail on a conversion claim, a plaintiff must establish that the defendant had an intent to exercise control over the plaintiff's property. *Id.*

[4] Bezuch, in his Fifth Amended Petition in the underlying case, alleged with respect to his conversion claim:

*642 As set forth above [relying on the facts alleged], Poarch/Peppers unlawfully and wrongfully took and retained personal property belonging to Bezuch. Mr. Bezuch purchased this property and can show ownership of it. Poarch/Peppers and Mann wrongfully assumed and exercise control over the property to the exclusion of Mr. Bezuch in the acts amounting to the break-in, the break-in was done in a manner inconsistent with Mr. Bezuch's rights in the property. This property includes, but is not limited to the following:

(a) A 50% interest in Revenue Properties, Inc.;
(b) Daytimers for the years 1988, 1989, 1990, 1991, 1992, and 1993;
(c) "A French City in the Winter Time" oil painting which is an impressionist 24 x 30 with a white gilt-edge frame;
(d) Personal software, which included matters that Bezuch performed for the partnerships;
(e) Four drawer lateral legal file containing various records;
(f) Records of Sarisky Associates, Inc., a family corporation;
(g) White leather sofa and glass table;
(h) Records that relate to partnerships for Bezuch's personal tax returns, none of which involve Poarch/Peppers in any manner;
(i) Partnership records involving RPI;
(j) Real Estate interest held in the name of Integra Advisors, RPI and Thor Investments including but not limited to:
i. Lots 2 & 3 of Block 2 of Buffalo Addition, a subdivision in Harris County Texas,
ii. Interests in the following limited partnerships:
a) Thorcorp Ltd.,
b) 1400 Webster Ltd.,
c) 1200 Richmond Ltd.,
d) Metropolitan Neartown 2, Ltd.,
e) 2400 Bissonett Ltd.,
f) 2400 West Alabama Ltd.

Fifth Amended Petition in underlying case, at 7-9.

Applying the "eight corners" rule to these allegations, the Magistrate finds no allegations associated with the conversion claim against Peppers which are "potentially" covered by the policy. There are no allegations which would place Peppers' actions within the coverage of the policy as an "occurrence." All allegations surrounding the conversion claim are based on Peppers' intentional acts, not on any accident or happening that was unexpected, unforeseen or undesigned. As Bezuch has not alleged facts supporting his conversion claim that fall within the Policy's definition of "occurrence," no

duty to defend arises from that claim.

[5] Similarly, no duty to defend arises from the conversion claim when that claim is viewed in light of the "expected" or "intended" Policy exclusion, which provides, "this insurance does not apply to "bodily injury" or "property damage" expected or intended from the standpoint of the insured." Bezuch alleged in his Fifth Amended Petition that Peppers not only intended to exercise dominion over his property, but that she intended Bezuch to be damaged by her actions. Given those allegations, the "expected" or "intended" exclusion applies to the conversion claim. Thus, under that exclusion, no duty to defend arises from the conversion claim.

### 2. Tortious Interference Claim

[6][7] In Texas, a claim for tortious interference with a contract is based on 1) the existence of a contract subject to interference; 2) a willful and intentional act of interference with that contract; 3) proof that the intentional act of interference was a proximate cause of the damage sustained; and 4) proof that actual damage or loss occurred. *Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925 (Tex.1993); *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931 (Tex.1991). A claim for tortious interference with a prospective contract or business relationship, in contrast, is based on 1) a reasonable probability that parties would have entered into a contractual relationship; 2) an intentional or malicious act by the defendant that prevented the relationship from occurring with the purpose of doing harm to the plaintiff; 3) lack of justification for the interference; and 4) proof of *643 actual harm or damage resulting from the interference. *Exxon Corp. v. Allsup*, 808 S.W.2d 648 (Tex.App.--Corpus Christi 1991, writ denied). The intentional act of interference element of a tortious interference claim may be met by showing "that the interfering party had actual knowledge of the existence of a contract and of the plaintiff's interest in it or that the interfering party had knowledge of such facts and circumstances that would lead a reasonable person to believe in the existence." *Exxon Corp. v. Allsup*, 808 S.W.2d 648 (Tex.App.--Corpus Christi 1991, writ denied).

