114 S.W.3d 601                                                                                                Page 1
114 S.W.3d 601, 20 IER Cases 530
(Cite as: 114 S.W.3d 601)

▷

Court of Appeals of Texas,
Fort Worth.

WAFFLE HOUSE, INC., Appellant,
v.
The TRAVELERS INDEMNITY COMPANY OF ILLINOIS and Federal Insurance Company, Appellees.

No. 2-01-298-CV.

July 17, 2003.
Rehearing Overruled Aug. 26, 2003.

Former employer brought action against comprehensive general liability (CGL) and excess liability insurers to enforce the policies after it was found liable to former employee and her personnel recruiting firm for defamation and tortious interference with contract. The 17th District Court, Tarrant County, Fred W. Davis, J., entered summary judgment in favor of the insurers. Former employer appealed. The Court of Appeals, Lee Ann Dauphinot, J., held that: (1) employment-related practices exclusion in CGL policy did not apply; (2) employment-related discrimination exclusion in the excess policy did not apply; (3) duty to defend continued through the appellate process until exhaustion of the applicable limits; (4) the CGL insurer owed indemnity for mental anguish, lost profits, and punitive damages; (5) the excess policy did not cover liability for humiliation and mental anguish as result of defamatory comment; and (6) the excess policy covered liability for lost profits.

Affirmed in part, reversed in part, and remanded.

West Headnotes

[1] Insurance ⚷1810
217k1810 Most Cited Cases
An insurance policy should be reviewed in its totality, and every sentence, clause, and word should be given meaning.

[2] Insurance ⚷2098
217k2098 Most Cited Cases
When an insurance carrier intends to exclude coverage, the exclusionary provision must be clearly expressed and must not be ambiguously worded.

[3] Insurance ⚷1808
217k1808 Most Cited Cases
Neither conflicting expectations nor disputation is sufficient to create an ambiguity in an insurance policy.

[4] Insurance ⚷1822
217k1822 Most Cited Cases
When construing unambiguous insurance contracts, courts give to the terms their plain, ordinary, and generally accepted meaning.

[5] Insurance ⚷2914
217k2914 Most Cited Cases
A liability insurer's duty to defend its insured is determined according to the "eight corners" rule, which requires court to compare the allegations in the petition or complaint filed against the insured and the insurance policies.

[6] Insurance ⚷2914
217k2914 Most Cited Cases
The complaint must allege facts within the scope of coverage; otherwise, the liability insurer will not be legally bound to provide a defense for the insured.

[7] Insurance ⚷2914
217k2914 Most Cited Cases
When a court reviews allegations against an insured to determine whether a liability insurer has a duty to defend, it should give a liberal interpretation in favor of the insured.

[8] Insurance ⚷2278(11)
217k2278(11) Most Cited Cases
Employment-related practices exclusion was unambiguous in making comprehensive general liability (CGL) policy inapplicable to personal injury arising out of any termination of employment, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, or other employment-related practices, policies, acts, or omissions.

[9] Insurance ⚷2278(11)
217k2278(11) Most Cited Cases
Former employer's post-employment defamation of former employee to prevent exodus of employees to competitor through former employee's recruiting firm was not subject to employment-related practices exclusion making former employer's comprehensive general liability (CGL) policy inapplicable to personal injury arising out of termination of employment or defamation; the context of the statements clearly showed that they arose out of former employer's attempt to prevent its employees

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

from leaving the company and not out of former employee's termination more than two years earlier, and, thus, no causal relationship existed between the defamation and employment.

**[10] Insurance** ⇌ 2098
217k2098 Most Cited Cases

**[10] Insurance** ⇌ 2278(1)
217k2278(1) Most Cited Cases

Although the policy phrase "arise out of" should be interpreted as requiring a "but-for" causal relationship and should be broadly construed, a causal connection must exist between the injury and the events excluded by the policy.

**[11] Insurance** ⇌ 2930
217k2930 Most Cited Cases

Comprehensive general liability (CGL) insurer's duty to defend continued through the appellate process until the applicable limits of the policy were exhausted; the policy stated that the duty ended when the applicable policy limits were exhausted by qualifying payments, but it failed to mention any other situation.

**[12] Insurance** ⇌ 2268
217k2268 Most Cited Cases

**[12] Insurance** ⇌ 2911
217k2911 Most Cited Cases

A liability insurer's duty to indemnify is separate and distinct from the duty to defend.

**[13] Insurance** ⇌ 2268
217k2268 Most Cited Cases

Facts established at trial that fall within the purview of the policy invoke a liability insurer's duty to indemnify its insured.

**[14] Insurance** ⇌ 2271
217k2271 Most Cited Cases

The liability insurer's duty to indemnify only rises after the insured has been adjudicated to be legally responsible for damages in a lawsuit.

**[15] Insurance** ⇌ 2311
217k2311 Most Cited Cases

Former employer's comprehensive general liability (CGL) policy required insurer to indemnify former employer for liability to former employee for mental anguish as a result of defamation, to former employee's personnel recruiting firm for lost profits from tortious interference with firm's contract with former employer's competitor, and to former employee and firm for punitive damages; the damages arose out of or resulted from the defamatory statements.

**[16] Insurance** ⇌ 2307
217k2307 Most Cited Cases

Excess liability policy did not exclude coverage for intentional personal injury; although the definition of "occurrence" with respect to bodily injury or property damage liability required an event neither expected nor intended from the standpoint of the insured, that definition with respect to personal injury did not exclude coverage for liability for expected or intended conduct.

