United States District Court
Southern District of Texas
FILED

MAR 07 2005

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ESSEX INSURANCE COMPANY | § § § | |
| VS. | § § § § | CIVIL ACTION NO. B-04-079 |
| AMBERJACK'S BAR & GRILL, INC. AND DANNY GHILAIN TRUST | § § | |

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| CENTURY SURETY COMPANY | § § § | |
| VS. | § § § § § | CIVIL ACTION NO. B-04-172 |
| DANIEL B. GHILAIN, LEEANNE GHILAIN; AND ESSEX INSURANCE COMPANY | § § § | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW DANNY GHILAIN and LEEANNE GHILAIN, Defendants named by CENTURY SURETY COMPANY, and file this their Motion for Motion for Summary Judgment and as grounds therefor would show the Court the following:

I.

### ISSUE STATEMENT

Movants generally agree with the Statement of the Nature and Stage of the Proceeding and Statement of Issues to be ruled upon by the Court, stated in CENTURY's Motion for Summary Judgment. Defendants disagree with CENTURY's conclusions stated at Paragraph 5 of the Nature and Stage of Proceedings for the reasons set out in this Motion. However,

Movants believe there are issues, including timing issues, regarding any slanderous remarks that preclude Defendants obtaining a declaratory judgment regarding duty to indemnify at this point. Therefore, Defendants request Summary Judgment on Plaintiff's Duty to Defend, only.

## II.

## SUMMARY JUDGMENT EVIDENCE

Defendants agree that the Summary Judgment record includes the items listed as Exhibits "A," and "B" listed by Plaintiff, CENTURY SURETY COMPANY, the live pleadings in the underlying case and the insurance policy. However, Defendants assert that attached Exhibit "E," the underlying Plaintiff's Motion and executed Order Non-Suiting all claims against Daniel B. Ghilain must be considered as a modification or supplement to the Second Amended Petition, since by necessary implication, underlying Plaintiff has abandoned prosecution of claims based upon the previously alleged conduct of Mr. Ghilain, which was the January 29, 2003, alleged statement. Exhibit "F" is the authenticating Affidavit for those court records.

## III.

## SUMMARY OF ARGUMENT

A. DANIEL B. GHILAIN is no longer a Defendant in the underlying lawsuit. However, CENTURY SURETY COMPANY has a duty to defend LEEANNE GHILAIN against the allegations in the underlying lawsuit because there are sufficient allegations in the underlying lawsuit to allow the underlying Plaintiff to prove that her alleged conduct occurred while she was acting as a stockholder of the named insured corporation, Amberjack's Bar & Grill, Inc., which would be a capacity which would be insured under the CENTURY policy.

B. CENTURY SURETY COMPANY has a duty to defend LEEANNE GHILAIN against the allegations in the underlying lawsuit because the insurance policy covers "personal and advertising injury" and the exclusion for "employment-related practices" does not apply since there is no allegation of a causal connection between underlying Plaintiff's employment, and the context of the issuance of the slanderous comments (as opposed to content of the alleged slanderous comments) as required by Texas law, to support the application of the employment practices exclusion. The thing must be uttered in the context of the employment relationship. It is not sufficient that it merely be uttered about the employment relationship.

C. CENTURY SURETY COMPANY has a duty to defend LEEANNE GHILAIN against the allegations in the underlying lawsuit because the allegations in the underlying lawsuit are consistent with a first publication during CENTURY's policy period. The pleadings of an earlier publication have been abandoned, and a jury could find the earlier publication did not happen.

D. The allegations in the underlying lawsuit require both CENTURY and ESSEX INSURANCE COMPANY to provide a defense, since the first alleged slanderous comment could have occurred under either company's policy period.

## IV.

## THE UNDERLYING LAWSUIT

Defendants would contend that the entire Second Amended Petition, as modified by the non-suit of DANIEL B. GHILAIN, is relevant to the Defendants' Motion for Summary Judgment. Defendants would contend that the non-suit of DANIEL B. GHILAIN removes the January 29, 2003, alleged statement of DANIEL B. GHILAIN from the live pleadings in the underlying lawsuit.

