**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
-BROWNSVILLE DIVISION-**

| | |
|---|---|
| ESSEX INSURANCE CO., | § |
|     Plaintiff, | § |
| | § |
| VS. | § |
| | § |
| AMBERJACK'S BAR & GRILL, INC., | § |
| and DANNY GHILAIN TRUST, | § |
|   Defendants. | § |

CIVIL ACTION NO. B-04-079

| | |
|---|---|
| CENTURY SURETY COMPANY, | § |
|     Plaintiff, | § |
| | § |
| VS. | § |
| | § |
| DANIEL B. GHILAIN, LEEANNE | § |
| GHILAIN, and ESSEX INSURANCE | § |
| CO., | § |
|   Defendants. | § |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Pending before the Court are Plaintiffs, Essex Insurance Company's and Century Surety Company's Motions for Summary Judgment (Docket No.'s 17 and 35 respectively). Also pending before the Court are Defendants, Amberjack's Bar & Grill, Inc's., and Danny Ghilain Trust's, and Intervenors, Daniel Ghilain's and LeeAnne Ghilain's, Motions for Summary Judgment (Docket No.'s 21 and 34 respectively). After a review of the motions, pleadings, all documents on file, and the applicable law, as fully set forth below, it is recommended that the Plaintiffs' Motions for Summary Judgment be granted, and Defendants' and Intervenors' Motions for Summary Judgment be denied.

## I.  Background

Daniel and LeeAnne Ghilain ("Ghilains") and the Danny Ghilain Trust ("Trust") are the

current owners of the restaurant, Amberjack's Bar & Grill, Inc. ("Amberjack's"), which had a

commercial liability policy with Essex Insurance Company Inc., ("Essex")[1] and later Century

Surety Company ("Century").[2]  Both policies included an identical employment-related practices

exclusion.  Judy Lemmons ("Lemmons") was the previous owner of Amberjack's, who upon

selling her interest to the Ghilains, continued to act as a bookkeeper for the restaurant until her

termination by the Ghilains.  After her termination, Lemmons filed suit in state court

("underlying suit") against the Ghilains for defamation and slander.[3]

On May 3, 2004, Essex brought a declaratory judgment action against Amberjack's, the

Trust, and the Ghilains in federal court, in Cause No. B-04-079.  On September 28, 2004,

Century brought a declaratory judgment action, with regard to the underlying suit, against the

Ghilains in federal court, in Cause No. B-04-172.  On January 13, 2005, the Court ordered the

two federal cases to be consolidated into Cause No. B-04-079.  It appears that both Century and

Essex filed declaratory judgment actions because there was a question as to the dates of the

events giving rise to the underlying suit.

## II.  Claims of the Parties

Essex and Century contend that they have no duty to defend or indemnify pursuant to the

---

[1]Policy No. 3CD8594.  Effective dates of coverage:  March 4, 2002, to March 4, 2003.  *See Exhibit A, Plaintiff's Motion for Summary Judgment* (Docket No. 17).

[2]Policy No. CCP249319.  Effective dates of coverage: March 4, 2003, to March 4, 2004.  *See Exhibit B, Plaintiff Century Surety Company's Motion for Summary Judgment* (Docket No. 35).

[3]*Judy Lemmons v. Daniel B. Ghilain and LeeAnne Ghilain*, Cause No. 2004-01-00536-E, 357th Judicial District Court, Cameron County, Texas.

insurance policies they issued to Amberjack's, under the employment-related practices

exclusions.  The companies argue that Lemmons' claim in the underlying suit is one for personal

injury arising out of an employment related defamation and falls squarely within the employment

related practices exclusion.  Additionally, Century argues that the Ghilains (the sole named

defendants in the underlying suit) are not the named insured in the Century policy.  Century also

argues that the first publication exclusion applies, barring coverage, because the first of the

defamatory statements was published before the policy period.

Amberjack's and the Ghilains claim that the employment-related practices exclusion does

apply because the defamatory statements were not made in the "context" of Lemmons'

employment with Amberjack's as they were made after she was terminated.  The Ghilains also

argue that defendant, Daniel Ghilain, (alleged to have made the first defamatory statement) has

been non-suited in the underlying lawsuit, thus negating the first publication exclusion.