In his Fifth Amended Petition, Bezuch alleged that Peppers intentionally interfered with the contract under which she and Bezuch divided their jointly held assets:

> A contract existed which outlined the details of the division [of] assets jointly held by Plaintiff [Bezuch] and Poarch/Peppers. Mann acted intentionally to cause Poarch/Peppers to not carry [out] her end of the agreement. Without Mann's act, Poarch/Peppers would have performed her side of the agreement. Poarch/Peppers' breach of their agreement caused Mr. Bezuch significant damages outlined below. Poarch/Peppers and Mann defamed Bezuch to numerous persons with whom Bezuch had ongoing business relationships, and through lies and fraudulent actions killed many of Bezuch's valuable business relations.

Fifth Amended Petition in underlying case, at 9-10.

[8] This tortious interference claim against Peppers can be limited to Bezuch's allegations that Peppers defamed him, resulting in the loss of valuable business relationships. It cannot be construed as a claim that Peppers tortiously interfered with the asset division agreement which she entered into with Bezuch because a party to a contract cannot, as a matter of law, tortiously interfere with his own contract. *Schoellkopf v. Pledger*, 778 S.W.2d 897, 902 (Tex.App.--Dallas 1989, writ denied). Given this black letter law, Bezuch's tortious interference claim associated with the asset division contract could only reasonably be brought against a person who was not a party to the agreement, such as Mann. As Bezuch's only valid claim against Peppers for tortious interference is premised on defamatory statements, the coverage for that claim, or lack thereof, will be addressed below in connection with the defamation claim.

### 3. Fraud Claim

In order to recover on a cause of action for fraud, a plaintiff must establish "(1) that a material representation was made; (2) that it was false; (3) that, when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; and (6) that he thereby suffered injury." *Trenholm v. Ratcliff*, 646 S.W.2d 927 (Tex.1983).

[9][10] Bezuch, in his Fifth Amended Petition, alleged that Peppers committed fraud when she "entered into agreements regarding the conduct of their joint business arrangement, and at the time she entered into the agreements she intended not to perform her obligations." Fifth Amended Petition in underlying case at 10. The allegations themselves, coupled with the elements required to prove a claim for fraud, show that coverage is not available for this claim. First, Bezuch alleges that Peppers intentionally entered into agreements which she

never intended to perform. Such conduct cannot be considered an occurrence under the Policy as there are no allegations of any accident or happening that was unexpected, unforeseen or undesigned. Second, the fraud claim is excluded from coverage by the "expected" or "intended" exclusion. Third and finally, Texas courts have held, as a matter of law, that fraudulent promises, false representations, and untrue statements do not fall under the definition of "occurrence" as that term is defined in insurance policies. *Houston Petroleum Co. v. Highlands Ins. Co.*, 830 S.W.2d 153, 156 (Tex.App.--Houston [1st Dist.] 1990, writ denied) ("We hold that exposure to 'fraudulent promises, false representations, and untrue statements' does not, as a matter of law, fall within the plain meaning *644 of the definition of 'occurrence' "). Thus, no duty to defend arises from this fraud claim.

### 4. Intentional Infliction of Emotional Distress Claim

[11] In order to be entitled to relief on an intentional infliction of emotional distress ("IIED") claim, a plaintiff must show: (1) that the defendant acted recklessly or intentionally; (2) that the conduct of the defendant was extreme or outrageous; (3) that the actions of the defendant caused the plaintiff emotional distress; and (4) that the emotional distress sustained by the plaintiff was severe. *Malandris v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 703 F.2d 1152, 1158 (10th Cir.1981), cert. denied, 464 U.S. 824, 104 S.Ct. 92, 78 L.Ed.2d 99 (1983); See also *Walker v. South Central Bell Telephone Company*, 904 F.2d 275 (5th Cir.1990).