**[17] Insurance** ⇌ 2278(3)
217k2278(3) Most Cited Cases

**[17] Insurance** ⇌ 2307
217k2307 Most Cited Cases

Former employer's liability to former employee for humiliation and mental anguish as result of defamatory comments was not covered by former employer's excess policy; it defined "personal injury" to include humiliation or discrimination except when arising out of the willful violation of a statute or when committed by or with knowledge or consent of the insured.

**[18] Insurance** ⇌ 2278(11)
217k2278(11) Most Cited Cases

Former employer's post-employment defamation of former employee to prevent exodus of employees to competitor through former employee's recruiting firm was not subject to employment-related discrimination exclusion making former employer's excess liability policy inapplicable to personal injury for, based on, attributable to, arising out of, resulting from or in any manner related to termination of any employee; the defamatory statements by former employer's executives were based on, attributable to, arose out of, and/or resulted from the need to maintain a stable work force, and the termination of employment more than two years earlier was not causally related to the statements.

**[19] Insurance** ⇌ 2278(11)
217k2278(11) Most Cited Cases

The word "discrimination" in title of employment-related discrimination exclusion of excess liability policy did not limit the exclusion to discrimination related to employment; the policy stated that titles of the paragraphs were inserted solely for convenience or reference and were not to be deemed in any way to limit or affect the provisions.

**[20] Insurance** ⇌ 2311
217k2311 Most Cited Cases

Former employer's excess liability policy covered liability to former employee and her personnel recruiting firm for lost profits as a result of defamation to prevent exodus of employees to competitor through the firm; the policy defined "personal injury" to include defamation and covered occurrences resulting from personal injuries.

**[21] Insurance** ⇌ 2396

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

217k2396 Most Cited Cases

Excess liability insurer had no obligation to indemnify insured for liability for defamation prior to exhaustion of primary policy limits; the excess coverage did not apply until the underlying insurer paid the underlying limit, and the umbrella coverage did not apply if the excess coverage applied.

*603 Cantey & Hanger, L.L.P., Ralph H. Duggins, Kevin C. Norton, Fort Worth, for Appellant.

Strasburger & Price, L.L.P., David N. Kitner, James K. Peden, III, Sifford, Anderson, Vice & MacFarlane, Lewis R. Sifford, Anthony Veader, Dallas, for Appellees.

Panel B: DAUPHINOT, HOLMAN, and WALKER, JJ.

**\*604 OPINION**

LEE ANN DAUPHINOT, Justice.

**I. INTRODUCTION**

This is a suit to enforce two insurance companies' obligations under a general liability policy and an umbrella insurance policy respectively. The trial court granted summary judgment for the insurers, stating that exclusions in the policies applied to bar the claims against the insured from coverage. We affirm the trial court's judgment in part. We reverse and render partial summary judgment in part and remand for further proceedings.

**II. FACTUAL SUMMARY**

Therese Scribner ("Scribner"), a former Waffle House, Inc. ("Waffle House") employee, and her personnel recruiting company Resource Recruiters, Inc. ("Resource") sued Waffle House in federal court for multiple claims including defamation, disparagement, and tortious interference with contractual relations. In an amended complaint, Scribner alleged that Waffle House executives Dave Theobold ("Theobold") and Skip Nau ("Nau") defamed her by telling Grandy's, a Waffle House competitor and a client of Resource, that she was discharged for poor performance, that she was vindictive, that she was trying to entice people to leave Waffle House, and that she had a personal vendetta against Waffle House. Scribner also alleged in an amended complaint that Waffle House caused Grandy's to sever business relations with Resource by disparaging Scribner.

At the time of the alleged defamatory conduct, Waffle House was covered under a comprehensive general liability insurance policy issued by The Travelers Indemnity Company of Illinois ("Travelers") and a commercial excess umbrella policy issued by Federal Insurance Company ("Federal"). Both policies contain provisions entitled Coverage A and Coverage B. Waffle House does not claim that it is entitled to coverage under the Coverage A provision of the Travelers policy. The Coverage B provision covers losses resulting from personal injuries, which includes defamation.

The Coverage A provision of the Federal policy provides coverage once underlying insurance policies, such as the Travelers policy, are exhausted, and the Coverage B provision provides coverage once the losses exceed a predetermined amount of money, the retained limit, that Waffle House agrees to pay before Federal becomes obligated to pay. Both the Travelers and Federal policies contain exclusions that relate to employment-related activities, and the Federal policy contains an exclusion that bars losses resulting from the intentional conduct of the insured.

In a letter dated July 7, 1994, Travelers conveyed its intention to provide a defense for Waffle House in the defamation cause of action. Federal likewise stated in a separate letter that Waffle House's commercial excess umbrella policy covered any damages in excess of the underlying policy limits. Both letters also included statements that reserved each insurer's rights under the insurance policies.

After a bench trial, federal district judge Jerry Buchmeyer entered a substantial damage award in favor of Scribner and Resource that included monetary damages for defamation, and in an opinion exceeding two hundred pages, the judge condemned Waffle House for what he determined was the "severe and pervasive sexual harassment" of Scribner. [FN1] Stating *605 that neither the factual findings of the judge nor the allegations in Scribner's complaint supported any claim covered by the policy, both Travelers and Federal subsequently denied coverage. Waffle House then brought this suit to enforce the insurance contracts.

FN1. *Scribner v. Waffle House, Inc.*, 14 F.Supp.2d 873, 877 (N.D.Tex.1998), *vacated*, 62 F.Supp.2d 1186 (N.D.Tex.1999).