Defendants would also contend that the entire paragraph 5 of the live petition, rather than the excerpt quoted by the Plaintiff in its Motion for Summary Judgment, should be considered by the Court. That paragraph states the following:

> 5. The defamatory statements set forth above are false. The truth is that Defendants purchased Plaintiff's and her husband's interest in a corporation which owned a restaurant known as "Amberjacks." Plaintiff was the in-house bookkeeper and maintained the accounts payables, accounts receivable, marketing, payroll and group sales for the partnership, Amberjack's Bar & Grill, Inc. Defendant, Leeanne Ghilain disliked Plaintiff personally and refused to speak to Plaintiff and wished to discredit Plaintiff. Plaintiff believes that Defendants harbored ill feelings for Plaintiff several years before Plaintiff's interest was purchased.

## V.

## THE INSURANCE POLICIES

The CENTURY SURETY COMPANY insurance policy at issue includes coverage for personal and advertising injury which obligates CENTURY to defend and indemnify for defamation unless the underlying Plaintiff's pleadings establish that LEEANNE GHILAIN is not alleged to have made the statements when she was in an insured capacity; or that the alleged statements fall within the employment-related practices exclusion; or that the allegations establish that the defamatory statements had been previously published before the inception of the CENTURY policy.

## VI.

## STANDARD OF REVIEW

Movants agree with the Standard of Review and Texas' adherence to the "Eight Corners" rule as set out in Plaintiff's Motion for Summary Judgment. Regarding the Standard of Review for insurance coverage questions, Movants adopt the language of *Potomac Ins. Co. v. Peppers*, 890 F.Supp. 634, (S.D. Texas, Houston Division), a case cited

by the Plaintiff in its Motion for Summary Judgment.

The Court stated the following:

> Under the "eight corners" rule, a duty to defend only arises if the allegations in the pleadings are "potentially" covered by the policy. (Citations omitted) If there is any doubt as to whether the allegations in the complaint state a claim that is covered by the policy, such doubt is to be resolved in favor of the insured. *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965). Additionally, if there are insufficient allegations in the pleadings upon which to make a determination as to whether or not there is coverage, courts will generally find a duty to defend. *Id.* Finally, as long as one claim or allegation in the pleadings is "potentially" covered by the insurance policy, the duty to defend arises. *Id.*

## VII.

## ARGUMENT AND AUTHORITIES

A. **LEEANNE GHILAIN is a stockholder in Amberjack's Bar & Grill, Inc., and the allegation in the underlying Plaintiff's live pleading are sufficient to allow the underlying Plaintiff to prove that the defamatory statements were made in LEANNE GHILAIN's capacity as a stockholder.**

"If there is any doubt as to whether the allegations in the complaint state a claim that is covered by the policy, such doubt is to be resolved in favor of the insured." Citing *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Texas 1965).

Plaintiff's Second Amended Petition in the underlying case states the following:

> The truth is that Defendants purchased Plaintiff's and her husband's interest in a corporation which owned a restaurant known as Amberjack's. Plaintiff was the in-house bookkeeper and maintained the accounts payables, accounts receivable, marketing, payroll and group sales for the partnership, Amberjack's Bar & Grill, Inc.

CENTURY states in its Motion for Summary Judgment that "There are no specific allegations in the Petition filed in the underlying lawsuit regarding the relationship between

the Ghilains and Amberjack's." That statement would not appear to be justified by the live pleading in the underlying case.

The plain meaning of the live pleading in the underlying case is that the Ghilains purchased all, or a part of, Amberjack's Bar & Grill, Inc., from the underlying Plaintiff and her husband. It is also clear that the underlying Plaintiff left the employment of Amberjack's Bar & Grill, Inc., in mid January of 2003, and it is clearly alleged that after that, termination of employment, the alleged defamatory remarks were made.

The underlying Plaintiff's live pleading is sufficient to put readers on notice that owners of the insured corporation uttered the defamatory remarks. This is more than is required by Texas law to overcome CENTURY's arguments regarding LEEANNE GHILAIN's capacity as an insured.

**B. The employment-related practices exclusion does not apply.**

Plaintiff's Second Amended Petition in the underlying case states that the underlying Plaintiff terminated her employment with Amberjack's Bar & Grill, Inc., in mid January of 2003. There are two specific allegations of alleged defamatory statements left in the underlying case. One is a statement that LEEANNE GHILAIN made to a third party, confirming a rumor that Judy Lemmons had taken $200,000.00. This statement is alleged to have been published on or about the first part of March, 2003, in Cameron County, Texas.

The second defamatory statement was made on April 10, 2004, when it is alleged that LEEANNE GHILAIN told a third party that the rumor was true and that she was shocked at how much Judy stole. There is no allegation concerning the identity of the third persons. There is no allegation concerning the purpose of the alleged defamatory remarks. There is no allegation whatsoever concerning the context or motivation behind the making of the alleged defamatory statements.