### III.  Summary Judgment Standard

Summary judgment evidence is viewed in the light most favorable to the non-movant.

*Eastman Kodak v. Image Technical Servs.*, 504 U.S. 451, 456-58 (1992).  Summary judgment is

proper only when it appears that there is no genuine issue of material fact and the moving party

is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  An issue is "material" if it

involves a fact that might affect the outcome of the suit under governing law.  *Douglass v.*

*United Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996).  An alleged factual dispute will not defeat

a motion unless it is genuine and material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). Once the movant establishes the absence of a factual dispute, the burden shifts to the

non-movant to show that summary judgment is inappropriate.

The nonmoving party may not rest upon the mere allegations or denials of its pleadings.

*Anderson*, 477 U.S. at 256. Instead, the non-movant must "make a showing sufficient to

establish the existence of each essential element of its case." *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986). This evidence must do more than create a metaphysical doubt. *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). Unsubstantiated or

conclusory assertions that a fact issue exists will not suffice. *Anderson*, 477 U.S. at 256.

Resolution of summary judgment motions rests on the proper interpretation of the insured

endorsements, which is a question of law. *See Admiral Ins. Co. v. Trident NGL, Inc.*, 988

S.W.2d 451, 453 (Tex.App.--Houston [1st Dist.] 1999, pet. filed) (citing *Coker v. Coker*, 650

S.W.2d 391, 393-94 (Tex.1983)) (construction of insurance policy and limiting language in

endorsement are questions of law for court).

## IV.  Eight Corners Rule

### A.  Insurer's Duty to Defend

An insurer must defend those cases against its insured which are reasonably within its

policy coverage. *Fidelity & Guaranty Insurance Underwriters, Inc. v. McManus*, 633 S.W.2d

788 (Tex. 1982). Texas courts determine whether an insurer has a duty to defend solely by the

allegations in the pleadings and the language of the insurance policy. *Allstate Insurance*

*Company v. Ruth Hallman*, 48 Tex. Supp. Ct. J. 474, 2005 WL 563110 (Tex. Mar. 11,

2005)(citing *National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 819,

921-22 (Tex. 1997)). Any facts outside the pleadings will not be looked at. *Houston Petroleum*

*Co., v. Highlands Inc. Co.*, 830 S.W.2d 153, 155 (Tex. App. 1990). Therefore the court will

examine the latest amended pleading upon which the insurer based its refusal to defend the

action.  *Canutillo Indep. Sch. Dist. v. National Union Fire Ins. Co., of Pittsburgh, Pa.*, 99 F.3d 695, 701 (5th Cir. 1996).

If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured.  *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 848 (Tex. 1994).  This is what Texas courts refer to as the "eight corners" or "complaint allegation" rule. *Id.*  When applying the eight corners rule, the allegations in the petition are given a liberal interpretation.  *Id.*  This rule does not apply rigidly in every case.  When the underlying complaint does not resolve the applicability of policy exclusions, the parties may introduce extrinsic evidence to show whether a duty to defend exists.  *See State Farm Fire & Cas. Co. v. Wade*, 827 S.W.2d 448, 452 (Tex.App.–Corpus Christi 1992, writ denied).

Insurance policies are to be strictly construed in favor of the insured in order to avoid exclusion of coverage.  *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984). The focus is on the pleading's factual allegations rather than the cause of action that is alleged.  *Adamo v. State Farm Lloyds Co.*, 853 S.W.2d 673, 676 (Tex. App. – Houston, [14[th] Dist.] 1993, writ denied). If under the facts alleged, there is a prima facie showing that the claims are not covered under the policy, the insurer has no duty to defend.  *Holmes v. Employers Casualty Co.*, 699 S.W.2d 339, 340-341 (Tex.App.–Houston [1[st] Dist.] 1985, writ ref'd  n.r.e.).