[12] Bezuch alleged in his Fifth Amended Petition that Peppers "used her guile and shrewish demeanor to inflict the greatest possible amount of emotional distress she could upon Bezuch." Fifth Amended Petition in underlying case at 10. Such allegations are subject to only one interpretation, that Peppers intended to inflict emotional distress upon Bezuch. Such allegations are not subject to an interpretation that Peppers' actions were accidental, unexpected, unforeseen or undesigned. As the allegations surrounding Bezuch's intentional infliction of emotional distress claim against Peppers do not fall within the Policy's definition of "occurrence," no duty to defend arises from this claim.

### B. Defamation Claim

[13][14] Bezuch alleged in his Fifth Amended Petition that Peppers "defamed Bezuch to numerous persons with whom Bezuch had ongoing business relationships, and through lies and fraudulent actions killed many of Bezuch's valuable business relations." Fifth Amended Petition in underlying case at 9-10. He also alleged that Peppers "communicated with numerous persons with whom Bezuch had ongoing business relationships, and communicated orally and in writing that Bezuch had done reprehensible acts which he in fact did not do." Fifth Amended Petition in underlying case at 10. In his recitation of the facts, Bezuch made allegations related to his defamation claim:

> The expressed written representation of Poarch/Peppers was that she would conduct business ventures with Bezuch as equal partners. Such representations were false when Poarch/Peppers made them, but Bezuch believed them to be true and so relied on them.... Poarch/Peppers' representations that she was to be equal partners with Bezuch were known by her to be false at the time she made them ... Poarch/Peppers fraudulently and without authority represented herself to be the sole owner of Revenue Properties, Inc. Such representation was known by her and Mann to be false at the time.

Fifth Amended Petition in underlying case at 5-6.

As Bezuch alleged that the defamatory statements Peppers made were made with Peppers' knowledge that they were false, the knowledge of falsity Policy exclusion becomes applicable. That exclusion provides:

> This insurance does not apply to "personal injury" or **"advertising injury"** arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

Policy No. TPP1110169-00 at 4. Additionally, the employee practices exclusion becomes applicable by virtue of the defamation claim asserted against Peppers by Bezuch, both of whom were either officers/directors or employees of RPI:

> This insurance does not apply to "personal injury" to a person arising out of any employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person.

Policy No. TPP1110169-00, Employment-Related Practices Exclusion, B(1)(c).

To the extent that Bezuch alleged in his Fifth Amended Petition that all defamatory statements made by Peppers were known by Peppers to be false,

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

the Policy's knowledge of falsity exclusion applies. However, to the extent that Bezuch has not specifically alleged *645 that Peppers made defamatory statements with knowledge that such statements were false, the employment practices exclusion applies. Bezuch's allegations supporting his defamation claim against Peppers are quite clear to the extent that such defamation occurred within the context of Peppers' and Bezuch's involvement with RPI. Regardless of Peppers' and Bezuch's exact positions with RPI, the allegations in the Fifth Amended Petition are based on alleged defamation that arose out of Peppers' and Bezuch's respective positions with RPI. Thus, such allegations of defamation are related to the employment practices of RPI. As Bezuch's defamation claim is subject to the Policy's employment practices exclusion, no duty to defend arises from this claim.

### C. Breach of Fiduciary Duty Claim

[15] In his Fifth Amended Petition, Bezuch alleged that Peppers breached her fiduciary duty:

> Poarch/Peppers, as an officer and director of RPI, which she owned as equal shareholders with Bezuch, and as partner of Bezuch, owed fiduciary duties to Bezuch which she breached.
> (a) *Duty of Loyalty*. Poarch/Peppers breached her duty of loyalty to Bezuch in that Poarch/Peppers failed to act in the best interest of the corporation and its shareholders, failed to serve RPI's interest with undivided loyalty, did not dedicate her business judgment for the sole benefit of the corporation. She acted in a manner adverse to that of RPI, and directly and indirectly derived personal profit, benefit, and advantage by reason of her position to the detriment of other stockholders.
> (b) *Duty of Good Faith and Fair Dealing*. Poarch/Peppers at all times dealt in bad faith with Bezuch and has refused to deal fairly in that she unilaterally, and fraudulently stole his property.