Both Travelers and Federal moved for summary

judgment, arguing that their respective policies did not provide coverage under the facts of this case. Specifically, Travelers argued that there were no injuries or damages caused by an "occurrence," the policy excluded coverage for injuries or damages expected or intended from the standpoint of the insured, and the policy excluded injuries arising from certain employee-related practices and activities by the insured. Waffle House argued in its response and also in its motion for partial summary judgment that (1) Travelers cannot rely upon the argument that intentional conduct is not covered because there is no requirement that an "occurrence" take place under Coverage B; (2) the employment-related practices exclusion is unambiguous and does not bar coverage because neither Scribner nor Resource was an employee at the time of the alleged defamation, and the alleged defamation was not employment-related; and (3) alternatively, the exclusion is ambiguous and, therefore, must be interpreted in favor of coverage.

Federal argued in its motion for summary judgment that its policy does not cover events or damages arising out of Waffle House's employment relationships or intentional acts. Federal also argued that the Coverage A provision in its policy is not triggered at all unless and until the underlying Travelers policy has been exhausted.

Waffle House responded to Federal's motion by arguing that (1) with respect to Coverage A, Federal has failed to meet its burden of establishing that there is no coverage available under the underlying policy for defense and indemnity; (2) with respect to Coverage A, Federal's coverage obligations are triggered regardless of Travelers' failure to pay the underlying limits; (3) with respect to Coverage B, Federal has failed to meet its burden of establishing that there was no occurrence that triggered coverage for defense and indemnity; (4) with respect to Coverage B, Federal has failed to meet its burden of establishing that there was no personal injury that triggered coverage for defense and indemnity; and (5) with respect to Coverages A and B, Federal has failed to meet its burden of establishing that the employment-related discrimination exclusion bars coverage for defense and indemnity.

The trial court granted the insurers' motions for summary judgment on the specific ground that each policy contained exclusions that prevent coverage. The trial court's order stated that "[b]ased upon the motions, evidence, briefs, and arguments, the Court concludes that the *exclusions* relied upon by Travelers and Federal apply." [Emphasis added.]

The trial court also denied Waffle House's motions for partial summary judgment; however, the trial court ordered Travelers to pay Waffle House for the reasonable and necessary legal fees and expenses incurred by Waffle House as a result of the underlying litigation for the period from July 1, 1994 to March 7, 1997. Waffle House acknowledged the receipt of this payment.

### III. LEGAL ANALYSIS

Waffle House argues in seven issues that the trial court improperly denied its motion for partial summary judgment and granted both Travelers' and Federal's motions for summary judgment. Issues one, two, and four pertain to Travelers' duty to *606 defend Waffle House and the application of an exclusion in Travelers' policy. Issues three, five, six, and seven address similar issues under Federal's policy.

#### A. Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met its summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. [FN2] The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. [FN3] Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. [FN4]

> FN2. Tex.R. Civ. P. 166a(c); *S.W. Elec. Power Co. v. Grant,* 73 S.W.3d 211, 215 (Tex.2002); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979).

> FN3. *S.W. Elec. Power Co.,* 73 S.W.3d at 215; *Rhone-Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex.1999); *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965).

> FN4. *Great Am.,* 391 S.W.2d at 47.

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence are disregarded and the evidence favorable to the nonmovant is accepted as true. [FN5] Evidence that favors the movant's position will not be considered unless it is uncontroverted. [FN6] The summary judgment will be affirmed only if the

record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. [FN7]

> FN5. *Rhone-Poulenc*, 997 S.W.2d at 223; *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex.1995).
>
> FN6. *Great Am.*, 391 S.W.2d at 47.
>
> FN7. *Clear Creek Basin*, 589 S.W.2d at 678.

A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff's cause of action cannot be established. [FN8] The defendant as movant must present summary judgment evidence that negates an element of the plaintiff's claim. [FN9] Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant. [FN10]

> FN8. *Elliott-Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex.1999).
>
> FN9. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995).
>
> FN10. *Id.*

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented. [FN11] The reviewing court should render the judgment that the trial court should have rendered. [FN12]

> FN11. *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 605 (Tex.2002).
>
> FN12. *Id.*

**B. Construction of Insurance Contracts**

[1] Generally, the rules of contract construction apply to insurance policies. [FN13] Accordingly, our primary goal is to ascertain the true intent of the parties as expressed *607 in the insurance policy. [FN14] An insurance policy should be reviewed in its totality, and every sentence, clause, and word should be given meaning. [FN15]

> FN13. *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 740-41 (Tex.1998).
>
> FN14. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex.1998).
>
> FN15. *Balandran*, 972 S.W.2d at 741.

[2][3][4] When an insurance carrier intends to exclude coverage, the exclusionary provision must be clearly expressed and must not be ambiguously worded. [FN16] "Both the insured and the insurer are likely to take conflicting views of coverage, but neither conflicting expectations nor disputation is sufficient to *create* an ambiguity." [FN17] When construing unambiguous contracts, the terms used are given their plain, ordinary, and generally accepted meaning. [FN18]

> FN16. *State Farm Fire & Cas. Co. v. Reed*, 873 S.W.2d 698, 699 (Tex.1993).
>
> FN17. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex.1994).
>
> FN18. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.1996).

**C. Travelers' Policy**

In issues one, two, and four, Waffle House argues that Travelers had a duty to defend Waffle House in the Scribner litigation that extended through the appellate process and that Travelers' "Employee-Related Practices" exclusion does not apply to the claims against Waffle House by Scribner and Resource. We agree.