The Employment-Related practices exclusion does not define what is an employment-related practice. It does state the following:

> Employment-Related Practices regardless of allegations are not covered under this policy nor are any expenses or any obligation to share damages with or repay anyone else who must pay damages from same, including but not limited to:
>
> (B)   Discrimination, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment in any form, humiliation or other employment-related practices, policies, acts or omissions;

Obviously, not all discrimination, coercion, discipline, defamation, harassment or humiliation are excluded. Those items are excluded if they are employment-related practices. Movants contend that the listed items are not excluded unless they are committed against a present employee by a present employer or, the purpose of the statements or the motivation for the statements (as opposed to their content) is related to the Plaintiff's employment. Obviously, the alleged remarks were about Ms. Lemmons' conduct while she was an employee. That is not enough under the case law. Just as obviously, the pleadings do not tell us the purpose or context of the alleged statements. In this event, CENTURY cannot say the motive of the speaker had anything to do with Lemmons' employment.

Fortunately for Movants, Texas law is clear in requiring a direct causal connection between the issuance of the alleged slanderous statements and the employment of the underlying Plaintiff in order for the Employment-Practices Exclusion to apply. The definitive case is *Waffle House, Inc. v. The Travelers Indemnity Co. of Illinois*, 114 S.W.3d 601 (Tex.App.-Ft. Worth, 2003) (pet.den'd Feb. 27, 2004). Although the case is not a Texas Supreme Court case, it is a compelling opinion and properly decided. The case involved *Travelers* as a primary carrier and Federal Insurance Company as an umbrella carrier. Movants will concentrate on the decision of the Court regarding *Travelers* as it presents a

situation nearly identical with the case at bar.

The tort case underlying the *Waffle House* coverage case was tried to a substantial judgment before the coverage case was decided. Federal District Judge, Jerry Buchmeyer, had written a two hundred-page opinion regarding the liability of *Waffle House* to the underlying Plaintiff prior to the filing of the coverage case. In the coverage case, the respective parties were making exactly the same arguments that are presented in the case at bar with the insured arguing that the employment-related practices exclusion did not apply because the underlying Plaintiff was not an employee at the time of the alleged defamation, and the issuance of the alleged defamation (as opposed to the subject matter) was not employment-related.

At the conclusion of the trial court proceedings in the coverage case, the trial judge ordered *Travelers* to pay *Waffle House* for their reasonable and necessary legal fees and expenses incurred by *Waffle House* as a result of the underlying litigation, and *Travelers* complied. *Id.*, at 605.

The allegations in the underlying lawsuit were that *Waffle House* executives defamed the underlying Plaintiff by telling Grandy's, a *Waffle House* competitor, that underlying Plaintiff was discharged for poor performance, that she was vindictive, that she was trying to entice people to leave *Waffle House*, and that she had a personal vendetta against *Waffle House*. The Court recognizes that "when the allegations are reviewed to determine whether a liability insurer has a duty to defend its insured, a liberal interpretation in favor of the insured should be given." *Id.*, at 607.

The exclusion involved in the case is identical to the exclusion involved in the case at bar. *Id.* At 608.

The Court holds the following:

> Whether the exclusion applies depends on whether the defamatory remarks made by the *Waffle House* executives arose out of Scribner's termination from *Waffle House*. Under the facts of this case, we hold that it does not.
>
> The Texas Supreme Court recently stated that the phrase "arising out of" should be interpreted as requiring a 'but-for' causal relationship. *Utica Nat'l Ins. Co. v. American Indemnity Co.*, (Tex.Sup. 2003). Furthermore, the phrase should be broadly construed (citation omitted). However, 'a causal connection must exist' <u>between the injury and the events excluded by the policy</u>. *Mid Century Ins. Co. v. Lindsay*, 997 S.W.2d 153, 156. [Emphasis added.]

The Court then discusses Judge Buchmeyer's findings, including that the underlying trial revealed that *Waffle House* officials had made the statements to Grandy's officials to avoid the further loss of *Waffle House* employees. The Appellate Court in the *Waffle House* decision stated the following:

> When statements such as these are coupled with the fact that the defamatory statements were made over two years after Scribner's termination, the context of the statements clearly shows that they arose out of *Waffle House's* attempt to prevent its employees from leaving the company and not out of Scribner's termination. *H. S. Servs., Inc. v. Nationwide Mut. Ins. Co.*, 109 F.3d 642, 646 (9th Cir. 1997).
>
> In other words, no causal relationship exists between the defamation and Scribner's employment. *Id.* At 609-610.