### B.  The Insurance Policy and Coverage Exclusions

### 1.  Identity of the Named Insured

The Essex policy lists the "Named Insured" on the Common Policy Declarations page as Amberjack's Bar & Grill, Inc. and the Danny Ghilain Trust.  The Century policy lists the "Named Insured" as Amberjack's Bar and Grill Inc., dba Amberjack's Bayside Bar & Grill.

Section II of the Century policy defines the scope of the named insured.[4]

SECTION II - WHO IS AN INSURED

1.    If you are designated in the Declaration as:

d. An organization other than a partnership, joint venture or limited liability company, you are insured. Your 'executive officers' and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2.  Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.


Century and Essex do not have a duty to defend the Ghilains if they are not the named insured, which includes by definition, officers, directors, stockholders and employees. Because Texas follows the "Eight Corners Rule," the analysis of the insured's identity is limited to the pleadings and the insurance policy without reference to extrinsic evidence. The named insured in the Essex policy is the Amberjack's corporation and the Danny Ghilain Trust. The named insured in the Century policy is the Amberjack's corporation. A careful review of the underlying lawsuit reveals that the sole defendants are the individuals, Daniel B. and LeeAnne Ghilain. There are no allegations as to actions by the Amberjack's corporation or the Danny Ghilain Trust.

---

[4]It appears that the Essex policy (*Exhibit A, Plaintiff's Motion for Summary Judgment*, Docket No. 17) does not include copies of the "Commercial General Liability Coverage Form," wherein the type and extent of coverage, including applicable definitions, is set forth.

The petition makes no mention of the relationship between the Ghilains and

Amberjack's, nor does it aver that the Ghilains were officers, directors, stockholders, trustees, or

employees of the named insured.  Likewise, there is no statement that the allegedly defamatory

statements made by the Ghilains were made with respect to their duties as officers, directors, or

stockholders.  The only reference to the relationship between the Ghilains and Amberjack's is

that the "[d]efendants purchased Plaintiff's and her husband's interest in a corporation which

owned a restaurant known as Amberjack's."[5]  From this statement, the Court can only assume

that the Ghilains became owners or stockholders in Amberjack's Inc., or a corporation which

owned the Amberjack's Restaurant as one of its assets.   However, there is no clear statement by

Lemmons that the Ghilains were officers, directors, stockholders or employees in the underlying

lawsuit.

The Ghilains argue, in their Motion for Summary Judgment, that LeeAnne Ghilain made

the defamatory statements in her capacity as a stockholder.[6]  However, because the contention

that LeeAnne Ghilain is a stockholder is made in a motion for summary judgment, the eight

corners rule prevents this Court's consideration of that statement.

In any event, even if the Ghilains were covered under the policy in their capacity as

stockholders, officers, or directors, they are covered only with respect to their duties or liabilities

as such.  The underlying lawsuit brought by Lemmons accuses the Ghilains of making

defamatory statements to "third parties within the community of South Padre Island, Cameron

---

[5]*Exhibit A, Plaintiff Century Surety Company's Motion for Summary Judgment* (Docket No. 35).

[6]Page 5, *Defendant's Motion for Summary Judgment* (Docket No. 34).

County, Texas and to others unknown to Plaintiff."[7]   There is no information about the identity

of the persons to whom the statements were made, other than that they were persons within the

community of South Padre Island, Texas, and there is no indication that the statements were

made to other stockholders of Amberjack's Inc.

One could imagine a scenario in which the Ghilains, as officers, directors, or majority

stockholders would have a fiduciary duty to inform fellow stockholders about an embezzlement

they believed was occurring within their company.[8]  On the other hand, one could imagine that

the corporation was closely held, whereby there were no other stockholders to whom a duty of

care and duty to disclose would arise.[9]

However, as the Court is not permitted to venture outside the boundaries of the petition

and conjure up factual scenarios that would afford coverage under the policy, it cannot be

determined that the publication of the defamatory statements were made by the Ghilains in their

capacity and under their duties as stockholders.  *See Nat'l Union Fire Ins. Co. of Pittsburg, PA v.*

*Merchs. Fast Motor Lines, Inc*., 939 S.W.2d 139, 142 (Tex. 1997) (the court may not read facts

into the pleadings, look outside the pleadings or imagine factual scenarios that might trigger

coverage).  The Ghilains have not provided the Court with authority for the proposition that it

was their duty, as stockholders, to defame suspected embezzling employees or ex-employees to

the general public or the community at large of South Padre Island, Texas.