Fifth Amended Petition in underlying case at 10-11.

Given these allegations and the definitions provided in the policy, Bezuch can only be complaining that Peppers' breach of fiduciary duty resulted in damage to his property. [FN2] However, the Policy's definition of property damage does not provide coverage for the type of damage claimed by Bezuch; the Policy only provides coverage for "physical damage to tangible property" or "loss of use of tangible property." Bezuch has not alleged that Peppers' conduct has resulted in "physical damage to tangible property" or "loss of use of tangible property." His allegations merely imply that he has suffered economic damage as a result of Peppers' actions. Such economic damage, however, does not fall within the Policy's meaning of property damage. *Houston Petroleum Co. v. Highlands Ins. Co.*, 830 S.W.2d 153, 156 (Tex.App.--Houston [1st Dist.] 1990) ("We hold that the plain meaning of the insurance contract phrase 'the loss of use of tangible property,' does not include economic loss, i.e., the loss of initial investments, subscription funds, and profits. The language used in the policy is based on the assumption that tangible property, unlike an economic loss, is subject to physical injury or destruction"). As there is no claim for property damage resulting from Peppers' alleged breach of fiduciary duty that is covered by the Policy, no duty to defend arises from this claim.

> FN2. Given the Policy's definitions of "bodily injury" and "personal injury," set forth *supra*, it cannot reasonably be argued that Bezuch's breach of fiduciary duty claim is based on anything other than property damage.

### VII. AS NO DUTY TO DEFEND ARISES FROM THE CLAIMS AND ALLEGATIONS AGAINST PEPPERS IN BEZUCH'S FIFTH AMENDED PETITION, SUMMARY JUDGMENT IS PROPER

As discussed above, all claims and allegations made by Bezuch against Peppers in his Fifth Amended Petition are either not covered or are excluded from coverage. Given that determination, no genuine issue of material facts exists with respect to Potomac's duty to defend Peppers in the underlying case. Thus, Potomac's Motion for Summary Judgment Against Defendant Deborah Peppers (Document No. 10) is GRANTED.

### *646 VIII. MANN IS EITHER NOT COVERED BY THE POLICY OR COVERAGE IS EXCLUDED FOR THE CLAIMS ALLEGED BY BEZUCH IN HIS FIFTH AMENDED PETITION

In the underlying case, Bezuch alleged two claims against Mann, conversion and tortious interference with business relations. Potomac contends that it has no duty to defend Mann in the underlying suit because Mann, who is not alleged to be an officer, director, shareholder or employee of RPI, is not an insured under the policy. Alternatively, Potomac contends that even if a genuine issue of material fact exists with respect to whether Mann could be

890 F.Supp. 634
(Cite as: 890 F.Supp. 634)

considered an employee of RPI, no coverage is available for the conversion and tortious interference claims alleged against him. Potomac has sought summary judgment on those two alternate bases.

In response to Potomac's Motion for Summary Judgment, Mann filed a Cross- Motion for Summary Judgment, arguing that despite the allegations in Bezuch's Fifth Amended Petition, there is evidence that he was an employee of RPI and therefore an insured under the Policy. Additionally, Mann argues that because Bezuch's allegations against him are vague and ambiguous, the Court should find that a duty to defend exists. Finally, Mann argues that Bezuch's claims against him, regardless of the label Bezuch has placed on them, are really claims for defamation and wrongful eviction, claims which are covered under the Policy.