**1. The Duty to Defend Defined**

[5][6][7] An insurer's duty to defend its insured is determined according to the "eight corners" rule, which requires that we compare the allegations in the petition or complaint filed against the insured and the insurance policies. [FN19] The complaint must allege facts within the scope of coverage; otherwise, the insurer will not be legally bound to provide a defense for the insured. [FN20] When the allegations are reviewed to determine whether a liability insurer has a duty to defend its insured, a liberal interpretation in favor of the insured should be given. [FN21]

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

FN19. *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex.2002).

FN20. *Id.*

FN21. *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex.1997).

### 2. The Travelers' Exclusion

Since the exclusions potentially bar coverage for a defense, indemnification, or both, we first review Travelers' employment-related exclusion. Travelers argued in its motion for summary judgment that the "Employee Related Practices" exclusion applies to exclude coverage for every claim asserted by Scribner and Resource against Waffle House. Travelers contends that the exclusion applies to bar coverage for "personal injuries" arising out of Scribner's termination.

[8] The exclusion in Travelers' policy provides that the policy "does not apply to ... 'personal injury' *arising out of* any ... termination of employment ... [c]oercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, or other employment-related practices, policies, acts or omissions." [Emphasis added.] Because the exclusion clearly expresses the intent of the parties, we hold that Travelers' exclusion is not ambiguous. [FN22] We must now review the facts of this case to determine if the trial court correctly applied the exclusion.

FN22. *See Balandran*, 972 S.W.2d at 741.

*608 [9] Travelers argued in its motion for summary judgment that the provision excludes coverage for injuries "arising out of employment-related acts such as ... defamation." According to Travelers, the allegations of post-employment defamation in Scribner's complaint clearly arose out of employment-related acts.

Whether the exclusion applies depends on whether the defamatory remarks made by the Waffle House executives arose out of Scribner's termination from Waffle House. Under the facts of this case, we hold that it does not.

[10] The Texas Supreme Court recently stated that the phrase "arise out of" should be interpreted as requiring a "but-for" causal relationship. [FN23] Furthermore, the phrase should be broadly construed.

[FN24] However, "a causal connection must exist" between the injury and the events excluded by the policy. [FN25]

FN23. *Utica Nat'l Ins. Co. v. Am. Indem. Co.*, 46 Tex. Sup.Ct. J. 866, --- S.W.3d ----, ----, 2003 WL 21468776, at *4 (June 26, 2003).

FN24. *Id.*; *Mid-Century Ins. Co. v. Lindsey*, 997 S.W.2d 153, 156 (Tex.1999); *McCarthy Bros. Co. v. Cont'l Lloyds Ins. Co.*, 7 S.W.3d 725, 729 (Tex.App.-Austin 1999, no pet.).

FN25. *See Lindsey*, 997 S.W.2d at 156 (stating that "[f]or liability to 'arise out of' the use of a motor vehicle, a causal connection or relation must exist between the accident or injury and the use of the motor vehicle").

In *Lindsey*, a boy climbed through the back window of a locked stationary pickup in order to retrieve his clothes. As he was maneuvering through the window, he accidently pulled the trigger of a loaded gun, and Lindsey, who was in a car parked next to the pickup, was wounded. After settling with the boy's parents for the limits of their insurance policy, Lindsey attempted to file an underinsured-motorist claim against the insurance carrier of the owner of the car in which he was sitting when he was wounded. The insurance carrier argued that the injury did not "arise out of" the use of a motor vehicle. Referring to the causal connection, the court held that Lindsey's injury arose out of the use of the truck as a matter of law. [FN26]

FN26. *Id.*

Therefore, if Waffle House's liability to Scribner does not "arise out of" a causal connection or relation between the defamatory statements and Scribner's employment, then Travelers owes Waffle House a duty of indemnification. [FN27] The facts of this case clearly demonstrate that no causal connection exists.

FN27. *See id.*

According to Judge Buchmeyer's opinion, the defamatory statements made by Theobold and Nau were lies intended to prevent the exodus of employees from Waffle House to Grandy's. Waffle House stated in its pleadings in the underlying suit

that the purpose of the calls was "to inform Grandy's of the situation in an attempt to halt the apparent pirating of their employees." Judge Buchmeyer also found that, consistent with these statements, in one of the conversations during which the defamatory remarks were made, Theobold threatened Robert McGregor, who is Grandy's Director of Human Resources, by stating that " 'if you don't stop hiring Waffle House employees' through Therese Schribner, 'we're going to set a bounty' and 'pay a signing bonus' for 'hiring away Grandy's employees.' " Travelers even concedes in its brief on page twenty-three that the "defamatory statements were made to Grandy's to avoid the loss of Waffle House employees." When statements such as these are coupled with the fact that the defamatory statements were made over two years after Scribner's termination, *609 the *context* of the statements clearly shows that they arose out of Waffle House's attempt to prevent its employees from leaving the company and not out of Scribner's termination. [FN28] In other words, no causal relationship exists between the defamation and Scribner's employment.

> FN28. *See HS Servs., Inc. v. Nationwide Mut. Ins. Co., 109 F.3d 642, 646 (9th Cir.1997)* (holding that *context* of statement was not employment-related even though remarks were related to employment).

A review of the cases cited by both Waffle House and Travelers further provide credence to our construction of the exclusion. First, Waffle House argues that *HS Services, Inc.* is directly on point. [FN29] In *HS Services, Inc.*, an insured sued its insurer to obtain a defense and indemnity in connection with a defamation judgment awarded to the insured's former employee. [FN30] The defamation in that case occurred three months after the employee was discharged. [FN31] Like Scribner, the employee in *HS Services, Inc.* had formed a business that was competing with his former employer and was soliciting customers. [FN32] The insurer denied coverage, relying upon the same exclusion at issue in the present case. The Ninth Circuit reversed the trial court's summary judgment for the insurer, holding that the *context* of the insured's defamatory statements was to protect the insured in the marketplace and was not "clearly employment-related." [FN33]

> FN29. *Id.*
>
> FN30. *Id.* at 644.