It is important to note that the subject matter of the defamation in the Scribner case obviously dealt with Scribner's employment; i.e., her discharge for poor performance. It is not the subject matter of the defamation that is the key to the analysis, but rather the circumstances of the issuance of the slanderous statements that must relate to the Plaintiff's employment.

The *Waffle House* court relies on the *H. S. Servs., Inc.*, case and discusses why that case supports both the *Waffle House* decision and the Movants' position in the case at bar.

The Court distinguishes cases where the defamatory remarks are made in response to

routine employment inquiries from potential new employers of the underlying Plaintiff just after termination.

The Court goes on to hold that the employment-related exclusion does not bar <u>coverage</u> for *Waffle House*. The *Waffle House* court had the benefit of a decision already having been made in the underlying lawsuit, so that it could address coverage.

The Court then went on to discuss *Travelers'* duty to defend. In that analysis, the Court limits itself to the eight-corners rule. The allegation of the Plaintiff was that a *Waffle House* employee stated to Grandy's employees that Plaintiff, Scribner, was targeting Defendant's employees, and also alleged that Plaintiff, Scribner, had a personal vendetta against Defendant.

The Court states the following:

> The allegation pertaining to Theobold's [*Waffle House's* employee] defamation contains no reference to Scribner's employment. Liberally construing the pleadings against *Travelers* and without reference to the truth or falsity of the allegations (citation omitted), Scribner's complaint alleges injuries that are covered by *Travelers* policy. Accordingly, we hold that *Travelers* had a duty to defend *Waffle House*.

To the extent that the cases are different, the difference is that the pleadings of Judy Lemmons seek to establish less of a causal connection between the making of the slanderous statements (as opposed to the subject matter of the slanderous statements), and the employment of the underlying Plaintiff.

Even clearer support for Defendants' position comes from the case of *HS Services, Inc. v. Nationwide Mutual Ins. Co.*, 109 F.3d 642 (9th Cir. 1997). In that case, HS Services, Inc., was seeking insurance coverage for a claim made by its former President, Steven Cade. Three months after Cade left his employment with HS Services, Inc., the company issued a statement saying that Cade had been involved in acts of dishonesty that lead to his

termination. This statement was published broadly within the seafood industry. The coverage case involved an "employment-related practices exclusion" identical to the one involved in this case.

The Court recognized the following:

> Read literally and broadly the terms "arising out of" and "employment-related ... acts or omissions" would include any claim or injury connected in any way with employment termination, no matter how attenuated that connection. We do not think the parties mutually intended the exclusion be read so expansively. Our "fundamental goal" in interpreting this exclusion must be "to give effect to the mutual intention of the parties." *Id.*, 645.

The Court rejects a strictly temporal analysis, recognizing that an event "even months after termination could arise directly and proximately from the termination or be so related." *Id.*, at 645.

The key to the case is at Page 646, where the Court states the following:

> In the case at bench, the defamation is not "clearly employment related" because although its content is directed to Cade's employment, the statements were not made in the context of Cade's employment. *Id.*, at 646.

The Court goes on to note that HS Services made the remarks to protect its place in the market, not for any purpose related to Cade's former employment. The Court concluded by ruling the following:

> We also hold that for an act or omission to be "employment related," the relationship must be direct and proximate. Given the immediate circumstances which caused Cade Grayson (HS Services predecessor) to make the defamatory remarks in response to Cade's remark, its relationship to Cade's employment and his termination was too attenuated to qualify for exclusion as "employment related." *Id.*, at 647.

The purpose of the employment-related exclusion is to exclude practices that are related to the insured's employment relationships, not to bar coverage for anything ever said about past employees.