---

[7]*See Paragraph 4, Plaintiff's Second Amended Petition, Exhibit B of Plaintiff Century Surety Company's Motion for Summary Judgment*.

[8]*See generally Meyers v. Moody*, 693 F.2d 1196, 1209 (5th Cir. 1982); *Lewis v. Knutson*, 699 F.2d 230, 235 (5th Cir. 1983); *Sutton v. Reagan & Gee*, 405 S.W.2d 828, 834 (Tex.Civ.App.--San Antonio 1966, writ ref'd n.r.e.); *International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567 (Tex.1963); *Accent Energy Corp. v. Gillman*, 824 S.W.2d 274 (Tex. App. --Amarillo 1992, writ denied).

[9]*See Hoggett v. Brown*, 971 S.W.2d 472 (Tex.App.--Houston.[14th Dist.] 1997, pet. denied).

The Ghilains have not argued that they should be considered employees of Amberjack's and thus insured under the policy. From a review of the underlying lawsuit, there is no indication that the Ghilains were employees of Amberjack's Inc., nor that they made the alleged defamatory statements within the scope of their employment or while performing duties related to the conduct of the restaurant business.

The portions of the Essex policy on file with the Court do not contain the definition of the named insured, as does the Century policy. The Court cannot infer that the coverage and exclusions are exactly the same or even similar to that of the Century policy. Therefore, the Court's analysis on this point is limited to the coverage extended under the Century policy.

The parties do not disagree as to the facts of this case. The terms of the policies and the substance of the underlying suit are clearly set forth by all parties and are not contested. The disagreement arises in the application of the law as it relates the scope of the policy coverage and its exclusions. Based on the Court's review of the language in the policies, the definitions therein, and the underlying lawsuit, as mandated by the eight corners rule, Century did not have a duty to defend the Ghilains as they were not the named insured. As there are no genuine issues of material fact, Century is entitled to summary judgment on this point.

## 2. The Prior Publication Exclusion in the Century Policy

Coverage B, under the Century Policy states that the policy covers "personal and advertising injury" liability incurred by the insured. Personal and advertising injury is defined as "injury arising out of oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organizations's goods, products, or

service's."[10]  The pertinent policy provisions are as follows:

> COVERAGE B: PERSONAL AND ADVERTISING LIABILITY
>
> 1. Insuring Agreement
>
>> a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.
>
> 2.  Exclusions
>
> This insurance does not apply to:
>
>> c.  Material Published Prior to Policy Period
>
>>> Personal and advertising injury arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

One purpose of the prior publication exclusion is to prevent all insured from obtaining coverage for risks already known to the insured.  *Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.*, 203 F.Supp.2d 704, 716 (S.D.Tex. 2000).  The purpose of insurance is to protect insureds against unknown risks.  *Two Pesos, Inc. v. Gulf Ins. Co.*, 901 S.W.2d 495, 502 (Tex.App.--Houston [14th Dist.] 1995, no writ).  An insured cannot insure against something that has already begun and which is known to have begun.  *Essex Insurance Co. v. Redtail Products, Inc.*, 1998 WL 812394, *4 (N.D.Tex.1998).  The relevant question for the exclusion, however, is not when the claim first became actionable, but when the material giving rise to the claim was first published. *Matagorda,* 203 F.Supp.2d at  717-718 (S.D.Tex. 2000).

---

[10]*Exhibit A, Plaintiff Century Surety Company's Motion for Summary Judgment* (Docket No. 35).

In this case, Century argues that the claims for which the Ghilains seek coverage fall within the first publication exclusion of the policy.  The complaint in the underlying lawsuit reveals that the defamation claim resulted from several statements, the first of which was published in January of 2003.