### A. Mann's Insured Status

[16] In his Fifth Amended Petition, Bezuch alleges that Mann was Peppers' attorney. Fifth Amended Petition in underlying case, at 5. There are no allegations that Mann was employed by, or affiliated with, RPI such that he could be considered an insured under the terms of the Policy. Moreover, even assuming that Mann was retained by RPI to perform legal services, such retention would not render Mann an RPI employee. Under Texas law, Mann, at most, would be considered an independent contractor. *Ross v. 3D Tower Ltd.*, 824 S.W.2d 270, 273 (Tex.App.-- Houston [14th Dist.] 1992, writ denied); *Legal Security Life Ins. Co. v. Thomas*, 481 S.W.2d 178, 180 (Tex.Civ.App.-- Beaumont 1972, writ ref'd n.r.e.).

In applying the "eight corners" rule to the allegations in the Fifth Amended Petition, the Magistrate finds that Mann, who is not alleged to be an officer, director, shareholder or employee of RPI, is not a covered insured under the Policy. Mann's reliance on Bezuch's answer to an interrogatory to raise a question as to whether he was an employee of RPI is misplaced. According to the Texas Supreme Court, an insurer's duty to defend is determined solely by reference to the allegations in the pleadings and the policy provisions. *Heyden*, 387 S.W.2d at 24; *American Alliance Ins. Co. v. Frito-Lay, Inc.*, 788 S.W.2d 152, 153-54 (Tex.App.--Dallas 1990, writ dism'd w.o.j.); *Cullen/Frost Bank*, 852 S.W.2d at 255. Thus, the evidence Mann refers to is irrelevant and cannot serve to raise a genuine issue of material fact. As the allegations in the Fifth Amended Petition negate Mann's status as an insured under the Policy, Potomac has no duty to defend Mann in the underlying case.

### B. Conversion and Tortious Interference Claims

Assuming, however, that the allegations in Bezuch's Fifth Amended Petition are broad enough to suggest that Mann was employed by RPI such that he could be considered an "employee" under the terms of the Policy, Potomac is still under no duty to defend Mann because Bezuch's claims and allegations against Mann are either not covered or are excluded by the terms of the Policy. As with the conversion and tortious interference claims against Peppers, coverage does not exist for those claims against Mann because Mann's alleged actions do not meet the definition of occurrence. Bezuch alleges that Mann acted intentionally in converting his property and interfering with his business relations. Such conduct cannot be considered an occurrence under the Policy as there are no allegations of any accident or happening that was unexpected, unforeseen or undesigned. Also, coverage is not available because the allegations of Mann's intentional *647 conduct trigger the "expected" or "intended" exclusion in the Policy.

### C. Defamation

Although Bezuch has not specifically stated a claim against Mann for defamation, he has alleged that Mann interfered with his business relations by defaming him: "Poarch/Peppers defamed Bezuch to numerous persons with whom Bezuch had ongoing business relationships, and through lies and fraudulent actions killed many of Bezuch's valuable business relations." Fifth Amended Petition in underlying case at 9-10. Assuming that the allegations in Bezuch's Fifth Amended Petition are broad enough to suggest that Mann was employed by RPI, and assuming that Bezuch has stated a claim against Mann for defamation, Potomac still has no obligation to defend Mann. The employee- related practices exclusion, discussed *supra*, bars coverage for defamation claims arising in the employment context.

### D. Wrongful Eviction

In his final argument in opposition to Potomac's Motion for Summary Judgment, Mann contends that Bezuch's claim against him is really a claim for wrongful eviction, a claim which is expressly covered by the Policy. Mann points to the definition of "personal injury" in the Policy, which makes reference to claims of wrongful eviction. Given the wrongful eviction claim which is covered by the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Policy, Mann maintains that Potomac has a duty to defend him in the underlying case.