> FN31. *Id.*
>
> FN32. *See id.*
>
> FN33. *Id.* at 646.

Travelers acknowledged in its motion for summary judgment that the sole purpose of the defamatory statements by the Waffle House executives was to "prevent Waffle House from losing employees." Therefore, the statements were made in the context of protecting Waffle House in the marketplace. [FN34]

> FN34. *See id.*

Travelers cites several cases applying Texas law for the proposition that the exclusion should apply to bar coverage in this case. Each of these cases is distinguishable on one or more grounds. First, Travelers argues that *Pennsylvania National Mutual Casualty Insurance Co. v. Kitty Hawk Airways, Inc.* [FN35], from the Fifth Circuit, supports its contention that the exclusion provision applies to the facts in this case because Scribner suffered personal injuries from statements made about her concerning her termination. We distinguish *Kitty Hawk* on its facts. The defamatory letter in that case was sent in response to a routine employment inquiry by Northwest Airlines, requesting information about Pollard's employment at Kitty Hawk. In other words, Kitty Hawk's defamatory letter was clearly linked to Pollard's employment at Kitty Hawk. <u>In the present case, however, no causal relationship exists between Waffle House's defamatory statement and Scribner's employment by Waffle House. The defamatory remarks were aimed at stopping the exodus of employees from Waffle House and were made over two years after Scribner was terminated.</u>

> FN35. 964 F.2d 478, 481 (5th Cir. 1992).

Furthermore, *Kitty Hawk's* exclusion stated that the policy does not cover "personal injur[ies] sustained by any person as a result of an offense *directly or indirectly* related to the employment of such person by the named insured." [FN36] The exclusion *610 in *Kitty Hawk* describes the causal connection by utilizing the words "directly or indirectly." [FN37] The Travelers exclusion does not contain such language.

> FN36. *Id.* at 479 (emphasis added).
>
> FN37. *Id.*

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Travelers cites *Old Republic Insurance Co. v. Comprehensive Health Care Associates, Inc.* for the proposition that the exclusion that covers any claim arising out of the employment relationship between the insured and any of its employees is broad enough to cover virtually any claim arising out of the employment relationship. [FN38] *Old Republic* was a suit to enforce the insurer's duty to defend its insured. [FN39] Accordingly, only the allegations in the plaintiffs' underlying petitions were reviewed. [FN40] The plaintiffs in that case alleged that the defendant used his position of authority in the workplace to force unwanted sexual attention on the plaintiffs by insinuating that the plaintiffs would receive neither pay raises nor their paychecks unless the plaintiffs responded to the defendant's advances. [FN41] The facts of *Old Republic* clearly establish an employment-related causal connection between the conduct excluded and the injury suffered.

> FN38. 2 F.3d 105, 109 (5th Cir.1993).
>
> FN39. *Id.* at 107.
>
> FN40. *Id.* at 107-08.
>
> FN41. *Id.*

Travelers also argues that the law in other jurisdictions is consistent with its interpretation of Texas law. Travelers argues that *Frank & Freedus v. Allstate Insurance Co.* involves the interpretation of an exclusion that is identical to the one at issue in this case. [FN42] The California court held that defamatory statements made in reference to the termination of an employee were directly related to and in the context of the underlying plaintiff's employment. [FN43] The court imposed a requirement that a causal link exist between the employee and the defamatory statement by emphasizing the context of the statement. [FN44] Specifically, the court stated that "[t]he defamation here was clearly employment-related. The statement was made in the *context* of Caprow's employment and its content is directed to Caprow's performance during employment." [FN45] If we apply the law in *Frank & Freedus* to the facts before us, even though some of the content of the defamatory statements pertained to Scribner's employment at Waffle House, the *context* of the statements clearly had nothing to do with her employment.

> FN42. 45 Cal.App.4th 461, 52 Cal.Rptr.2d 678, 683 (1996).
>
> FN43. *Id.* at 685; *see also Acceptance Ins. Co. v. Lifecare Corp.*, 89 S.W.3d 773, 785 (Tex.App.-Corpus Christi 2002, no pet.) (comparing the context of the defamatory statement in that case with the context of the statement in *Frank & Freedus* ).
>
> FN44. *Frank & Freedus*, 45 Cal.App.4th 461, 52 Cal.Rptr.2d 685.
>
> FN45. *Id.* at 684 (emphasis added).

Based on the facts and supporting case law, we hold that the employment-related exclusion in the Travelers policy does not apply under the facts of this case. We sustain Waffle House's fourth issue to the extent it argues that the employment-related exclusion does not bar coverage.

### 3. Travelers' Duty to Defend

Because we hold that the employment-related exclusion in the Travelers policy does not bar coverage, we now address Travelers' argument that none of the allegations in Scribner's and Resource's pleadings are within the scope of coverage under the policy, thus invoking Travelers' *611 duty to defend Waffle House. Travelers does not contest that Scribner's defamation claims are for "personal injury" as defined by the policy; instead, Travelers argues that the employee-related exclusion excuses both the duty to defend and the duty to indemnify. Scribner and Resource, however, alleged in their fourth amended complaint under the heading "NINTH CAUSE OF ACTION AGAINST DEFENDANT: DEFAMATION" that

> On or about May 18, 1992, Grandy's, Inc. was again contacted this time by Dave Theobold, a Regional Manager for Defendant. Mr. Theobold reiterated the allegation that Plaintiff Scribner was targeting Defendant employees and also alleged that Plaintiff Scribner had a personal vendetta against Defendant.
>
> ....
>
> Defendant agents made said statements negligently, maliciously, and/or with knowledge that said statements were false or with reckless disregard for their truth.