**C. The prior publication exclusion can never be applied to the duty to defend prior to the resolution of the underlying case because prior alleged publications may not be established.**

As already pointed out to the Court, there were initially three alleged defamatory remarks in Plaintiff's Second Amended Petition in the underlying case. The underlying Plaintiff has since non-suited DANIEL B. GHILAIN, in effect non-suiting the first alleged defamatory remark. Even if that were not the case, CENTURY could never meet its burden under the Rule expressed in the *Potomac Ins. Co. v. Peppers* case and the *Heyden Newport Chem. Corp.* Case, because the prior publication exclusion requires a finding in the underlying case that the prior publication actually happened. The jury in the underlying case could determine that any one of the three specifically alleged defamatory remarks did not take place. This would mean that the last alleged defamatory remark could be the only one established to the satisfaction of a jury. Clearly, CENTURY will have to prevail on one of its other theories to find an exclusion to coverage.[1]

**D.   ESSEX and CENTURY have a duty to defend.**

Obviously, under the arguments set out in Part C, any one of the alleged defamatory remarks could be found to be the first defamatory remark and the only defamatory remark. Under the rule stated in the *Potomoc* and *Heyden* cases, "as long as one claim or allegation in the pleadings is 'potentially' covered by the insurance policy, the duty to defend arises."

---

[1]

The Eight-Corners Rule wisely prevents the Court considering coverage questions from fluttering in the winds of the development of the underlying litigation. However, in order to keep this Court advised of the underlying proceedings, the trial judge has granted Leanne Ghilain's Motion for Summary Judgment striking both the general allegation of defamatory statements to third parties, found on Page 1 of Plaintiff's Second Amended, and the April 10, 2004, specific allegation for lack of evidence. This leaves for the first jury trial in the underlying case only the alleged Leeanne Ghilain defamatory statement published on or about the first part of March, 2003.

Under that rule, ESSEX had a duty to defend for the January 29, 2003, allegation that has been abandoned. ESSEX and CENTURY both have a duty to defend against the allegation of the defamatory statement that was published on or about the first part of March, 2003. The dividing date between their coverage years is March 4, 2003. The pleading thus places both policies in danger.

CENTURY is also clearly implicated for the April 10, 2004, specific alleged defamatory remark which could well be the only defamatory remark found by a jury.[2]

## CONCLUSION

CENTURY has a duty to defend LEEANNE GHILAIN in the underlying lawsuit. She is alleged to be a stockholder of the insured corporation. The allegations in the underlying Plaintiff's live pleading do not negate that the alleged defamatory remarks could have been made in her capacity as stockholder.

The employment-related practices exclusion is intended to apply to the insured's employment of individuals. It is not a shield to the defense of any lawsuit those employed individuals might ever file against the insured.

Prior publication is never a defense to a duty to defend lawsuit.

## PRAYER

Based on the foregoing, Defendant, LEEANNE GHILAIN, respectfully requests the Court to enter summary judgment in her favor against CENTURY, declaring that CENTURY has a duty to defend LEEANNE GHILAIN in the underlying lawsuit being Cause No. 2004-01-00536-E, *Judy Lemmons v. Daniel B. Ghilain and Leeanne Ghilain*, in the 357th Judicial

---

[2] Since this defamatory remark is temporarily out of the case because of Leeanne Ghilain's successful motion for summary judgment, the underlying Plaintiff would have to be successful in reinstating that allegation after an appeal of the trial court's ruling.

District Court of Cameron County, Texas. Defendants further request that the Court set this matter for further proceedings to determine a fair and reasonable attorney's fee to be paid to the Ghilains' attorney in the prosecution of this declaratory judgment action.

Respectfully submitted,

ROERIG, OLIVEIRA, & FISHER, L.L.P.
855 W. Price Road, Suite 9
Brownsville, Texas 78520
(956) 542-5666
(956) 542-0016 (Fax)

BY: _____
JEFFREY D. ROERIG
Federal ID #1503
State Bar #17161700
ATTORNEY FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of the foregoing has been mailed, Certified Mail, Return Receipt Requested, to the Attorneys of Record, as follows:

Mr. James M. Tompkins
Ms. Mary Lou Mauro
GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH
3555 Timmons Lane, Suite 1225
Houston, TX 77027

Mr. Wm. David Farmer
CURNEY, GARCIA, FARMER
PICKERING & HOUSE, P.C.
411 Heimer Road
San Antonio, TX 78232

on this 4th day of March, 2005.

_____
JEFFREY D. ROERIG

rom\motions\24247.msj2

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - Page 14

## CERTIFICATE OF CONSULTATION

I, Jeffrey D. Roerig, certify that all Counsel of Record were contacted in person on the 4th day of March, 2005, and consulted with regarding the merits of the above motion.

Ms. Mary Lou Mauro, Attorney for Plaintiff, Essex, was unavailable.

Mr. Wm. David Farmer, Attorney for Plaintiff, Century Surety Company, is opposed to the granting of the Motion for Summary Judgment.

_____
JEFFREY D. ROERIG