> "Plaintiff would show that after termination of her employment with Amberjack's Bar and Grill, Inc., mid-January 2003, Defendants Ghilain began stating to third parties that Plaintiff has 'embezzled quite a lot of money to the tune of $200,000 from Amberjack's.'" *See Exhibit A, Plaintiff Century Surety Company's Motion for Summary Judgment.*

> "Defendant, Daniel B. Ghilain published a statement 'that criminal charges were going to be filed against Judy Lemmons because of her embezzlement from Amberjack's'.  This statement was made on or about January 29th 2003."  *Id.*

The Ghilains argue that because an order in the underlying lawsuit, non-suiting defendant, Daniel Ghilain, was entered on January 12, 2005, the pleadings no longer contain a defamatory statement which was first published before the beginning of the policy period.[11]

 Texas courts determine whether an insurer has a duty to defend solely by the allegations in the pleadings and the language of the insurance policy.  *Allstate Insurance Company v. Ruth Hallman*, 48 Tex. Supp. Ct. J. 474, 2005 WL 563110 (Tex. Mar. 11, 2005)(citing *National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 819, 921-22 (Tex. 1997)). In the underlying lawsuit, the second amended petition contains the allegation that a defamatory publication occurred in January 2003.  The Ghilains attempt to negate this fact by pointing out that Defendant, Daniel Ghilain, who made the first statement was subsequently non-suited in underlying lawsuit as a result of settlement negotiations.  However, the Ghilains present no legal

---

[11]Page 3, *Defendant's Motion for Summary Judgment*, Docket No. 34.

support for the proposition that a party can non-suit away the fact that a publication was made in

January 2003, and in essence transform the second publication into the first.

The fact remains, that the second amended petition contains an allegation that the first

publication occurred in January 2003. If we were to follow the rationale set forth by the

Ghilains, a party could easily non-suit its way around statements that were unfavorable under the

exclusion. It is clear from the language in the underlying lawsuit and the exclusions of the

policy, that the statements forming the basis of the defamation were first published before the

beginning of the Century policy period, i.e. March 4, 2003 to March 4, 2004. As there are no

genuine issues of material fact, Century is entitled to summary judgment on this point.

### 3. The Employment Related Practices Exclusion

As the analysis above clearly presents, the Ghilains were not the named insured under the

policies. The only manner in which the Ghilains could be considered insured would necessarily

have to be in their capacity as employees, acting in the furtherance of Amberjack's business

when the alleged defamatory statements were made. It is apparent, in the underlying suit, that

Lemmons, the bookkeeper at Amberjack's, was accused by the Ghilains of embezzlement during

her employment.

Both Essex and the Century polices contain nearly identical exclusions regarding

coverage of personal and advertising injuries arising out of employment related practices, i.e.

ERP exclusions. The relevant portions of the policies are set forth, respectively, as follows:

COMBINATION GENERAL ENDORSEMENT

3. Employment-Related Practices Exclusion is added to Coverages A and B, Section I,
Commercial General Liability Coverage Form and to any other coverage under this
policy as follows:

Employment-Related Practices regardless of allegations are not covered under this policy nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same, including but not limited to:

(A) Refusal to employ or Termination of Employment; or
(B) Discrimination, coercion, demotion, evaluation, reassignment, discipline, **defamation**, harassment in any form, humiliation, or other employment-related practices, policies, acts or omissions;

(*See Essex Policy No. 3CD8594*)(emphasis added)

EMPLOYMENT RELATED PRACTICES EXCLUSION

B.  The following exclusion is added to Paragraph 2, Exclusions of Section I, Coverage B, Personal and Advertising Injury Liability:

This insurance does not apply to "Personal and advertising Injury" to:

(1) A person **arising out of**:

(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, **defamation**, harassment, humiliation, or discrimination directed at that person.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity;

(*See Century Policy No. CCP249319*) (emphasis added).

The critical issue in determining the applicability of the ERP exclusion is the meaning of

the term "arising out of" as well as the definition of employment related practices.  Various types

of policy exclusions use the "arising out of" language to define the scope of the exclusion.  The

Texas Supreme Court gave broad construction to the phrase "arising out of" in a particular case

involving the construction of an automobile policy. *See Mid-Century Ins. Co. v. Lindsey*, 997

S.W.2d 153, 156 (Tex.1999).  For liability to "arise out of" the use of a motor vehicle, the Court

found that a causal connection or relation must exist between the accident or injury and the use

of the motor vehicle.  *Id*. at 156.