The Magistrate's review of Bezuch's Fifth Amended Petition reveals no claim by Bezuch for wrongful eviction. Although Bezuch complains that Mann forcibly commandeered his office, took possession of the contents, and changed the locks and hired a security guard to prevent Bezuch from retrieving his property, Bezuch makes no allegations that his *removal* from the office was wrongful or that it resulted in any damage or injury to him. As a review of the entire Fifth Amended Petition makes clear, Bezuch is complaining that Peppers and Mann removed his personal property from his office and refused to return it to him. Such a claim is for property damage arising out of Defendants' alleged conversion of his personal property; it is not a claim for personal injury arising out of Defendants' eviction of Bezuch. See *Continental Casualty Co. v. Hall*, 761 S.W.2d 54, 56 (Tex.App.--Houston [14th Dist.] 1988), *writ denied, and cert. denied,* 495 U.S. 932, 110 S.Ct. 2174, 109 L.Ed.2d 503 (1990) ("In determining the applicability of the exclusion, our focus must be on the origin of the damages, not on the legal theory asserted for recovery"). As Bezuch makes no claim for damages resulting from the loss of his office, Bezuch has not stated a claim for wrongful eviction. Thus, there is no claim asserted by Bezuch against Mann which falls within the coverage of the Policy.

### IX. AS NO DUTY TO DEFEND ARISES FROM THE CLAIMS AND ALLEGATIONS AGAINST MANN IN BEZUCH'S FIFTH AMENDED PETITION, SUMMARY JUDGMENT IN POTOMAC'S FAVOR IS PROPER

As discussed above, the application of the "eight corners" rule compels a conclusion that Mann was not an insured under the Policy. Alternatively, that analysis compels a conclusion that even if Mann was a covered insured, all claims and allegations made by Bezuch against Mann in his Fifth Amended Petition are either not covered or are excluded from coverage. As no genuine issue of material fact exists under the "eight corners" rule analysis with respect to Potomac's duty to defend Mann in the underlying case, Potomac's Motion for Summary Judgment Against Defendant John Mann (Document No. 11) is GRANTED.

Mann, in his Response to Potomac's Motion for Summary Judgment and Cross- Motion for Summary Judgment, requests a declaration "in the event [the] Court holds as a matter of law that Potomac does not owe Mann a duty to defend against the claims of Bezuch's Fifth Amended Petition ... that Potomac owed him a defense until that Fifth Amended Petition was filed." Mann has offered the Fourth Amended Petition from the underlying case as support for his argument that Bezuch's allegations against him prior to the filing of the Fifth Amended Petition were *648 so vague and ambiguous that Potomac was required to defend him.

Because all the pleadings from the underlying case are not before the Court for its review of the allegations against Mann prior to the Fifth Amended Petition, the Court is in no position to enter the declaration Mann seeks. Thus, Mann's Cross-Motion for Summary Judgment (Document No. 14), to the extent it seeks a declaration that Potomac had a duty to defend Mann against the claims asserted in the Fifth Amended Petition, is DENIED. Mann's Cross-Motion for Summary Judgment (Document No. 14), to the extent it seeks a declaration that Potomac had a duty to defend Mann prior to the filing of the Fifth Amended Petition, is also DENIED.

### X. CONCLUSION

Based on the foregoing, it is

ORDERED that Plaintiff Potomac Insurance Company of Illinois' Motion for Summary Judgment Against Defendant Deborah Peppers (Document No. 10) is GRANTED; Plaintiff Potomac Insurance Company of Illinois' Motion for Summary Judgment Against Defendant John Mann (Document No. 11) is GRANTED; and Defendant John Mann's Cross-Motion for Summary Judgment (Document No. 14) is DENIED. It is further

ORDERED that within twenty (20) days of the parties' receipt of this Memorandum and Order the parties shall file a statement with the Court advising it of the claims which remain outstanding in this case, if any. If no claims remain outstanding following the entry of this Memorandum and Order, the parties shall prepare a Proposed Final Judgment within the twenty days provided for above.

890 F.Supp. 634

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works