The allegation pertaining to Theobold's defamation contains no reference to Scribner's employment. Liberally construing the pleadings against Travelers and without reference to the truth or falsity of the allegations, [FN46] Scribner's complaint alleges injuries that are covered by Travelers' policy. Accordingly, we hold that Travelers had a duty to

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

defend Waffle House.

> FN46. See *Nat'l Union*, 939 S.W.2d at 141; see also *Collier v. Allstate County Mut. Ins. Co.*, 64 S.W.3d 54, 58-59 (Tex.App.-Fort Worth 2001, no pet.) (stating that insurer's duty to defend is determined without reference to truth or falsity of the plaintiff's allegations).

### 4. End of the Duty to Defend

[11] Waffle House further argues in its second issue that Travelers' duty to defend Waffle House extends through the appellate process. Travelers relies on its argument that none of the allegations in the underlying complaint was covered by the policy.

Travelers' insurance policy provides that Travelers' duty to defend ends when the applicable policy limits are exhausted by qualifying payments. The policy fails to mention any other situation under which Travelers' duty to defend would end. We conclude that the policy unambiguously states the conditions that terminate coverage. [FN47] We hold that Travelers' duty to defend Waffle House continues through the appellate process until the applicable limits of the policy are exhausted according to the terms of the policy. We sustain Waffle House's first and second issues.

> FN47. See *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex.1997) (determining that the existence of an ambiguity is a question of law for the court to decide).

### 5. Travelers' Duty to Indemnify

Waffle House also argues in its fourth issue that because the employee-related exclusion does not apply and because Scribner's and Resource's injuries arise out of the defamatory statements, Travelers has a duty to indemnify Waffle House for Scribner's and Resource's damages caused by the tortious interference with Resource's contract with Grandy's and the defamation of Scribner. Waffle House also argues that Travelers' duty to indemnify Waffle House includes the obligation to pay the punitive damages. Waffle House raised the indemnity issue in its supplemental motion for partial summary judgment.

[12][13][14] An insurer's duty to indemnify is separate and distinct from the insurer's duty to defend. [FN48] Facts established at trial *612 that fall within the purview of the policy invoke an insurer's duty to indemnify its insured. [FN49] The duty only rises after the insured has been adjudicated to be legally responsible for damages in a lawsuit. [FN50]

> FN48. *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex.1997); *Collier*, 64 S.W.3d at 62.
>
> FN49. *Collier*, 64 S.W.3d at 62.
>
> FN50. *Id.*

[15] Travelers' policy provides that Travelers "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury.'" The policy further defines personal injury to mean injury "arising out of ... [o]ral or written publication of material that slanders or libels a person." Thus, the policy provides coverage for defamatory statements that are not excluded by another provision in the policy.

We now determine whether any of Judge Buchmeyer's findings fall within the coverage of Travelers' policy. [FN51] He awarded damages relevant to this case totaling $1,293,192 as follows:

> FN51. See *id.*

```
Intentional Interference (Resource)
                          lost income                        24,188

Defamation (Scribner)
                          lost income                       -Nominal-
                          mental anguish                    119,500

Punitive Damages For Tortious Interference and defamation
(Both Scribner & Resource, Jointly)                       1,149,504
```

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Judge Buchmeyer found that Waffle House tortiously interfered with Resource's contract with Grandy's and awarded Resource $24,188 in lost income. He concluded "that *the only reason* that Grandy's terminated its contract with Resource Recruiters was the malicious conduct and lies of Waffle House's Skip Nau and Dave Theobold." Resource's claim that Waffle House tortiously interfered with Resource's contract with Grandy's "arose out of" or "resulted from" the defamatory comments of Nau and Theobold. We hold that Travelers has a duty to indemnify Waffle House for Resource's lost profits caused by Waffle House's tortious interference with the Grandy's contract.

Judge Buchmeyer also awarded Scribner $119,500 for the mental anguish she suffered as a result of the defamation. We hold that these damages "arose out of" or "resulted from" the defamatory statements and are covered by the policy; thus, Travelers has a duty to indemnify Waffle House for the mental anguish damages.

Finally, Judge Buchmeyer awarded punitive damages for both the contractual interference and defamation causes of action. Concluding that the circumstances surrounding both of the causes are identical and the punishment of Waffle House for its defamation of Scribner would have the same purpose as the punishment of Waffle House for its tortious interference with the Grandy's agreement, Judge Buchmeyer issued a joint award to Scribner and Resource for punitive damages. We hold that the punitive damages "arose out of" or "resulted from" Waffle House's defamatory statements and Travelers has a duty to indemnify Waffle House for those damages. We sustain the remainder of Waffle House's fourth issue.

**D. Federal's Insurance Policy**

Waffle House next argues in issues three, five, six, and seven respectively that Federal owes Waffle House a duty to defend that continues through the appellate process, Federal's "Employment Related Discrimination" exclusion does not apply to the claims by Scribner and Resource, Federal's policy does not condition indemnity upon exhaustion of the Travelers policy, and Federal's policy provides coverage for "occurrences" resulting from personal injuries, *613 including personal injuries caused by the insured's intentional conduct.