Therefore, "arise out of" means that there is simply a "causal connection or relation,"

which is interpreted to mean that there is "but for" causation, though not necessarily direct or

proximate causation. *See Utica Nat. Ins. Co. of Texas v. American Indem. Co.*, 141 S.W.3d 198,

203 (Tex. 2004); *McCarthy Bros. Co. v. Cont'l Lloyds Ins. Co.*, 7 S.W.3d 725, 730 (Tex.App.--

Austin 1999, no pet.); *Admiral Ins. Co. v. Trident NGL, Inc*., 988 S.W.2d 451, 454 (Tex.App.--

Houston [1st Dist.] 1999, pet. denied).  The Supreme Court's interpretation of the "arising out

of" language has been applied in analyzing the ERP exclusion at issue in the present case.  *See*

*Waffle House Inc. v. Travelers Indem. Co. of Illinois*, 114 S.W.3d 601, 608 (Tex. App.–Ft.

Worth 2003, pet. den'd).

Whether the exclusion applies depends on whether the defamatory remarks made by the

Ghilains arose out of Lemmons' employment and subsequent termination from Amberjack's.

The Century policy uses the "arising out of" language in its ERP exclusion, while the Essex

policy simply states that employment related practices, which include defamation, are not

covered under the policy.  Although the exact policy language differs, the legal analysis is the

same and turns on whether the defamation was employment related.

A close examination of the facts alleged in the underlying lawsuit reveals extensive

information regarding the employment-related context of the defamatory statements.

"Plaintiff would show that after **termination of her employment** with Amberjack's Bar
and Grill, Inc., mid January 2003, Defendants Ghilain began stating to third parties that
Plaintiff had 'embezzled quite a lot of money to the tune of $200,00.00 from
Amberjack's'".  *See Exhibit B, Plaintiff Century Surety Company's Motion for Summary*

*Judgment* (emphasis added).

"The truth is that Defendants purchased Plaintiff's and her husband's interest in a corporation which owned a restaurant known as 'Amberjack's'. **Plaintiff was the in-house bookkeeper** and maintained the accounts payables, accounts receivable, marketing, marketing, and group sales for the partnership, Amberjacks Bar and Grill, Inc." *Id*.

"Plaintiff would allege that slanderous statements known by Plaintiff and made by the Defendants as follows:
>    a. Defendant Daniel B. Ghilain published a statement 'that criminal charges were going to be filed against Judy Lemmons because of her embezzlement from Amberjack's.'
>    b. Defendant LeeAnne Ghilain published a statement to a third person 'that the rumor was try that Judy Lemmons had taken $200,000.00 dollars'.
>    c. Defendant LeeAnne Ghilain published a statement to a third person 'that the rumor was rue and she was shocked at how much Judy stole'." *Id*.

"Plaintiff's damages include mental anguish, pain and suffering, medical expenses incurred in the past and reasonably anticipated in the future, loss of consortium, loss of reputation, **humiliation**, and expenses reasonable and necessary to relocate from South Padre Island, Texas." *Id*.

"The statements themselves constitute **slander per se** as they are directly or by innuendo accuse the plaintiff of criminal acts. The statements, made by Defendants are **statutory slander** because they tend to injure Plaintiff's reputation and expose plaintiff to public hatred, contempt, ridicule, and financial injury and impeach the honesty and integrity of the Plaintiff." *Id*.

In the underlying lawsuit, slander and defamation are explicitly pled. The petition specifies the context of the alleged defamatory statements, the persons who made them and when. Lemmons alleges that the slanderous or defamatory statements were made "after the termination of her employment with Amberjack's," by persons (Ghilains) who purchased an interest in a corporation which owned Amberjack's, concerning embezzlement of funds from Amberjack's by Lemmons, who was the in-house bookkeeper.