**1. Federal's Exclusions**

Because Federal raised several exclusions in its motion for summary judgment and because those exclusions, if applicable, would bar coverage for both a defense and indemnity, we address those exclusions first. In its fifth and seventh issues, Waffle House argues that neither Federal's "Employment Related Discrimination" exclusion nor the exclusion for intentional conduct as it applies to personal injuries bars coverage for Scribner's defamation claims. Federal raised the issue in its motion for summary judgment, arguing that Scribner did not allege and Judge Buchmeyer did not find a "personal injury" within the meaning of the policy.

[16] Federal argued in its motion for summary judgment that Waffle House is not covered by its policy under either the Coverage A or B provisions because the policy specifically excludes coverage for intentional "personal injury." The Coverage A provision of Federal's policy states as follows:
COVERAGE
Coverage A-Excess Follow Form Liability Over Claims Made or Occurrence Coverage
We will pay, on behalf of an **insured**, damages in excess of the total Limits of Liability of Underlying Insurance as stated in the Schedule of Underlying Insurance. The terms and conditions of the Scheduled Underlying Insurance are with respect to Coverage A made a part of this policy, *except for:*
....
b. any renewal agreement, and any exclusion or limitation attached to this policy by endorsement or included in the Exclusions applicable under Coverage A and B of this policy.
With respect to a. and b. above, the provisions of this policy will apply.
With respect to all Scheduled Underlying Policies, the injury or damage must be caused by an *occurrence* which takes place on or after the Effective Date. [Emphasis added.]
The Coverage A provision applies only to injuries or damages caused by an *occurrence*. The policy provides that an

Occurrence

*Means:*
a. with respect to **bodily injury** or **property damage** liability, an event, including continuous and repeated exposure to substantially the same

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

general harmful conditions *neither expected nor intended* from the standpoint of the **insured**. All such exposure to substantially the same general conditions will be considered as arising out of one **occurrence**.

b. with respect to **personal injury**, an offense committed during the policy period which results in **personal injury**. All damages arising out of such exposure to substantially the same general conditions will be considered as arising out of one **occurrence**. [Emphasis added.]

The policy also states that Federal will pay according to the terms of the Coverage B provision when the "liability is imposed on the **insured** by law or assumed by the **insured** under an **insured contract** because of *personal injury* or **advertising injury** to which this coverage applies." [Emphasis added.] The policy's definition of "occurrence" with respect to "personal injuries" does not exclude expected or intended conduct as it does in section a., which addresses bodily injury and property damage. Accordingly, both the Coverage A and B provisions cover liability resulting *614 from *personal injuries* caused by intentional conduct.

[17] Federal's policy defines personal injury as follows:

**Personal Injury**

*Means:*
a. false arrest, false imprisonment, wrongful eviction, wrongful entry, wrongful detention or malicious prosecution;
b. libel, slander, defamation of character, or invasion of the rights of privacy, unless arising out of advertising activities;
c. humiliation or discrimination EXCEPT:
(1) when arising out of the willful violation of a statute;
(2) when committed by or with knowledge or consent of the **insured**.

According to c. above, Federal's policy includes an exception applicable to both Coverages A and B that bars coverage for personal injury resulting in humiliation.

Federal argues that Scribner and Resource alleged and Judge Buchmeyer found that the defamatory statements resulted in humiliation; therefore, according to Federal, the policy excludes any coverage for Waffle House in the Scribner litigation. Scribner alleged in her fourth amended complaint that the defamatory remarks caused her "to be held up to public humiliation ... and have caused both she and her company great personal and professional embarrassment and shame." Likewise, Judge Buchmeyer found that the mental anguish Scribner suffered as a result of the defamatory statements "went far beyond hurt, anger, and frustration to manifest itself in the form of humiliation and stress."

Federal's exception clearly states the circumstances to which the policy does not apply; therefore, we hold that the policy is not ambiguous. [FN52] Furthermore, because Scribner alleged and Judge Buchmeyer found that Theobold's and Nau's defamatory comments caused Scribner humiliation, we hold that those claims for humiliation and the resulting mental anguish damages are excluded from coverage under both the Coverage A and B provisions of Federal's policy. We overrule Waffle House's seventh issue to the extent the issue addresses Federal's humiliation exception for personal injuries.

FN52. See *Balandran, 972 S.W.2d at 741*.

[18] However, Scribner and Resource also alleged damages for lost profits. We must therefore review Federal's exclusion entitled "EMPLOYMENT RELATED DISCRIMINATION EXCLUSION." The exclusion states as follows:
THIS POLICY IS SUBJECT TO THE FOLLOWING EXCLUSION
With respect to Coverages A and B:
it is agreed that this policy does not apply to ... **personal injury** ... for, based on, attributable to, arising out of, resulting from or in any manner related to any actual or alleged termination of any employee, any actual or alleged failure to promote or advance any employee, or any actual or alleged failure to hire any applicant for employment.

[19] Waffle House initially argues that the title of the exclusion clearly illustrates that it is designed to preclude coverage for "discrimination" related to employment and that therefore the exclusion does not apply to this case. The policy, however, states that "[t]he titles of the varied paragraphs of this policy and endorsements ... are inserted solely for convenience or reference and are NOT to be deemed in *615 any way to limit or affect the provisions to which they relate." Accordingly, our analysis must extend past the title of the exclusion.

Waffle House next argues that the summary judgment evidence does not establish as a matter of law that Federal's exclusion applies to defamatory

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

statements made two years after Scribner's termination. Waffle House also argues that no summary judgment evidence establishes as a matter of law that the exclusion applies to the defamation of Resource.