The Ghilains argue that the defamation was not employment related because Lemmons

15

was no longer an employee when the statements were made. They rely on the Texas Appeals

Court's decision in *Waffle House*, and argue that the "issuance" of the defamation must be

employment related as well as the subject matter of the defamation. In *Waffle House*, plaintiff, a

discharged employee, brought a defamation suit against Waffle House executives for their

defamatory statements to Grandy's, a competitor. The Court looked at the "context" of the

defamatory statements and held that the ERP exclusion did not apply because the defamatory

statements did not arise from the employee's termination, but rather from the Waffle House's

attempt to prevent its employees from leaving the company, i.e. the substance of the statement

was employment related, but the purpose or context of the statement was not related to the

plaintiff's employment.

The Ghilains attempt to make the distinction between the "content" of the statements and

the "context" or manner in which they were made. The Ghilains contend that "it is not the

subject matter of the defamation that is the key to the analysis, but rather the circumstances of

the issuance of the slanderous statements that must relate to the Plaintiff's employment."[12]  The

Ghilains point out that the subject matter of the defamation in Waffle House obviously dealt with

the Plaintiff's employment, i.e. her performance, but the issuance and the purpose behind the

statements were not. Likewise, the Ghilains argue, the issuance of the defamatory statements was

not employment related because Lemmons was not an employee at the time of the publication.[13]

The case law in Texas does not require such a distinction to be drawn. The pertinent

inquiry is whether the personal or advertising injury arose out of an employment related practice,

---

[12]Page 9, *Defendants' and Interveners' Motion for Summary Judgment*, Docket No. 21.

[13]Page 8, *Defendants and Interveners' Motion for Summary Judgment*, Docket No. 21.

16

i.e. whether the defamation was an employment related act.  The holding in *Waffle House*, on

which the Ghilains so heavily rely, is not without its criticism.  In *Altivia Corp., v. Greenwich*

*Ins. Co.*, 161 S.W.3d 52, 54 n.2 (Tex. App. – Houston [14th Dist.] 2004, rule 53.7(f) motion

granted), the Court, in reference to the Waffle House executives' statements found that "even

statements made for the purpose of preventing employees from leaving are employment related

acts."  "We further disagree with the apparent reasoning of [*Waffle House*] that an ERP

exclusion can apply only where the alleged misconduct arises out of the plaintiff's termination,

rather than another employment-related act."  *Id.*

The Ghilains' argument, that the defamation was not employment related because it

occurred after Lemmons' termination, is faulty even under the holding in *Waffle House*, which

required the defamation to arise out of plaintiff's termination in order to fall under the exclusion.

It goes without saying, that most defamatory statements are published during or after the

employee is terminated.  Requiring the defamatory statement to be made before termination in

order to be considered employment related is too narrow.  If the courts were required to make the

determination based on the motivation or the purpose behind the statement, it would require

them to engage in a mind reading exercise.  The plaintiff in the underlying lawsuit, against

whom the defamatory statements were directed, would most likely not be aware of the true

purpose or motivation behind the defamatory statements, and most certainly is not required to

plead such in the petition.

In this case, from the face of the petition, it is hard for the Court to characterize the

relationship between Lemmons and the Ghilains as anything other than an employment

relationship.  Indeed, from the allegations in the petition, an employment relationship is the only

one which is suggested. The facts in the underlying lawsuit refer only to defamatory statements made by an employer about an ex-employee concerning the embezzlement of company funds during the employment period. It is difficult to surmise that a relationship, other than employment-based, gave rise to the Ghilains' defamatory statements.

### V. Recommendation

As no duty to defend arises from the claims and allegations against the Ghilains in Lemmons' amended petition, summary judgment is proper. As discussed above, all claims and allegations made by Lemmons against the Ghilains in the underlying suit are either not covered, as the Ghilains are not the named insured, or are excluded from coverage. Given that determination, no genuine issue of material fact exists with respect to Essex's and Century's duty to defend the Ghilains in the underlying case.

**IT IS RECOMMENDED** that Essex's and Century's Motions for Summary Judgment be (Docket No.'s 17, 35) be **GRANTED** and the Ghilains' Motion for Summary Judgment (Docket No. 21, 34) be **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).

DONE at Brownsville, Texas, this 30th day of November, 2005.

John Wm. Black
United States Magistrate Judge