The language in this exclusion varies slightly from that used in the Travelers exclusion in that this exclusion utilizes several different phrases such as "for, based on, attributable to, arising out of, resulting from or in any manner related to" to describe the causal relationship required to come within the purview of the exclusion. However, Federal's use of phrases that vary the degree of the causal nexus does not merit an outcome different from our analysis of the Travelers exclusion.

Federal states in its brief that "[t]he relationship between the defamers and the defamed is additional evidence that plaintiff's allegations were properly excluded under the employment-related discrimination exclusion." We agree that the relationship illustrates how the exclusion should apply to the facts of this case. The relevant relationship is that of one company attempting to compete with another. To keep from losing its employees to Scribner and Resource, Waffle House attempted to discredit Scribner's and Resource's reputations.

The defamatory statements made by the Waffle House executives were "based on, attributable to, arose out of, and/or resulted from" Waffle House's need to maintain a stable work force. Scribner's termination, therefore, was not causally related to the defamatory statements under the terms of the Federal policy. We hold that Federal's "Employment Related Discrimination Exclusion" does not bar coverage under the facts of this case. We sustain Waffle House's fifth and seventh issues, but only to the extent that they pertain to Scribner's and Resource's claims for lost profits.

Accordingly, Federal's policy excludes coverage for damages attributable to humiliation as a result of Waffle House's defamation; however, because no exclusions apply to either Scribner's or Resource's damages for lost profits, we must apply the "eight corners" test to determine whether Federal had a duty to defend Waffle House as a result of the covered allegation.

**2. Duty to Defend**

[20] Scribner and Resource alleged that they suffered lost profits as a result of the defamation. Defamation is included in the definition of personal injury, and the policy covers occurrences resulting from personal injuries. A review of the allegations in Scribner's and Resource's complaint and Federal's policy establishes that their lost profit allegations resulting from Waffle House's defamation are covered by Federal's policy. [FN53] Because we hold that Travelers has a duty to defend Waffle House that continues through the appellate process, we hold that Federal also had a duty to defend Waffle House according to the terms of its policy under the Coverage A provision. We sustain Waffle House's third issue. We do not reach Waffle House's alternative argument that Federal's Coverage B provision also provides coverage for Waffle House. [FN54]

FN53. See *King*, 85 S.W.3d at 187.

FN54. See Tex.R.App. P. 47.1.

**\*616 3. Federal's Duty to Indemnify**

Waffle House argues in its sixth issue, among other things, that Federal has a duty to indemnify Waffle House. Waffle House raised the issue in its second supplemental motion for partial summary judgment by arguing that Federal owed Waffle House a duty of indemnification. Because we hold that Travelers owes Waffle House a duty of indemnification, the employee-related exclusion does not apply, and Federal's policy does not exclude coverage for Scribner's and Resource's damages for lost profits, we hold that Federal has a duty to indemnify Waffle House but only to the extent that the limits of the Travelers policy are exhausted.

**4. Exhaustion of Travelers' Policy Limits**

[21] Although we hold that Federal has a duty to defend and indemnify Waffle House, those duties are not without limitation. In its sixth issue, Waffle House argues that Federal's policy does not condition indemnity upon exhaustion of the Travelers policy. In its motion for summary judgment, Federal argued that the limits of Travelers' underlying policy have not been exhausted because Travelers declined coverage under its policy. Consequently, according to Federal, coverage under its policy has yet to be triggered. Waffle House argues that Federal's motion must be denied on this ground because the policy obligates Federal to pay based on Waffle House's obligation to pay a covered claim. Waffle House's argument is not complete.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

The policy states in the section entitled "WHEN LOSS IS PAYABLE" that

> This policy will NOT apply until the **insured**, or the **insured's** underlying insurer is obligated to pay the amount of the underlying limit or Retained Limit for an **occurrence** which is also covered by this policy. When the amount of loss has finally been determined we will promptly pay on behalf of the **insured** the amount of loss which *falls within the terms of this policy*. [Emphasis added.]

The policy further states in its Coverage A provision that Federal "will pay, on behalf of an insured, damages in excess of the total Limits of Liability of Underlying Insurance as stated in the Schedule of Underlying Insurance." Travelers' general liability insurance policy is listed on the Schedule of Underlying Insurance, and the limit of liability is one million dollars. In Federal's policy, the Coverage B provision states that Coverage B does not apply if Coverage A provides coverage. Accordingly, the policy clearly and unambiguously provides coverage under its Coverage A provision, and the obligation to pay does not arise until the limits of the Travelers policy have been exhausted. We overrule Waffle House's sixth issue to the extent it argues that Federal has an obligation to indemnify Waffle House whether or not the limits in the Travelers policy have been exhausted.

## IV. CONCLUSION

Because we have sustained Waffle House's first, second, and fourth issues, we reverse the trial court's summary judgment for Travelers and render partial summary judgment for Waffle House against Travelers, holding that Travelers has both a duty to defend Waffle House through the appellate process and a duty to indemnify Waffle House for the damages arising out of the defamatory statements. We affirm the trial court's judgment for Federal to the extent it holds that Federal has no duty to indemnify Waffle House for Scribner's mental anguish damages arising from the defamatory statements. Having sustained Waffle House's fifth and seventh issues in part and overruled Waffle House's sixth issue, *617 we reverse the trial court's summary judgment for Federal to the extent it holds that Federal had no duty to indemnify Waffle House for Resource's damages for lost profits and render partial summary judgment for Waffle House holding that Federal owes Waffle House both a duty of defense and indemnification for the Resource's lost profits but only to the extent Travelers' policy limits are exhausted. We remand the case to the trial court for further proceedings.

114 S.W.3d 601, 20 IER Cases 530

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.